APPEAL,COX,PROTO

# United States District Court
# Northern District of Illinois – CM/ECF LIVE, Ver 5.1.1 (Chicago)
# CRIMINAL DOCKET FOR CASE #: 1:09–cr–00332–2
# *Internal Use Only*

Case title: USA v. Rodriguez et al

Date Filed: 04/16/2009
Date Terminated: 06/03/2013

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/28/2011 | 704 | 20 | MINUTE entry before the Honorable Joan B. Gottschall as to Lewellen et al: For the reasons stated in open court, defendant Jorge Uriarte's motion to bar certain testimony 685 is denied, as is the oral motion to exclude Mr. Cockriel's testimony regarding a particular photograph. Defendant Glenn Lewellen's motion for a writ of habeas corpus ad testificandum 687 is granted. Mailed notice (yap, ) (Entered: 11/29/2011) |
| 11/29/2011 | 701 | 8 | MOTION by Glenn Lewellen Response to Government's Motion in Limine (Gambino, Andrea) (Entered: 11/29/2011) |
| 11/29/2011 | 702 | 15 | MOTION by Glenn Lewellen in limine *to Bar Introduction of Dismissal Order* (Gambino, Andrea) (Entered: 11/29/2011) |
| 11/29/2011 | 703 | 19 | MINUTE entry before the Honorable Joan B. Gottschall:Jury trial held on 11/29/2011, ( In Court hearing regarding pending motions is set for 11/30/2011 at 02:00 PM., Jury Trial set for 12/1/2011 at 12:30 PM. ) Mailed notice (rj, ) (Entered: 11/29/2011) |
| 12/01/2011 | 706 | 21 | PROPOSED Jury Instructions by USA as to Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Tony Sparkman, Fares Umar, Walter Johnson, Jorge Lopez, Robert Cardena (Block, Steven) (Entered: 12/01/2011) |
| 12/02/2011 | 708 | 22 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn Lewellen et al: Having been notified that a ruling is no longer necessary, the government's ex parte motion 705 is denied as moot. Mailed notice (yap, ) (Entered: 12/02/2011) |
| 12/02/2011 | 709 | 23 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn Lewellen et al: Defendant Lewellen's motion in limine to bar introduction of the dismissal order 702 is denied; as discussedin open court, the defense opened the door to the introduction of such evidence. Upon the government's request and where otherwise appropriate, the court will instruct the jury using the agreed–upon instruction. Mailed notice (yap, ) (Entered: 12/02/2011) |
| 12/02/2011 | 710 | 24 | PROPOSED Jury Instructions by Manuel Uriarte as to Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Tony Sparkman, Fares Umar, Walter Johnson, Jorge Lopez, Robert Cardena (Loeb, Robert) (Entered: 12/02/2011) |
| 12/02/2011 | 715 | 30 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn |

| | | | |
|---|---|---|---|
| | | | Lewellen (2): Order Writ of habeas corpus Ad Testificandum as to Jason L. Coday to appear before Judge Joan B. Gottschall on December 19, 2011 to testify in the defendant's case before this court. Mailed notice (yap, ) (Entered: 12/05/2011) |
| 12/02/2011 | 716 | 31 | ORDER as to Glenn Lewellen 715 Signed by the Honorable Joan B. Gottschall on 12/2/2011. (yap, ) (Entered: 12/05/2011) |
| 12/05/2011 | 713 | 26 | PROPOSED Jury Instructions by Manuel Uriarte as to Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Tony Sparkman, Fares Umar, Walter Johnson, Jorge Lopez, Robert Cardena (Loeb, Robert) (Entered: 12/05/2011) |
| 12/05/2011 | 714 | 28 | PROPOSED Jury Instructions by Manuel Uriarte as to Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Tony Sparkman, Fares Umar, Walter Johnson, Jorge Lopez, Robert Cardena (Loeb, Robert) (Entered: 12/05/2011) |
| 12/07/2011 | 721 | 33 | MOTION by Glenn Lewellen to modify conditions of release *UNOPPOSED MOTION* (Gambino, Andrea) (Entered: 12/07/2011) |
| 12/07/2011 | 722 | 38 | PROPOSED Jury Instructions by Hector Uriarte as to Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Tony Sparkman, Robert Cardena (Armour, Molly) (Entered: 12/07/2011) |
| 12/07/2011 | 723 | 41 | REPLY by USA to MOTION by USA in limine as to Saul Rodriguez, Jorge Lopez, Hector Uriarte, Jorge Uriarte, Andres Flores, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Fares Umar, Walter Johnson, Robert Cardena 689 (Block, Steven) (Entered: 12/07/2011) |
| 12/08/2011 | 754 | 68 | MINUTE entry before the Honorable Joan B. Gottschall as to Saul Rodriguez, et al: Enter Order approving interim payments &memorandum to counsel appointed under the Criminal Justice Act regarding interim payments under the Criminal Justice Act. Mailed notice (yap, ) (Entered: 12/22/2011) |
| 12/08/2011 | 755 | 69 | ORDER as to Saul Rodriguez et al approving interim payments &memorandum to counsel appointed under the Criminal Justice Act regarding interim payments under the Criminal Justice Act 754 Signed by the Honorable Joan B. Gottschall on 12/8/2011. (yap, ) (Entered: 12/22/2011) |
| 12/09/2011 | 726 | 55 | MINUTE entry before the Honorable Joan B. Gottschall:Motion to modify conditions of release 721 is granted as to Glenn Lewellen (2). Bond conditions modified from December 15, 2011, until January 2, 2012, to allow him to participate in church and family activities during the holiday season. Curfew 7:00AM until 11:00PM on trial days and from 9:00AM until 11:00PM on non−trial days. Mailed notice (rj, ) (Entered: 12/09/2011) |
| 12/12/2011 | 730 | 56 | PROPOSED Jury Instructions by Manuel Uriarte as to Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Tony Sparkman, Fares Umar, Walter Johnson, Jorge Lopez, Robert Cardena (Loeb, Robert) (Entered: 12/12/2011) |
| 12/12/2011 | 732 | 59 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn Lewellen (2): Motion hearing held. MOTION by USA in limine 689 is denied for the reasons stated in open court. Mailed notice (yap, ) (Entered: 12/12/2011) |

| 12/15/2011 | 737 | 60 | MOTION by USA in limine as to Saul Rodriguez, Jorge Lopez, Hector Uriarte, Jorge Uriarte, Andres Flores, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Fares Umar, Walter Johnson, Robert Cardena (Block, Steven) (Entered: 12/15/2011) |
|---|---|---|---|
| 12/19/2011 | 740 | 65 | MOTION by Glenn Lewellen Proposed Jury Instruction as to the testimony of Bruce Killian (Madden, Matthew) (Entered: 12/19/2011) |
| 12/20/2011 | 750 | 67 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn Lewellen (2): Hector Uriarte (3), Jorge Uriarte (4), Manuel Uriarte (5), Tony Sparkman (7) and Robert Cardena (11): Having been informed in open court that Jorge Lopez's amended motion to modify conditions of release 742 isunopposed, it will be granted; Lopez's earlier motion 728 is denied as moot.The government's motion in limine regarding admission of certain evidence 691 is denied as moot. The government's motion in limine to exclude evidence related to zoning incident 737 is granted in part and denied in part as stated in open court. The government has informed the court that it wishes to withdraw its motion for a deposition 697 . The motion will be withdrawn. Mailed notice (cdy, ) (Entered: 12/21/2011) |
| 12/27/2011 | 757 | 73 | MOTION by USA Proposed Redactions Pursuant to Bruton as to Saul Rodriguez, Jorge Lopez, Hector Uriarte, Jorge Uriarte, Andres Flores, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Fares Umar, Walter Johnson, Robert Cardena re MOTION by Robert Cardena in limine 738 (Attachments: # 1 Certificate of Service)(Reynolds, Terra) Modified document by Clerk's office on 12/27/2011 (yap, ). (Entered: 12/27/2011) |
| 12/27/2011 | 758 | 76 | MINUTE entry before the Honorable Joan B. Gottschall as to Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Robert Cardena: Motion hearing held 12/27/11. Defendant Cardena's motions in limine 667 , 712 and 738 are granted in part and denied in part as stated on the record. Defendant Lewellen's motion for a proposed jury instruction 740 is taken under advisement; the defendant should renew the motion at an appropriate time as discussed in open court. Jury Instruction Conference set for 1/4/12 at 10:15 AM. Mailed notice (yap, ) (Entered: 12/27/2011) |
| 01/02/2012 | 761 | 77 | PROPOSED Jury Instructions by USA as to Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Tony Sparkman, Fares Umar, Walter Johnson, Jorge Lopez, Robert Cardena (Tracy, Tiffany) (Entered: 01/02/2012) |
| 01/03/2012 | 762 | 180 | MOTION by Glenn Lewellen to modify conditions of release *to Continue Previously Modified Conditions* (Gambino, Andrea) (Entered: 01/03/2012) |
| 01/03/2012 | 763 | 183 | PETITION filed by Glenn Lewellen *for Writ of Habeas Corpus Ad Testificandum* (Attachments: # 1 Exhibit WRIT, # 2 Text of Proposed Order ORDER)(Gambino, Andrea) (Entered: 01/03/2012) |
| 01/03/2012 | 764 | 190 | MOTION by Glenn Lewellen in limine *to Preclude Inquiry into Pending Case and Failed Plea Negotiations for Frank Farella* (Gambino, Andrea) (Entered: 01/03/2012) |
| 01/04/2012 | 778 | 204 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn Lewellen (2): Motion by Glenn Lewellen to modify conditions of release to continue previously modified conditions 762 is granted. Enter Order. It is |

|  |  |  | hereby ordered Mr. Lewellen's curfew of 7:00 a.m. to 11:00 p.m. during trial weeks is allowed to stand until conclusion of the trial. It is further ordered that Mr. Lewellen keep Pre–Trial Services informed of his activities during this time period, as directly by this Pre–Trial Services officer, Brian Kolbus. Mailed notice (yap, ) (Entered: 01/06/2012) |
| --- | --- | --- | --- |
| 01/04/2012 | 779 | 205 | PROPOSED ORDER as to Glenn Lewellen 778 Signed by the Honorable Joan B. Gottschall on 1/4/2012. (yap, ) (Entered: 01/06/2012) |
| 01/05/2012 | 768 | 196 | MOTION by Manuel Uriarte for acquittal as to Saul Rodriguez, Jorge Lopez, Hector Uriarte, Jorge Uriarte, Andres Flores, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Fares Umar, Walter Johnson, Robert Cardena *General Motion for Judgment of Acquittal under Rule 29* (Loeb, Robert) . (Entered: 01/05/2012) |
| 01/06/2012 | 777 | 203 | MINUTE entry before the Honorable Joan B. Gottschall:as to Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Robert Cardena, ( In Court hearing (jury instructions) set for 1/9/2012 at 10:00 AM.) Mailed notice (rj, ) (Entered: 01/06/2012) |
| 01/06/2012 | 782 | 208 | MINUTE entry before the Honorable Joan B. Gottschall:Motion in limine 764 is granted in part and denied in part as to Glenn Lewellen (2) as stated on the record in open court. Mailed notice (rj, ) (Entered: 01/09/2012) |
| 01/06/2012 | 783 | 209 | MINUTE entry before the Honorable Joan B. Gottschall as to Jorge Lopez, Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen, Manuel Uriarte: Defendants orally renewed their motions for judgment of acquittal following the close of the government's evidence. The court reserves rulings as to all defendants. Mailed notice (yap, ) (Entered: 01/10/2012) |
| 01/07/2012 | 780 | 206 | MOTION by Glenn Lewellen for acquittal (Madden, Matthew) (Entered: 01/07/2012) |
| 01/10/2012 | 785 | 210 | MINUTE entry before the Honorable Joan B. Gottschall:as to Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Robert Cardena, Jury trial held on 1/10/2012, ( Jury Trial set for 1/12/2012 at 09:30 AM. ) Mailed notice (rj, ) (Entered: 01/11/2012) |
| 01/17/2012 | 794 | 211 | JURY Instructions as to read to jury regarding defendants Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Robert Cardena (yap, ) (Entered: 01/23/2012) |
| 01/31/2012 | 802 | 312 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn Lewellen (2); Jury trial ends. Verdict Reached. Jury finds defendant, Glenn Lewellen guilty as to count thirteen of third superseding indictment. Jury also finds that the offense involved 5 kilograms or more of mixtures containing cocaine. Oral motion by USA to detain defendant is granted. Defendant ordered detained. Status hearing set for 2/15/2012 at 10:00 a.m. Post–trial motions due by 4/2/2012. Responses by 5/2/2012. Replies by 5/17/2012. Ruling by mail. Time is excluded through 2/15/2012 for complexity of case pursuant to 18:3161(h)(7)(B)(ii). Mailed notice (yap, ) (Entered: 02/01/2012) |
| 02/15/2012 | 822 | 313 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn Lewellen (2): Status hearing held. Cause referred to Probation Department for preparation of presentence investigation report. Sentencing memoranda |

| | | | |
|---|---|---|---|
| | | | and/or objections to psr due by 6/8/12. Responses by 6/15/12. Sentencing set for 6/27/12 at 10:15AM. It is hereby ordered that Manuel Uriarte, Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen and Robert Cardena not be separated from each other but separated from Saul Rodriguez, Pedro Victoria and Andres Flores. Mailed notice (yap, ) (Entered: 02/16/2012) |
| 03/02/2012 | 836 | 314 | MOTION by Glenn Lewellen for reconsideration *of Detention Order* (Gambino, Andrea) (Entered: 03/02/2012) |
| 03/07/2012 | 839 | 324 | MINUTE entry before the Honorable Joan B. Gottschall: Motion for reconsideration of detention order 836 is denied for the reasons stated in open court as to Glenn Lewellen (2). Motion hearing held on 3/7/2012. Mailed notice (rj, ) (Entered: 03/08/2012) |
| 03/23/2012 | 847 | 325 | MOTION by Glenn Lewellen for release from custody *for Temporary Release to Obtain Medical Treatment* (Gambino, Andrea) (Entered: 03/23/2012) |
| 03/28/2012 | 849 | 329 | MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen, Motion hearing held on 3/28/2012 regarding motion for release from custody 847 , ( Motion Hearing set for 4/3/2012 at 09:30 AM.) Mailed notice (rj, ) (Entered: 03/29/2012) |
| 04/02/2012 | 856 | 330 | MINUTE entry before the Honorable Joan B. Gottschall:Motion for release from custody 847 is withdrawn without prejudice as to Glenn Lewellen (2) via electronic request by his counsel. No appearance required 4/3/12. Mailed notice (rj, ) (Entered: 04/02/2012) |
| 04/02/2012 | 863 | 331 | MOTION by Glenn Lewellen for judgment of acquittal *or New Trial* (Gambino, Andrea) (Entered: 04/02/2012) |
| 04/05/2012 | 864 | 346 | MOTION *FOR ORDER PERMITTING SALE OF TACOMA NARROWS, LLC., PROERTIES* (Gambino, Andrea) (Entered: 04/05/2012) |
| 04/25/2012 | 887 | 349 | MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen, Motion hearing held on 4/25/2012 regarding MOTION FOR ORDER PERMITTING SALE OF TACOMA NARROWS, LLC., PROERTIES 864 , ( Motion Hearing set for 4/27/2012 at 02:00 PM.) Mailed notice (rj, ) (Entered: 04/25/2012) |
| 04/27/2012 | 891 | 350 | MINUTE entry before the Honorable Joan B. Gottschall as to Glenn Lewellen (2): Motion for agreed protective order relating to the proceeds from the sale of certain property 864 is granted. Enter Order relating to the proceeds from the sale of from the sale of certain property. Mailed notice (yap, ) (Entered: 04/27/2012) |
| 04/27/2012 | 892 | 351 | ORDER as to Glenn Lewellen relating to the proceeds from the sale of from the sale of from the sale of certain property 891 Signed by the Honorable Joan B. Gottschall on 4/27/2012. (yap, ) (Entered: 04/27/2012) |
| 05/01/2012 | 895 | 354 | MINUTE entry before the Honorable Joan B. Gottschall:as to Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen,, Robert Cardena. Government's responses to Defendants' post trial motions ar extended and due by 5/7/2012. Defendants replies by 5/22/2012. Ruling by mail. Mailed notice (rj, ) (Entered: 05/01/2012) |

| 05/08/2012 | 898 | 355 | MINUTE entry before the Honorable Joan B. Gottschall:as to Jorge Uriarte, Tony Sparkman, Glenn Lewellen. Government's responses to Defendants' post trial motions are extended and due by 5/8/2012. Defendants replies by 5/23/2012. Ruling by mail. Mailed notice (rj, ) (Entered: 05/08/2012) |
|---|---|---|---|
| 05/08/2012 | 900 | 356 | RESPONSE by USA to MOTION by Glenn Lewellen for judgment of acquittal *or New Trial* 863 (Attachments: # 1 Certificate of Service)(Reynolds, Terra) (Entered: 05/08/2012) |
| 06/08/2012 | 929 | 390 | MINUTE entry before the Honorable Joan B. Gottschall: as to Glenn Lewellen, ( Sentencing set for 6/27/2012 is stricken and reset to 7/13/2012 at 09:30 AM due to scheduling conflict of the court.) Sentencing memoranda and/or objections to PSR due by 6/15/2012. Responses by 6/22/2012. No sentencing memoranda or objections to presentence reports or responses will be considered if filed out of time unless a motion to file late is made no less than one week prior to the date set for sentencing. No sentencing hearing will be considered unless the courtroom deputy is notified of the need to change in writing at least one week (7 days) prior to the date set for sentencing. Failure to comply with this standing order will result in counsel being sanctioned in the amount of $100.00 which shall be paid to the Clerk of the Court, 219 South Dearborn, 20th Floor, Chicago, Illinois 60604. Mailed notice (rj, ) (Entered: 06/08/2012) |
| 06/14/2012 | 933 | 391 | MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen. The court grants the government's request for extension of time to file position papers/objections to the PSR and responses. Sentencing memoranda and/or objections to PSR due by 6/22/2012. Responses by 6/29/2012. No sentencing memoranda or objections to presentence reports or responses will be considered if filed out of time unless a motion to file late is made no less than one week prior to the date set for sentencing. No sentencing hearing will be considered unless the courtroom deputy is notified of the need to change in writing at least one week (7 days) prior to the date set for sentencing. Failure to comply with this standing order will result in counsel being sanctioned in the amount of $100.00 which shall be paid to the Clerk of the Court, 219 South Dearborn, 20th Floor, Chicago, Illinois 60604. Mailed notice (rj, ) (Entered: 06/14/2012) |
| 06/22/2012 | 937 | 392 | MINUTE entry before the Honorable Joan B. Gottschall: as to Glenn Lewellen, ( Sentencing set for 7/13/2012 is stricken and reset to 9/6/2012 at 09:00 AM.) Sentencing memoranda and/or objections to psr due by 8/17/2012. Responses by 8/24/2012. No sentencing memoranda or objections to presentence reports or responses will be considered if filed out of time unless a motion to file late is made no less than one week prior to the date set for sentencing. No sentencing hearing will be continued unless the courtroom deputy is notified of the need to change in writing at least one week (7 days) prior to the date set for sentencing. Failure to comply with this standing order will result in counsel being sanctioned in the amount of $100.00 which shall be paid to the Clerk of Court, 219 S. Dearborn, 20th floor, Chicago, Illinois 60604. Mailed notice (rj, ) (Entered: 06/22/2012) |
| 06/25/2012 | 938 | 393 | MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen, ( Sentencing set for 9/06/2012 is stricken and reset to 9/25/2012 at 10:00 AM by request of defendant's counsel.) Sentencing memoranda and/or |

| | | | |
|---|---|---|---|
| | | | objections to psr due by 9/7/2012. Responses by 9/14/2012. No sentencing memoranda or objections to presentence reports or responses will be considered if filed out of time unless a motion to file late is made no less than one week prior to the date set for sentencing. No sentencing hearing will be continued unless the courtroom deputy is notified of the need to change in writing at least one week (7 days) prior to the date set for sentencing. Failure to comply with this standing order will result in counsel being sanctioned in the amount of $100.00 which shall be paid to the Clerk of Court, 219 S. Dearborn, 20th floor, Chicago, Illinois 60604. Mailed notice (rj, ) Modified on 6/25/2012 (rj, ). Modified on 6/25/2012 (rj, ). (Entered: 06/25/2012) |
| 07/13/2012 | 956 | 394 | MOTION by Glenn Lewellen to adopt *and Join Co−Defendant Uriarte's Motion to Supplement Post−trial Motions* (Gambino, Andrea) (Entered: 07/13/2012) |
| 07/18/2012 | 966 | 398 | MINUTE entry before the Honorable Joan B. Gottschall as to Jorge Uriarte (2), Hector Uriarte (3), Jorge Uriarte (4), Tony Sparkman (7); Motion hearing held. Motion by Jorge Uriarte for extension of time to file supplement to post trial motion and to file joint supplement with other defendants by 8/17/2012 953 is granted. MOTION by Glenn Lewellen to adopt and Join Co−Defendant Uriarte's Motion to Supplement Post−trial Motions 956 is granted. MOTION by Tony Sparkman to adopt and join codefendants' motions to supplement 958 is granted. MOTION by Hector Uriarte to adopt and Join Co−Defendant Jorge Uriarte's Motion to Supplement Post−Trial Motions 960 is granted. Oral motion by United States for 30 days to file response by 9/17/2012 is granted. Oral motion by United States to strike pending sentencing dates and to reset for mid November as to defendants Hector Uriarte, Jorge Uriarte, Tony Sparkman and Glenn Lewellen is granted. Sentencing set for 9/25/12 as to Glenn Lewellen is vacated. Sentencing set for 8/1/2012 as to Jorge Uriarte is vacated. Sentencing set for 9/5/2012 as to Hector Uriarte is vacated. Mailed notice (yap, ) (Entered: 07/19/2012) |
| 09/07/2012 | 997 | 400 | MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen, ( Sentencing set for 11/2/2012 at 09:30 AM.)Sentencing memoranda and/or objections to PSR due by 10/19/2012. Responses by 10/26/2012. No sentencing memoranda or objections to presentence reports or responses will be considered if filed out of time unless a motion to file late is made no less than one week prior to the date set for sentencing. No sentencing hearing will be continued unless the courtroom deputy is notified of the need to change in writing at least one week (7 days) prior to the date set for sentencing. Failure to comply with this standing order will result in counsel being sanctioned in the amount of $100.00 which shall be paid to the Clerk of Court, 219 South Dearborn, 20th Floor, Chicago, Illinois 60604. Mailed notice (rj, ) (Entered: 09/07/2012) |

IN THE
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. |
| | ) | Gottschall |
| GLENN LEWELLEN, | ) | |
| Defendant. | ) | |

*GLENN LEWELLEN'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO
PRECLUDE USE OF SEXUAL ASSAULT ON DRUG COURIER IN CROSS-EXAMINATION OR
AS SUBSTANTIVE EVIDENCE*

GLENN LEWELLEN, through his attorneys, Andréa E. Gambino and Matthew

J. Madden, pursuant to Federal Rules of Evidence 401, 403, 404(b) and 608,

respectfully requests that this Court deny the government's Motion to Preclude Use

of Sexual Assault on Drug Courier Evidence.

Evidence of Monica Rodriguez' relationship with Saul Rodriguez occurs within

the time period alleged in the indictment.  Rodriguez' kidnapping of Monica

Rodriguez and the sexual assault that she endured provides evidence of Saul

Rodriguez's lack of truthfulness in his "co-operation" with the government, shows

his lack of truthfulness with individuals who work for or with him, and

demonstrates Saul Rodriguez's modus operandi, planning, and deceit in dealing with

individuals whom he perceives to have wronged him.

Ms. Rodriguez' prospective testimony also is relevant and admissible to perfect

impeachment of Lisette Venegas.

I.      The incident occurs within the time period charged in the indictment.

The government has alleged that Saul Rodriguez' drug trafficking

organization operated from 1996 until 2009.  Monica Rodriguez met Saul Rodriguez

in 1996 while she was working for Juan Carlos Saucedo – also known as "Little Man"

– who was one of Saul Rodriguez' partners in bringing drugs into the United States

from Mexcio.  In 1997, Monica Rodriguez began working for Saul, counting money,

picking up money, delivering marijuana, and driving cars around at Saul's direction.

She did this approximately 3 times per week beginning in 1997, for at least 6

months.  Ms. Rodriguez also did this work with Lisette Venegas, another one of Saul

Rodriguez's couriers.

Saul Rodriguez rented an apartment for Monica, which he then used to store

his drugs.  This apartment was located at 48th and Racine – one of Saul Rodriguez'

neighborhoods.   The government's claim that Monica Rodriguez' involvement with

Saul is outside the allegations of the indictment is incorrect.

II.     The incident is probative of Saul Rodriguez' lack of truthfulness with the
        government and with others.

Saul Rodriguez does not appear to have volunteered any information about

Monica Rodriguez until after she is interviewed by the DEA and testifies before the

Grand Jury in February 2010.  Only when he is confronted with Ms. Rodriguez'

allegations does he relate his version of events.  He minimizes his responsibility for

what happens to Ms. Rodriguez and his knowledge of what she will be made to

endure at the hands of the individuals to whom Saul Rodriguez and the chief of  La

Raza – Yito – deliver her.

The incident, itself, also demonstrates his lack of truthfulness in his dealings with others.  If Monica Rodriguez tells the truth, Saul lies to her about the car he gives her to deliver.  She claims that he gave it to her without drugs in it.  Saul claims that she stole the drugs.  Saul also lies to her boyfriend at the time – Juan Luevano, also known as "Baby G" – Saul's erstwhile friend and eventual murder victim.  Saul tells Luevano that Monica stole drugs from him.

Saul then deceives Monica into riding with him, going to get something to eat, and then being delivered into the hands of gang members for the purpose of making her admit that she stole the marijuana.  Saul lies to the gang members whom he contacts, telling them that she stole the marijuana, when he knows that she did not.

In relating his version of events to the government, he makes the incredible claim that he had no knowledge about what happened to her.  He was on the phone with the people who were torturing her and telling them what to do.  They were taking their direction from him.  Rodriguez' claim that he did not know about the sexual assault is preposterous.  He either knew or had reason to believe that leaving a young woman unprotected in hostile gang territory with a group of gang bangers, and instructions that they should "make her talk" would result in an assault  -- sexual or otherwise.

III.     The incident demonstrates Saul Rodriguez' modus operandi, planning, and
         deceit in dealing with individuals whom he believes have wronged him.

In addition to lying to everyone he deals with – friends, associates, law enforcement – including the investigating agents and prosecutors in this case, and officials at the Metropolitan Correctional Center – Saul Rodriguez  acts with

considerable thought and planning, placing the responsibility for brutal conduct that he intends in the hands of others.  He insulates himself from blame by choosing perpetrators who will not be identified, or by blaming those who pose no real risk to him.

The incident with Monica Rodriguez demonstrates his planning, the use of others to perform brutal acts on his behalf, the availability and willingness of others to act for him, and his pattern of blaming those who are least likely to pose a threat to him.

Monica Rodriguez recounts that she, Juan Luevano, and Rodriguez were the only ones who had access to the stash house where she and Juan, "Baby G", were staying.  Rodriguez told her to stay in the apartment at all times, unless he needed her to make a run, because he did not want the apartment to be left empty.  It was after an occasion when he caught her outside the apartment without permission that he set up the "delivery" that resulted in her kidnapping.

Saul Rodriguez then set up a kidnapping to look like he had nothing to do with it.  In fact, he gave her money for the kidnappers to find and steal, called the kidnappers to come and get her, and then spoke to the kidnappers on the phone while they held her, bound and gagged, and threatened her with bodily harm – including forcing her to perform oral sex on one of her captors.

IV.    Monica Rodriguez' testimony also is relevant to perfect impeachment of Lisette Venegas.

Monica Rodriguez identifies a photo of Lisette Venegas as a woman who picked up Monica on occasion to count money and who was around Saul when

Monica was working for him.  On cross-examination, Lisette Venegas was asked

about her knowledge of other female couriers and she denied that there were any

during the period of time during which she worked for Saul Rodriguez:

Q. Okay. You were obviously serving as a cocaine courier for Saul Rodriguez, right?

A. Yes.

Q. Okay. You're aware that Saul Rodriguez had other female couriers working for him as well?

A. No.

Q. Okay. You're not aware that he had any other female couriers?

A. When I was working for him, I was the only female.

*See,* Trial Transcript, Volume V, pages 648-649.

Finally, the government's motion is ill-timed.  Prior to trial, counsel for

defendant Lewellen requested contact information for Ms. Rodriguez from the

government, which the government declined to provide.  Counsel for Mr.

Lewellen also included Ms. Rodriguez in the list of potential witnesses

provided to the government and to the Court.

The government did not raise the Motion in Limine to preclude

mention of Ms. Rodriguez or the sexual assault in Opening Statement.  The

government's attempt to preclude testimony or cross-examination on this

issue comes late and will unfairly enable the government to claim that

defense counsel made assertions in Opening which were not substantiated at

trial.

WHEREFORE,  GLENN LEWELLEN, through counsel, respectfully requests

that the government's Motion in Limine be denied.

DATE: November 29, 2011                 Respectfully submitted,

                                        By:     s/Andréa E. Gambino
                                                s/Matthew J. Madden
                                                Attorneys for Glenn Lewellen

CERTIFICATE OF SERVICE

I hereby certify that the above document has been filed using the CM/ECF

system.  Electronic notice has been sent to the following parties:

Counsel for co-defendants

Terra Reynolds
Steven Block
Tiffany Tracy
Assistant United States Attorneys


DATE: November 29, 2011                    Respectfully submitted,

                                           By:     s/Andrea E. Gambino
                                                   An Attorney for Glenn Lewellen

Law Offices of Andrea E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014

IN THE
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. |
| | ) | Gottschall |
| GLENN LEWELLEN, | ) | |
| Defendant. | ) | |

*GLENN LEWELLEN'S MOTION TO BAR INTRODUCTION OF COURT RULING ON
GOVERNMENT'S UNCONTESTED MOTION TO DISMISS CASE AGAINST REFUGIO RUIZ
CORTEZ*

GLENN LEWELLEN, through counsel, pursuant to Federal Rules of Evidence

401, 402, and 403, respectfully requests that this Court bar the introduction of

another's Court's ruling on the government's uncontested Motion to Dismiss the

case against Refugio Ruiz Cortez.  In the first instance, the fact that Refugio Ruiz

Cortez was found guilty at trial does not open the door to the introduction of the

dismissal order.

Even if the Court were to determine somehow that the fact of conviction

opens the door to subsequent proceedings, introduction of another Court's Order

would give a false imprimatur to the government's allegations in this case.  The

Court's ruling in the Ruiz-Cortez case was not made after a hearing on the evidence.

Nor was it made pursuant to an independent evaluation of the credibility of any

witnesses.  Introducing the Order in this case would give the jury the false

impression that another judge had made an adverse ruling with respect to the

credibility of Mr. Lewellen's prior testimony, or a positive finding with respect to the

testimony offered in this case by Lisette Venegas, which is inconsistent with Mr.

Lewellen's testimony at the trial of Refugio Ruiz Cortez.  Neither proposition is true.

   Introducing another Court's Order in this case is further complicated by the

fact that the government apparently does not intend to elicit the testimony of

Refugio Ruiz Cortez, himself.  Mr. Refugio Ruiz Cortez – far from being the innocent

man he claims to be -- admitted to possession of the 10 kilograms of cocaine that he

attempted to give to a courier.  Ruiz Cortez also admitted that the 10 kilograms of

cocaine that he delivered to a courier on July 8, 1999, were the last of a shipment of

80-90 kilograms that he had stored in his apartment at the behest of another person

and that he had delivered to other customers at the other person's request.  Ruiz

Cortez' version of what transpired also does not correspond with the version

presented by Lisette Venegas.

   Despite Refugio Ruiz Cortez' admissions to the government, he has brought a

civil suit against the City of Chicago, Mr. Lewellen, and Noel Sanchez, in which he

claims that he was not involved with drug dealing, that he was, in fact, an innocent

person, that he was framed by law enforcement, and that he was wrongly convicted

of possession with intent to distribute cocaine.  He relies on the government's filings

in this case to substantiate his claims in the civil suit.

   The  jury in this case must decide whether to believe the testimony of Lisette

Venegas – the sole witness to contradict the testimony given by Officer Lewellen at

Refugio Ruiz Cortez' trial.  Introduction of the dismissal Order will unfairly and

falsely bolster the government's assertion that Lisette Venegas is more worthy of belief than Glenn Lewellen.

WHEREFORE, GLENN LEWELLEN, through counsel, respectfully requests that this Court bar admission of the misleading and uncontested dismissal Order issued by Judge Pallmeyer,  without a hearing and based solely on the assertion of the government that Officer Lewellen had been untruthful when he testified in the trial of Refugio Ruiz Cortez.

DATE:          November 29, 2011          Respectfully submitted,

                                          By:    s/Andréa E. Gambino
                                                 s/Matthew J. Madden
                                          Attorneys for Glenn Lewellen

CERTIFICATE OF SERVICE

I hereby certify that the above document has been filed using the CM/ECF

system.  Electronic notice has been sent to the following parties:

Counsel for co-defendants

Terra Reynolds
Steven Block
Tiffany Tracy
Assistant United States Attorneys


DATE: November 29, 2011          Respectfully submitted,

                                 By:    s/Andrea E. Gambino
                                        An Attorney for Glenn Lewellen

Law Offices of Andrea E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2**
**Eastern Division**

UNITED STATES OF AMERICA

                             Plaintiff,

v.                                       Case No.: 1:09−cr−00332
                                       Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                             Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, November 29, 2011:

      MINUTE entry before the Honorable Joan B. Gottschall:Jury trial held on 11/29/2011, ( In Court hearing regarding pending motions is set for 11/30/2011 at 02:00 PM., Jury Trial set for 12/1/2011 at 12:30 PM. ) Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 0332 | **DATE** | 11/28/2011 |
| **CASE TITLE** | United States v. Lewellen et al. | | |

**DOCKET ENTRY TEXT**

For the reasons stated in open court, defendant Jorge Uriarte's motion to bar certain testimony [685] is denied, as is the oral motion to exclude Mr. Cockriel's testimony regarding a particular photograph.  Defendant Glenn Lewellen's motion for a writ of habeas corpus ad testificandum [687] is granted.

Docketing to mail notices.

| | Courtroom Deputy Initials: | RJ/JKF |
|---|---|---|

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 332 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| GLENN LEWELLEN *et al.* | ) | |

## GOVERNMENT'S PROPOSED INSTRUCTION
## <u>REGARDING CONVICTION OF REFUGIO RUIZ-CORTEZ</u>

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby proposes the following instruction be read to the jury regarding the conviction of Refugio Ruiz-Cortez.

You have heard testimony that Refugio Ruiz-Cortez was convicted of a drug offense. That conviction was dismissed. You should not consider the conviction or the dismissal of the conviction in deciding this case.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:    <u>s/ Steven A. Block</u>
TERRA L. REYNOLDS
STEVEN A. BLOCK
TIFFANY J. TRACY
Assistant United States Attorneys
United States Attorney's Office
219 S. Dearborn St., 5th Floor
Chicago, Illinois 60604

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 0332 | **DATE** | 12/02/2011 |
| **CASE TITLE** | United States vs. Lewellen et al. | | |

**DOCKET ENTRY TEXT**

Having been notified that a ruling is no longer necessary, the government's *ex parte* motion [705] is denied as moot.

Docketing to mail notices.

| | Courtroom Deputy Initials: | RJ/JKF |
|---|---|---|

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 0332 | **DATE** | 12/2/2011 |
| **CASE TITLE** | United States vs. Lewellen et al. | | |

**DOCKET ENTRY TEXT**

Defendant Lewellen's motion *in limine* to bar introduction of the dismissal order [702] is denied; as discussed in open court, the defense opened the door to the introduction of such evidence.  Upon the government's request and where otherwise appropriate, the court will instruct the jury using the agreed-upon instruction.

Docketing to mail notices.

| | |
|---|---|
| Courtroom Deputy Initials: | RJ/JKF |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
                          )        Case No. 09 CR 332-5
        v.                )        Honorable Joan B. Gottschall
                          )
MANUEL URIARTE           )

### PROPOSED JURY INSTRUCTION AS TO TESTIMONY OF
### JUAN MANUEL "PEDRO" VICTORIA

NOW COMES THE DEFENDANTS, Glenn Lewellen, Hector Uriarte, Jorge

Uriarte, Manuel Uriarte, Tony Sparkman, and Robert Cardena, by and through their

respective attorneys, and propose the attached jury instruction to be given during the

testimony of  Andres Torres.

Respectfully submitted,


/s/ Robert A. Loeb


/s/ Keith A. Spielfogel
Attorneys for Manuel Uriarte

Robert A. Loeb
190 S. LaSalle St., Suite 520
Chicago, IL 60603
312-368-0611
ARDC No. 1681990

Keith A. Spielfogel
190 S. LaSalle St. Suite 520
Chicago, IL 60603
312-236-6021
ARDC No. 2689537

You have heard testimony from Juan Manuel "Pedro" Victoria, who:

(a) received benefits from the government in connection with this case, an agreement to a recommendation of a lesser sentence in exchange for his plea and truthful testimony.
(e) has pleaded guilty to an offense arising out of the same occurrence for which a defendant is now on trial. His guilty plea is not to be considered as evidence against the defendant.
You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.


Seventh Circuit 3.13
Modified for the individual circumstances of the witness

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 09 CR 332-5 |
| v. | ) | Honorable Joan B. Gottschall |
| | ) | |
| MANUEL URIARTE | ) | |

**<u>PROPOSED JURY INSTRUCTION AS TO TESTIMONY OF
JORGE LOPEZ</u>**

NOW COMES THE DEFENDANTS, Glenn Lewellen, Hector Uriarte, Jorge

Uriarte, Manuel Uriarte, Tony Sparkman, and Robert Cardena, by and through their

respective attorneys, and propose the attached jury instruction to be given during the

testimony of  Jorge Lopez.

Respectfully submitted,


/s/ Robert A. Loeb


/s/ Keith A. Spielfogel
Attorneys for Manuel Uriarte

Robert A. Loeb
190 S. LaSalle St., Suite 520
Chicago, IL 60603
312-368-0611
ARDC No. 1681990

Keith A. Spielfogel
190 S. LaSalle St. Suite 520
Chicago, IL 60603
312-236-6021
ARDC No. 2689537

1

You have heard testimony from Jorge Lopez, who:

(a) received benefits from the government in connection with this case, an agreement to a recommendation of a lesser sentence in exchange for his plea and truthful testimony.
(e) has pleaded guilty to an offense arising out of the same occurrence for which a defendant is now on trial. His guilty plea is not to be considered as evidence against the defendant.
You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

Seventh Circuit 3.13
Modified for the individual circumstances of the witness

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
         )      Case No. 09 CR 332-5
    v.        )      Honorable Joan B. Gottschall
         )
MANUEL URIARTE       )

## PROPOSED JURY INSTRUCTION AS TO TESTIMONY OF ANDRES FLORES

NOW COMES THE DEFENDANTS, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Tony Sparkman, and Robert Cardena, by and through their respective attorneys, and propose the attached jury instruction to be given during the testimony of Andres Flores.

Respectfully submitted,


/s/ Robert A. Loeb


/s/ Keith A. Spielfogel
Attorneys for Manuel Uriarte

Robert A. Loeb
190 S. LaSalle St., Suite 520
Chicago, IL 60603
312-368-0611
ARDC No. 1681990

Keith A. Spielfogel
190 S. LaSalle St. Suite 520
Chicago, IL 60603
312-236-6021
ARDC No. 2689537

You have heard testimony from Andres Flores, who:

(a) received benefits from the government in connection with this case, an agreement to a recommendation of a lesser sentence in exchange for his plea and truthful testimony.
(e) has pleaded guilty to an offense arising out of the same occurrence for which a defendant is now on trial. His guilty plea is not to be considered as evidence against the defendant.
You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.


Seventh Circuit 3.13
Modified for the individual circumstances of the witness



## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2 | **DATE** | 12/2/2011 |
| **CASE TITLE** | USA vs. Glenn Lewellen | | |

**DOCKET ENTRY TEXT**

Order Writ of Habeas Corpus Ad Testificandum as to Jason L. Coday to appear before Judge Joan B. Gottschall on December 19, 2011 to testify in the defendant's case before this court.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

FILED
2011 DEC - 2  AM 9: 39
CLERK
U.S. DISTRICT COURT

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| SAUL RODRIGUEZ, et al, | ) | |
| [Glenn Lewellen] | ) | |
| Defendants. | ) | |

**ORDER**

On the petition of counsel for defendant GLENN LEWELLEN and it

appearing to the Court that:

| | |
|---|---|
| Name: | Jason L. Coday |
| Date of Birth: | 11/17/1973 |
| Sex: | Male |
| Race: | Caucasian |
| Prisoner No.: | B70825 |

has been and now is, in due process of law, incarcerated in the following institution:

Lawrence Correctional Center
Sumner, Illinois  62466

And that said person, a witness for the defendant, should appear in this case in the

United States District Court at Chicago, Illinois on December 19, at 10:00 a.m. to

testify in the defendant's case before this Court.

IT IS THEREFORE ORDERED that the following persons:

| | |
|---|---|
| UNITED STATES MARSHAL | WARDEN |
| Northern District of Illinois | Lawrence Correctional Center |
| Chicago, Illinois | Sumner, Illinois  62466 |

1

bring or cause to be brought before this Court, at said time on said date, in the

United States Courthouse in Chicago, Illinois, the body of the said defendant; and

that a Writ of Habeas Corpus Ad Testificandum, directed to said persons, so

commanding them, be issued by the Clerk of this Court.

ENTER:

_____
Judge Joan B. Gottschall

DATED at Chicago, Illinois
This _____ day of _____

DEC 0 2 2011

2

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                   Plaintiff,   )
                           )
         v.            )    No. 09 CR 332
                           )    Judge Joan B. Gottschall
GLENN LEWELLEN,         )
                           )
            Defendant.  )

*UNOPPOSED MOTION TO MODIFY CONDITIONS OF BOND*

GLENN LEWELLEN, through counsel, and without objection from the government or Pre-trial Services, respectfully requests that his conditions of bond be modified from December 15, 2011, until January 2, 2012, to allow him to participate in church and family activities during the holiday season.  Mr. Lewellen requests that he be given a curfew, from 7: 00 a.m. until 11:00 p.m., on trial days, and from 9:00 a.m. until 11:00 p.m., on non-trial days.  In support of this motion, Mr. Lewellen states the following:

(1)     He has been compliant with all of his conditions of bond, since his release from custody;

(2)     Mr. Lewellen's church and his family have a number of gatherings during the holiday season;

(3)     Counsel has consulted with Pre-trial Services and with the government, neither of whom object to this request;

(4)     A proposed Agreed Order is attached for the Court's review.

1

DATE:       December 7, 2011           Respectfully submitted,

                                       By:    s/Andréa E. Gambino
                                              s/Matthew J. Madden
                                              Attorneys for Glenn Lewellen

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2011, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which sent notification of

such filing to the following:

Steven Block, Esq.
Terra Reynolds, Esq.
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604


and I hereby certify that I have mailed by United State Postal Service or hand

delivered the document to the following non-CM/ECF participants: N/A.


DATE:       December 7, 2011           Respectfully submitted,

                                       By:    s/Andréa E. Gambino
                                              Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| GLENN LEWELLEN, | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED AGREED ORDER**

IT IS HEREBY ORDERED THAT conditions of bond for GLENN

LEWELLEN are modified to allow Mr. Lewellen to have a curfew of 7:00 a.m. to

11:00 p.m., during trial weeks, and 9:00 a.m. to 11:00 p.m. during the non-trial

week, from December 15 until January 2, to allow Mr. Lewellen to participate in

preparation for the Christmas holidays, to attend church services and gatherings,

and to participate in family events during the holidays.

IT IS FURTHER ORDERED that Mr. Lewellen continue to keep Pre-trial

Services informed of his activities during this time period, as directed by his Pre-

trial Services Officer, Brian Kolbus.

DATE:        December 7, 2011

ENTER:

_____
Judge Joan B. Gottschall

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 CR 332 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| HECTOR URIARTE, | ) | |
| Defendant. | ) | |

### PROPOSED JURY INSTRUCTION AS TO TESTIMONY OF LOUIS VEGA

NOW COME THE DEFENDANTS, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Tony Sparkman, and Robert Cardena, by and through their respective attorneys, and propose the attached jury instruction to be given during the testimony of Louis Vega.

Respectfully submitted,

s/ Molly Armour
One of the attorneys for
Hector Uriarte

Law Office of Molly Armour
4050 N. Lincoln Avenue
Chicago, IL 60618
(773) 746-4849 | phone
(773) 439-6454 | fax
mearmour@gmail.com

You have heard testimony from **Louis Vega**, who:

(b) received benefits from the government in connection with a federal case in the Southern District of New York, namely an agreement to a recommendation of a lesser sentence in exchange for his plea and truthful testimony.

(e) has pleaded guilty to an offense arising out of the same occurrence for which a defendant is now on trial.  His guilty plea is not to be considered as evidence against the defendant.

You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

Seventh Circuit Pattern Instruction 3.13 (modified).

## CERTIFICATE OF SERVICE

I, Molly Armour, one of the attorneys for defendant Hector Uriarte, hereby certify that the **Proposed Jury Instruction as to the Testimony of Louis Vega** was filed electronically using the Court's CM/ECF E-Filing system and was served on all parties on December 7, 2011, via the Court's electronic filing system in accordance with Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.


s/ Molly Armour


Law Office of Molly Armour
4050 N. Lincoln Avenue
Chicago, IL 60618
(773) 746-4849 | phone
(773) 439-6454 | fax
mearmour@gmail.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )  |  |
| ) | No. 09 CR 332 |
| v.  ) |  |
| ) | Hon. Judge Joan B. Gottschall |
| GLENN LEWELLEN, and ) |  |
| HECTOR URIARTE |  |

## GOVERNMENT'S REPLY TO DEFENDANTS' RESPONSES TO MOTION *IN LIMINE* TO PRECLUDE INTRODUCTION OF EVIDENCE OF ABDUCTION AND SEXUAL ASSAULT OF A DRUG COURIER

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby replies to the responses of defendants Glenn Lewellen ("Lewellen") and Hector Uriarte ("Uriarte") to the government's motion *in limine* to preclude defendants from attempting to introduce substantive evidence, or otherwise mention or question any witness, relating to the abduction of one of Saul Rodriguez' drug couriers ("Courier A") in the mid-1990s. Defendants have failed to articulate a legitimate basis under the Federal Rules of Evidence for admission (or other appropriate use) of such evidence. Indeed, it is clear that the defendants want to present this evidence for one purpose: to secure jury nullification by making Rodriguez, and by extension the government, appear as distasteful to the jury as possible. Since the defendants are bound by the rules of evidence and are not allowed to defend their cases in that manner, the government's motion in limine should be granted.

### ARGUMENT

Neither Lewellen nor Uriarte has established a legal basis for the admission or other use of such evidence. Rather, as the government argued in its motion in limine, such evidence: (a) is not admissible as direct evidence negating the charged offenses; (b) is not admissible under Federal Rule

of Evidence ("Rule") 404(b); (c) is not inconsistent with testimony to be given by Saul Rodriguez

on direct examination; and (d) is not probative of Rodriguez' character for untruthfulness as required

under Rule 608(b).  In addition, the evidence is in no way relevant to perfecting the impeachment

of witness Lisette Venegas, and the timing of the government's motion in limine is entirely

appropriate.  In sum, there is simply no lawful basis for the defendants to offer into evidence or

otherwise use this evidence at trial.

A.      The Evidence of Courier A's Abduction Is Not Directly Relevant to Either Uriarte's or
        Lewellen's Defenses.

        1.      Uriarte

        Uriarte asserts that the evidence of Courier A's abduction is directly probative of his

innocence.  In particular, Uriarte theorizes that, since Rodriguez was acquainted with alleged La

Raza street gang members who, he supposes, abducted Courier A at Rodriguez' direction, evidence

of Courier A's abduction demonstrates the Rodriguez had access to the La Raza street gang, which,

in turn, provided a "possible source" for the individuals who committed the offenses that Uriarte is

charged with having committed with Rodriguez.  This argument errs both factually and legally.

        Factually, the argument errs because the evidence does not establish that Courier A's

abductors were La Raza gang members.  In debriefings, Rodriguez asserted that he enlisted a

member of the Gangster Disciples street gang to abduct Courier A and interrogate her concerning

the location of the missing marijuana.  Uriarte has proffered no evidence to support his speculation

that La Raza gang members were responsible for Courier A's abduction.  Thus, to the extent

Uriarte's theory of admission rests upon proof that La Raza committed Courier A's abduction, it

crumbles due to an inadequate factual basis.

        Moreover, Uriarte's argument fails even if La Raza gang members were involved in the

abduction of Courier A.  Evidence that Rodriguez knows other people who engage in illegal behavior (even behavior similar to the charged conduct) is not at all probative of whether or not the defendant committed the offenses with which he is charged.  Allowing such evidence, an effort to show indirectly and by inference that someone other than the defendant committed the crime, would be tantamount to elimination of the relevance rules because defendants would be allowed to question any cooperating witness about any other person with whom  he or she was acquainted for the purpose of establishing an "alternative perpetrator" defense.

A simple hypothetical scenario highlights this point.  Imagine that one individual robs a bank, while a second individual serves as the getaway driver.  If the individual who entered the bank is arrested and later becomes a government witness at the trial of the alleged getaway driver, then, under Uriarte's theory, the defendant could present evidence about every single person capable of operating a motor vehicle who is acquainted with the cooperating defendant, under the theory that such evidence is relevant to show that the robber could have enlisted other persons as the getaway driver.[1]  Clearly, this is not the law.

It is true that "a defendant can seek to admit evidence of other crimes under [Rule 404(b)] if it tends to negate the defendant's guilt of the crime charged against him.  This is commonly referred to as 'reverse 404(b) evidence.'"  *United States v. Seals*, 419 F.3d 600, 606 (7th Cir. 2005).  To be admissible, "reverse 404(b) evidence must be relevant, must not constitute inadmissible hearsay, and must survive the balancing of competing considerations under Rule 403.  *United States v. Aleyato*, 628 F.3d 917, 921 (7th Cir. 2010) (citations omitted).  "The threshold inquiry a court

---

[1] Other examples can readily be imagined (*e.g.*, the source of supply in a drug case or counterfeit currency case, the participants in a mortgage fraud scheme).

3

must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988).

The *Seals* case is particularly instructive to this case.  In *Seals*, two bank robbers appealed the district court's denial of their attempt, under Rule 404(b), to present evidence of another bank robbery.  The defendants claimed that similarities between the robberies established *modus operandi*, thereby suggesting that the individuals who committed the other robbery had, in fact, committed the robbery with which defendants were charged.  Applying a Rule 402 relevance analysis, the Seventh Circuit upheld the district court's exclusion of evidence concerning the other robbery because, despite several general similarities, the robberies were dissimilar enough that the defendant could not establish *modus operandi* for the charge robbery (and, therefore, that the individuals who committed the other robbery were the likely perpetrators of the robbery for which the defendants were charged.  Other cases have likewise held that reverse 404(b) evidence should be excluded if it is not probative of a fact that negates defendant's guilt of the charged offenses.  *See, e.g., Aleyato*, 628 F.3d at 921-22 ("Nothing in Alayeto's proffer tended to demonstrate that Gonzalez compelled her or any other female to take or conceal the drugs, let alone tended to prove that Gonzalez's conduct around others necessarily negated her own intent"); *United States v. Lewis*, 92 Fed.Appx. 354, 2004 WL 549800 (7th Cir. 2004) (unpublished) (in gun possession case, evidence that other person in car had motive to dispose of a gun not admissible as reverse 404(b) evidence because proof of other person's motive is not probative of whether other person actually possessed the gun, so it did not tend to negate defendant's guilt); *United States v. Walton*, 217 F.3d 443, 449-450 (7th Cir. 2000) (evidence of ATM theft four months earlier is irrelevant because it neither

tended to prove or disprove defendant's commission of the alleged offense); *see also United States v. Murray*, 474 F.3d 938, 940 (7th Cir. 2007) (defendant's intent not negated by reverse 404(b) evidence unless such evidence establishes a "pattern of criminal conduct" by individual defendant claims used her to commit a crime without her knowledge).

Uriarte's attempt to admit evidence of Courier A's abduction as "reverse 404(b)" evidence fails on the relevance requirement because what Uriarte offers at this point is merely speculation that (a) Courier A's abductors were La Raza gang members, (b) that La Raza provided a "possible source" of individuals whom Rodriguez could call upon to commit abductions, (c) Rodriguez called upon La Raza members to commit the abductions charged in the indictment, and (d) Uriarte did not also participate in the abductions.  The multiple levels of unsupported speculation needed for defendant to bring the Courier A incident into evidence as evidence of his innocence easily takes it outside the realm of legitimate "reverse 404(b)" evidence.  Uriarte cites no authority for his position that such evidence is admissible in this case.[2]  Precluding such evidence in no way impinges on defendant's constitutional right to defend himself.  *See Aleyato*, 628 F.3d at 922 (citing *Holmes v. South Carolina*, 547 U.S. 319 (2006), court notes that "judges may exclude marginally relevant evidence and evidence posing an undue risk of confusion of the issues without offending a defendant's constitutional rights.").

Finally, even if this Court finds some marginal relevance to Courier A's abduction, it should still be excluded under Rule 403 because the extreme prejudice and danger of confusion

---

[2] To the extent Uriarte asserts that he should be allowed to conduct bias impeachment of Rodriguez based upon Rodriguez' alleged bias to protect La Raza gang members, that argument fails because his "reverse 404(b)" argument fails.  There is simply no non-speculative basis to conclude that Rodriguez, in order to protect La Raza, is fabricating his testimony about the named defendants' participation in the charged offenses.

substantially outweighs any marginal probative value. *See also United States v. Della Rose*, 403 F.3d 891, 904-905 (2005) (in prosecution for mail fraud and production of false identification documents, district court properly excluded under Rule 403 proffered reverse 404(b) evidence that a former associate of defendant had used false social security cards due to minimal probative value).

Accordingly, the evidence of Courier A's abduction is not admissible as direct evidence negating the charged offenses and, therefore, should be excluded.

### B.   Lewellen

Lewellen briefly argues that evidence about Courier A's abduction is relevant to the charged offenses because drugs that were alleged to have been possessed as part of the charged conduct were stored at Courier A's residence.   Even assuming that fact is true, the fact that Courier A was abducted and assaulted is in no way probative of the fact that drugs were stored at Courier A's residence.   The alleged impeaching fact can easily be established without any need to delve into the highly prejudicial fact that Courier A was abducted and assaulted.

### II.   Neither Defendant Has Offered a Valid Rule 404(b) Basis for Admission of Evidence Concerning the Courier A Abduction Incident.

### A.   Uriarte

Uriarte claims that evidence of Courier A's abduction is additionally relevant and admissible under Rule 404(b) because it establishes that Rodriguez possessed both (a) the motive to falsely implicate Uriarte (to protect La Raza gang members), and (b) the opportunity to enlist others to perpetrate the charged kidnappings.   These arguments are derivations of the defendant's reverse 404(b) argument which, for the reasons given above, fails because they are constructed upon a series of factual speculations and inferences.   Since the evidence is not admissible to prove motive or opportunity, defendants should be precluded from offering substantive evidence about Courier A's

abduction or referencing the incident in questioning of Rodriguez. *See United States v. Taylor*, 522 F.3d 731, 736 (7th Cir. 2008) (since defendant was unable to establish factual basis for impeachment, district court properly precluded defense from pursuing line of impeachment because defendant was "not permitted to cross-examine a witness about a particular topic without a good-faith belief that the answers [would] be helpful to [his] case").

      B.    <u>Lewellen</u>

Lewellen asserts that evidence of Courier A's abduction demonstrates Rodriguez's "*modus operandi*, planning, and deceit in dealing with individuals whom he perceives to have wronged him." This argument should be rejected.

As a starting point, as the government discussed in its opening motion, the two alleged *modus operandi* events are extremely different: (a) retaliation against a courier suspected of theft by abduction and interrogation; and (b) testifying falsely against a former business partner suspected of stealing your money. To the extent defendant is arguing that evidence of Courier A's assault is *modus operandi* evidence of the charged drug robberies, defendant offers it directly for a propensity purpose, *i.e.*, to show action in conformity therewith. Here, Lewellan is arguing little more than Rodriguez is an inveterate criminal who uses violence, which is inappropriate under Rule 404(b).

"[A] high degree of similarity [between the acts] is required" when a party seeks to argue that the acts are evidence of *modus operandi*. *United States v. Foster*, 652 F.3d 776 (7th Cir. 2011). The Seventh Circuit has held that there must be "a singular strong resemblance to the pattern of the offense charged, . . . and that the similarities should be sufficiently idiosyncratic to permit an inference of pattern for purposes of proof. The focus [then] . . . should be on whether the similarities between the other acts evidence and the charged crime clearly distinguish the defendant from other

criminals committing the same crime." *United States v. Smith*, 103 F.3d 600, 603 (7th Cir.1996) (internal citations omitted).  Rodriguez' *modus operandi* argument collapses upon this requirement because of the extremely unrelated nature of the alleged retaliation; there is simply no relationship between a violent abduction and a willingness to testify falsely against somebody at trial.  As the government noted in its motion, the facts undermine any claim of pattern between the two incidents because, although Lewellen allegedly stole approximately $400,000 from Rodriguez - which was much greater than the value of the marijuana that Courier A was suspected of stealing - Lewellen has not alleged that Rodriguez abducted Lewellen.  Nor is there evidence that Rodriguez testified falsely against Courier A.

III.    Rodriguez' Later Disclosure to the Drug Enforcement Administration of His Involvement in the Courier a Abduction Is Not Probative of Truthfulness.

        Both Lewellen and Uriarte assert that they should be allowed to question Rodriguez about the Courier A abduction for the purpose of directly impeaching him.  Their theory is that, because Rodriguez did not discuss the incident during his early debriefing by DEA agents (who first learned of the abduction from Courier A), Rodriguez was dishonest with DEA.  Thus, they seek to impeach Rodriguez by omission.

        "The theory of impeachment by omission is that 'if [a] former statement fails to mention a material circumstance presently testified to, which it would have been natural to mention in the prior statement, then the prior statement is considered sufficiently inconsistent' to be admitted to impeach the present testimony."  *United States v. Useni*, 516 F.3d 634, 651 n.13 (7th Cir. 2008) (internal citations and quotation marks omitted).  The cases where impeachment by omission has been allowed involve a direct linkage between the subject matter of the statement and the omitted material.  *See, e.g., Moylan v. Meadow Club, Inc.*, 979 F.2d 1246, 1248-50 (7th Cir. 1992) (fact

8

omitted from contemporaneous letter dealing with specific issue in dispute between the parties); *United States v. Standard Oil Company*, 316 F.2d 884, 892 (7th Cir. 1963) (in pretrial interview, when asked to recount statements made in a telephone call with oil company employee, government witness failed to mention incriminating statements allegedly made by oil company employee, and testified to by government witness at trial); *R.R. Donnelly & Sons v. Vanguard Transportation Systems*, 641 F.Supp.2d 707, 713 (N.D.Ill. 2009) (in dispute about whether truck driver arrived timely at distribution facility, contemporaneous letter by trucking company official omits reference to the time the driver arrived).

In this case, defendants should not be allowed to impeach Rodriguez about the fact that he did not mention the Courier A abduction during his early debriefings with DEA. First, Rodriguez was questioned about an extensive history of illegal activity with many people, including his (and their) involvement with several murders and numerous kidnappings unrelated to the abduction of Courier A. The fact that Rodriguez did not *sua sponte* volunteer information about the unrelated abduction of one of his drug couriers in the mid-1990s is not sufficiently linked to the topics discussed during the debriefings so as to establish a basis for impeachment by omission.

Defendants point to no lie, misstatement or even inconsistent statement that defendant made with respect to the Courier A incident, nor do they demonstrate how such omission was part of a deliberate effort to deceive. In any event, neither defendant articulates how it "would have been natural" for Rodriguez to mention the Courier A incident during detailed debriefings about separate, and extensive, criminal activity. Instead, defendants attempt to broaden the concept of impeachment so as to include any failure by a cooperating witness to volunteer information about conduct unrelated to the focus of government interrogators, even when there is no evidence to suggest that

9

that failure was part of a deliberate effort to deceive.  *See, e.g., Matter of Seidman*, 37 F.3d 911, 937

(3d. Cir. 1994) (declining to find evidence of deponent's untruthfulness because "[a] deponent's

failure to volunteer information that the deponent might wish to conceal but is not directly asked

about does not show an intent to deceive").

IV.    Rodriguez' Lies to Courier A as Part of the Abduction Are Tangential and Not Probative of
       Rodriguez Truthfulness as a Testifying Witness.

        Lewellen also argues that the lies Rodriguez told to Courier A during the course of the

abduction are probative of his character for untruthfulness.[3]  However, any lies that Rodriguez told

to Courier A as a means of inducing her to be abducted are not related to this case.  District courts

have broad discretion to not allow impeachment with regard to matters unrelated to the present case.

*See United States v. Acosta*, 534 F.3d 574, 592 (7th Cir. 2008) (affirming district court's order

precluding cross-examination about inconsistencies in statements concerning an unrelated incident,

Court states:  "As the district court noted, defense counsel had more than sufficient opportunity to

impeach the witnesses' credibility.  Allowing cross-examination into the origins of the arson

fire—particularly given its lack of relevance to the events at issue in this prosecution—would have

sidetracked the trial and risked confusing the jury.").

        In this case, the defendants will have a full opportunity to cross-examine Rodriguez with

respect to an enormous amount of evidence, including those matters most directly related to his bias

to testify untruthfully.  The few and discrete lies that Rodriguez made to Courier A on the date of

her abduction are unrelated to this case, and they were not made under oath or to government

_____

        [3] Lewellen incorrectly asserts that Rodriguez lied when he told the abductors that he
knew that Courier A had stolen marijuana from Rodriguez.  There is no basis for this assertion.
At the time that Rodriguez arranged for the abduction, he actually believed that Courier A had
stolen marijuana from him.

10

officials.  As in *Acosta*, allowing the defendants to impeach Rodriguez with respect to those lies will only confuse the jury and unfairly prejudice the government by allowing the defendants to explore the abduction of Courier A.  Therefore, under Rule 403, the defendants should not be allowed to impeach Rodriguez on those points.

V.    Evidence Concerning Courier A's Abduction Would Not "Perfect" Impeachment of Lisette Venegas.

        Lewellen also argues that he should be allowed to present evidence concerning Courier A's abduction for the purpose of "perfecting" impeachment of witness Lisette Venegas.[4]  That argument should be rejected.

        First, evidence of Courier A's relationship to Rodriguez does not impeach Venegas because, according to Venegas own testimony (as quoted by Lewellen in his response), she only met Courier A on a single occasion to count money, not to courier drugs.  Venegas testified (truthfully) based upon her limited knowledge of Rodriguez' drug operation.  Since Venegas was unaware of whether Courier A was also working as one of Rodriguez' drug couriers, her testimony is not inconsistent with evidence showing that Courier A also worked as one of Rodriguez' drug couriers prior to Venegas's work as a drug courier.  Accordingly, the evidence of Courier A's work as a drug courier simply does not impeach Venegas' trial testimony.

        Second, even if evidence of Courier A's *work as a drug courier* for Rodriguez could impeach Venegas, evidence of Courier A's *abduction and sexual assault* has no impeaching value at all.  The allegedly impeaching fact is that Courier A was acting as one of Rodriguez drug couriers at the same

_____

        [4] If admission of the evidence on this basis is allowed, this Court would need to give the jury a limiting instruction that such evidence may only be considered for evaluating Venegas' credibility and for no other purpose, including for evaluation of Rodriguez' credibility.

time that Venegas was also working as one of his couriers.  There is simply no reason for Lewellen

to present evidence of Courier A's abduction and assault in order for defendant to accomplish his

alleged goal of merely of impeaching Venegas.[5]  Evidence of the abduction and assault should be

excluded as irrelevant under Rule 402.

Finally, even if this Court concludes that evidence of Courier A's abduction and/or sexual

assault has some relevance to perfecting impeachment of Venegas, the evidence should nonetheless

be excluded under Rule 403 because of its absolutely minimal probative value is substantially

outweighed by the extreme unfair prejudice that such evidence will cause the government.

## VI.   The Timing of the Government's Motion in Limine Is Entirely Appropriate and Did Not Unfairly Prejudice the Defendant.

Finally, Lewellen complains that he was prejudiced because the government did not file its

motion in limine to exclude evidence of the abduction and sexual assault of Courier A before

Lewellen delivered his opening argument.  His complaint is a non-starter.  The government, of

course, is never obligated to file a motion in limine in the manner and timing of defendant's

choosing so as to aid a defendant in crafting his opening argument.  Lewellen always had the ability

to file a motion in limine to resolve these issues ahead of trial.  Lewellen's decision not to file such

a motion in limine - as well as his decision to emphasize and rely upon irrelevant evidence in his

opening statement - results from his own strategic choices.  Since defendant's unwise strategic

choices cannot transform otherwise irrelevant evidence into relevant evidence, the timing of the

government's motion in limine cannot bestow admissibility upon the otherwise improper evidence

---

[5] The evidence and discovery tendered, however, indicate that Venegas and Courier A did *not* work for Rodriguez as drug couriers at the same time.  Venegas says she started in late 1998 or 1999, and Courier A says that her abduction and sexual assault – which ended her work as a drug courier – happened around 1996 or 1997.

of Courier A's abduction and sexual assault.

## VII.   Defendants Mis-Characterize the Sexual Assault Evidence

Lastly, and only as a matter of clarification, it is important to note that the defendants repeatedly mis-characterize the nature of the sexual assault evidence.  To be plain, there is no evidence that Rodriguez directed the abductors of Courier A to commit the sexual assault.  Thus, even if evidence of Courier A's abduction is deemed admissible for any purpose, the fact of the sexual assault is completely irrelevant for any purpose.

The defendants unfortunately refrain from delving into the facts about the sexual assault. By doing so, they conflate different incidents, suggesting that Rodriguez was heard on the phone with the abductors shortly before the sexual assault.[6]  That suggestion, intentional or not, is untrue. Rodriguez' statements that he specifically instructed Courier A's abductors not to sexually assault Courier A and that he did not learn of the sexual assault until at some point after the incident, is consistent with Courier A's version of events.  According to Courier A's grand jury testimony, the sexual assault occurred at some point after her abductors (and other unidentified individuals occupying the house in which she had been held) appeared to have departed.  Courier A testified that the house was "very quiet" for a period of time, following which she heard an individual calling out the name "Bubba" numerous times and receiving no response.  Ultimately, this individual came down to the basement where Courier A was restrained and asked her about the whereabouts of "Bubba," to which the courier responded that she did not know.  It was this last individual who

---

[6] For example, Lewellen asserts that  Rodriguez "spoke to the kidnappers on the phone while they held [Courier A], bound and gagged, and threatened her with bodily harm – including forcing her to perform oral sex on one of her captors."  Lewellen, Response to Government's Motion In Limine (11/29/11), at p.4.

sexually assaulted Courier A, who has in no way alleged that Rodriguez orchestrated the sexual assault.  She never said that he was on the phone directing the assault to occur.

Therefore, regardless of the admissibility of evidence concerning Courier A's abduction, evidence of the sexual assault should not be admissible for any purpose in this case.  Moreover, any relevance would be substantially outweighed by the unfair prejudice of admitting the evidence and, therefore, should be excluded under Rule 403.

<u>CONCLUSION</u>

Based on the foregoing, the government respectfully requests that this Court grant the government's motion *in limine* to preclude evidence regarding the abduction and sexual assault of a drug courier.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     /s Steven A. Block_____
        TERRA REYNOLDS
        STEVEN A. BLOCK
        TIFFANY J. TRACY
        Assistant United States Attorneys
        United States Attorney's Office
        219 S. Dearborn St., 5th Floor
        Chicago, Illinois  60604

Dated:  December 7, 2011

### UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2
### Eastern Division

UNITED STATES OF AMERICA

                              Plaintiff,

v.                                       Case No.: 1:09−cr−00332

                                       Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                              Defendant.

### NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, December 9, 2011:

      MINUTE entry before the Honorable Joan B. Gottschall:Motion to modify conditions of release [721] is granted as to Glenn Lewellen (2). Bond conditions modified from December 15, 2011, until January 2, 2012, to allow him to participate in church and family activities during the holiday season. Curfew 7:00AM until 11:00PM on trial days and from 9:00AM until 11:00PM on non−trial days. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 09 CR 332-5 |
| v. | ) | Honorable Joan B. Gottschall |
| | ) | |
| MANUEL URIARTE | ) | |

**<u>PROPOSED JURY INSTRUCTION AS TO TESTIMONY OF
SAUL RODRIGUEZ</u>**

NOW COMES THE DEFENDANTS, Glenn Lewellen, Hector Uriarte, Jorge

Uriarte, Manuel Uriarte, Tony Sparkman, and Robert Cardena, by and through their

respective attorneys, and propose the attached jury instruction to be given during the

testimony of Saul Rodriguez

Respectfully submitted,


/s/ Robert A. Loeb


/s/ Keith A. Spielfogel
Attorneys for Manuel Uriarte

Robert A. Loeb
190 S. LaSalle St., Suite 520
Chicago, IL 60603
312-368-0611
ARDC No. 1681990

Keith A. Spielfogel
190 S. LaSalle St. Suite 520
Chicago, IL 60603
312-236-6021
ARDC No. 2689537

You have heard testimony from Saul Rodriguez, who:

(a) received benefits from the government in connection with this case, an agreement to a recommendation of a lesser sentence in exchange for his plea and testimony.
(b) has pleaded guilty to an offense arising out of the same occurrence for which a defendant is now on trial. His guilty plea is not to be considered as evidence against the defendant.
You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

Seventh Circuit 3.13
Modified for the individual circumstances of the witness

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2011, I electronically filed the foregoing Motion with the Clerk of the Court using the District"s ECF/Pacer system, which will send notification of such filing to all parties.

_____

/s/ Robert A. Loeb
190 S. LaSalle St.
Suite 520
Chicago, IL 60603
312-368-0611
robertloeb@att.net

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2 | **DATE** | 12/12/2011 |
| **CASE TITLE** | USA vs. Glenn Lewellen | | |

**DOCKET ENTRY TEXT**

Motion hearing held.  MOTION by USA in limine [689] is denied for the reasons stated in open court.

Docketing to mail notices.

00:15

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 09 CR 332 |
| v. | ) |
| | ) Hon. Judge Joan B. Gottschall |
| GLENN LEWELLEN, *et al.* | ) |

## GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
## RELATED TO ZONING INCIDENT

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby moves this Court, *in limine*, as follows:

### Background

***Re-zoning Incident***

In or around 1999, cooperating defendant Saul Rodriguez was told by defendant Glenn Lewellen that certain property located in the 2700 block of West 37th Place in Chicago was available for purchase.  Thereafter, Rodriguez purchased a single family home and five vacant lots at that location.  Following his purchase of the property, Rodriguez obtained a loan to develop the vacant lots.  In order to develop the property, however, Rodriguez needed to have the properties re-zoned.

After trying unsuccessfully for approximately two years to obtain a meeting with a local official ("Official A")[1] regarding his re-zoning request, Rodriguez was advised by an acquaintance to contact two attorneys ("Lawyer 1" and "Lawyer 2"), whom the acquaintance represented could help expedite the request, and Rodriguez did so.  After hearing that Rodriguez had been trying to

---

[1] The individuals referred to herein as "Official A," "Lawyer 1," and "Lawyer 2" are not being referred to by name given that this incident involves allegations of criminal activity of which none of these individuals has been charged or convicted.

get the property re-zoned for two years, Lawyer 2 suggested that they "get Official A on the line." Lawyer 2 placed a call (Rodriguez believed) to Official A. Rodriguez heard Lawyer 2 say over the phone that he had someone who needed to get property re-zoned. While Lawyer 2 was on the phone, Lawyer 1 assured Rodriguez, "This will be done shortly." After Lawyer 2 completed his call, he instructed Rodriguez to work with Lawyer 1 to finalize the transaction. Lawyer 1 then informed Rodriguez that the re-zoning would cost $15,000, and that it was necessary for Rodriguez to hire Lawyer 1 as counsel for the real-estate closings. Lawyer 1 also said that he could fix any problems that occurred during the construction. Lawyer 1 told Rodriguez that the $15,000 would have to be paid before he could meet with Official A.

After paying the $15,000 to Lawyers 1 and 2, Rodriguez was able to get a brief meeting with Official A. Official A told Rodriguez that "they" had called, and there would be no problem in having the properties re-zoned. Shortly thereafter, the property was re-zoned without incident. Based on the foregoing, Rodriguez believed that some portion of the $15,000 fee he paid to Lawyers 1 and 2 was used to pay bribes to Official A and others to secure the re-zoning approval.

In an article published by the *Chicago Sun-Times* on November 17, 2011, Official A was identified as a potential defense witness in this case. In the article, Official A was reported as saying that he had approved re-zoning of Rodriguez's property in 1999, that he thought the development would beautify the neighborhood, and that at the time he had no way of knowing that Rodriguez was anything other than a developer. *See* "Did Cop Join Drug Informant to Cash In?," Frank Main, *Chicago Sun-Times*, November 17, 2011.

### Communications with Defense Counsel

The fact that Rodriguez either paid an illegal bribe, or believed that he had done so, was

disclosed to the defense pursuant to *Giglio v. United States*, 405 U.S. 150 (1972).

Counsel for the defense have listed Official A as a potential defense witness. Based on this fact, the government anticipates that one or more of the defendants plans to:

(a)     elicit from Rodriguez the fact that he told the government that he believed that he had paid an illegal bribe to Official A and others through Lawyers 1 and 2;

(b)     call Official A as a witness in the defense case to deny having received a bribe from Rodriguez, and to state that he had no idea that Rodriguez was anything other than a developer; and

(c)     argue that Official A's testimony shows that Rodriguez lied about having paid a bribe to Official A in order to curry favor with the government, and thus to cast doubt on the truthfulness of Rodriguez's testimony regarding the defendants.

### Argument

**Official A's Potential Testimony Does Not Contradict the Information Provided by Rodriguez Regarding the Re-zoning Incident and Thus May Not Be Admitted as Impeachment.**

As indicated above, Rodriguez has not claimed that he paid a bribe directly to Official A or to anyone else, or that he observed Lawyer 1 or Lawyer 2 pay bribes to Official A or anyone else. Nor has Rodriguez claimed that Official A or Lawyer 1 or Lawyer 2 ever acknowledged to Rodriguez that any of them had paid or received a bribe. Thus, Official A's potential testimony that he approved Rodriguez's re-zoning request for legitimate reasons, or that he "had no idea" Rodriguez was anything other than a developer, in no way contradicts Rodriguez's version of these events. To the contrary, Official A's potential testimony could indicate that Lawyers 1 and 2 kept Rodriguez's money or paid it to persons other than Official A, or that Rodriguez simply was mistaken in assuming that part of the fee charged by Lawyers 1 and 2 was used to pay bribes. Because Rodriguez did not, and did not claim to, have personal knowledge that Official A accepted a bribe in exchange for approving the re-zoning of Rodriguez's property, even a flat denial by

Official A would not contradict Rodriguez, and would not show that Rodriguez lied to curry favor with the government, or evince any bias against the defendant or in favor of the government.  Thus, such testimony is not admissible to show bias on the part of Rodriguez.

Likewise, because the potential testimony of Official A would not contradict Rodriguez's description of the re-zoning incident, it is not probative of Rodriguez's character for untruthfulness (and would in any event be barred under Fed. R. Evid. 608(b), which prohibits the admission of extrinsic character evidence).  *See United States v. Salem*, 578 F.3d 682, 686 (7th Cir. 2009); *United States v. Neighbors*, 590 F.3d 485, 496 (7th Cir. 2009). In sum, Official A's potential testimony is not relevant or admissible as a means of casting doubt on Rodriguez's credibility.

Indeed, Official A's potential testimony is not relevant to any other issue in the case. It is obviously irrelevant to any issue in the case that, after a single, brief meeting, Official A had limited information concerning Rodriguez and, thus, purportedly had "no reason to believe that Rodriguez was anything other than a developer." Even if defendant could identify some possible theory of relevance, the testimony would properly be excluded under Fed. R. Evid. 403 because its limited probative value would be substantially outweighed by the danger of confusing and misleading the jury, as well as the danger of causing undue delay by requiring a mini-trial to determine whether Lawyers 1 and 2, and/or Official A, did in fact pay or receive bribes in connection with the re-zoning of Rodriguez's property. *See United States v. Holt*, 486 F.3d 997, 1002 (7th Cir. 2007) (even if relevant, evidence may be excluded under Rule 403); *United States v. Miles*, 207 F.3d 988, 993 (7th Cir. 2000) (same).

Accordingly, defendant should be precluded from introducing any testimony from Official

A.[2]

## Conclusion

Based on the foregoing, the government respectfully requests that this Court exclude any and

all testimony of Official A.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney


By:     /s Steven A. Block
TERRA REYNOLDS
STEVEN A. BLOCK
TIFFANY J. TRACY
Assistant United States Attorneys
United States Attorney's Office
219 S. Dearborn St., 5th Floor
Chicago, Illinois  60604

Dated: December 15, 2011

---

[2]  Should defendants choose to inquire of Rodriguez on cross-examination whether he
lied to the government about paying a bribe to get certain property re-zoned, they should be
prohibited from inquiring of Rodriguez regarding the government's response, if any, to the
information he provided regarding Official A, given that Rodriguez obviously is not privy to
such matters.

5

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 332 |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| GLENN LEWELLEN | ) | |

**PROPOSED JURY INSTRUCTION AS TO THE TESTIMONY OF BRUCE KILLIAN**

NOW COMES DEFENDANT Glenn Lewellen, by and through his attorneys Andrea

Gambino and Matthew J. Madden, and propose the attached jury instruction to be given during

the testimony of Bruce Killian, a financial summary witness for the government.


Respectfully submitted,



By:      s// *Matthew J. Madden*

Matthew J. Madden



Matthew J. Madden
Attorney At Law
53 W. Jackson Boulevard, Suite 703
Chicago, IL 60604
(312) 212-1900

Certain summaries are in evidence.  Their accuracy has been challenged by defendant Glenn Lewellen.  Thus, the original materials upon which the exhibits are based have also been admitted into evidence so that you may determine whether the summaries are accurate.


Seventh Circuit 3.16
Modified to specify the relevant defendant

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2,3,4,5,7,11 | **DATE** | 12/20/2011 |
| **CASE TITLE** | USA vs. Lewellen et al | | |

**DOCKET ENTRY TEXT**

Having been informed in open court that Jorge Lopez's amended motion to modify conditions of release [742] is unopposed, it will be granted; Lopez's earlier motion [728] is denied as moot.

The government's motion *in limine* regarding admission of certain evidence [691] is denied as moot. The government's motion *in limine* to exclude evidence related to zoning incident [737] is granted in part and denied in part as stated in open court. The government has informed the court that it wishes to withdraw its motion for a deposition [697]. The motion will be withdrawn.

Docketing to mail notices.

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 | **DATE** | 12/8/2011 |
| **CASE TITLE** | USA vs. Saul Rodriguez et al | | |

**DOCKET ENTRY TEXT**

Enter Order approving interim payments & memorandum to counsel appointed under the Criminal Justice Act regarding interim payments under the Criminal Justice Act.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

FILED
2011 DEC 20  AM 11: 23
CLERK
U.S. DISTRICT COURT

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.  09 CR 332-11 |
| v. | ) | Hon. Joan B. Gottschall |
| | ) | |
| SAUL RODRIGUEZ, et al. | ) | |

**ORDER APPROVING INTERIM PAYMENTS & MEMORANDUM
TO COUNSEL APPOINTED UNDER THE
CRIMINAL JUSTICE ACT REGARDING INTERIM PAYMENTS
UNDER THE CRIMINAL JUSTICE ACT**

Because of the complexity and expected length of the investigation, preparation, and

hearings in this case and the hardship to counsel in the undertaking representation for such a

period without compensation, pursuant to the Guidelines for the Administration of the Criminal

Justice Act, ¶2.30, it is ordered that counsel may submit vouchers for interim payments.

The following procedures for interim payments shall apply during the course of counsel's

representation in the case:

1.) Submission of Vouchers

Counsel shall submit periodically to the clerk of the court an interim CJA form 20

"Appointment of and Authority to Pay Court Appointed Counsel." The first interim voucher

shall reflect all compensation claimed and reimbursable expenses incurred from the effective

date of the appointment through the date in which the first interim voucher is submitted. Each

voucher shall include the time period covered and shall be consecutively numbered. Interim

1

vouchers shall be submitted in accordance with this schedule even though little or no compensation or expenses are claimed for the respective period.  All interim vouchers shall be supported by detailed and itemized time and expenses statements.

The court will review the interim vouchers when submitted, particularly with regard to the amount of time claimed, and will authorize compensation to be paid for 80 percent of the approved number of hours. This compensation will be determined by multiplying 80 percent of the approved number of hours by the applicable rate. This Court will also authorize for payment all reimbursable expenses reasonably incurred.

At the conclusion of the representation, counsel shall submit a final voucher seeking payment of the 20% balance withheld from the earlier interim vouchers, as well as payment for the representation provided during the final interim period. After reviewing the final voucher, the Court will submit it to the Chief Judge of the Circuit or his or her delegate for their review and approval.

2.) Reimbursable Expenses:

Counsel may be reimbursed for out-of-pocket expenses reasonably incurred incident to the representation. While the statute and applicable rules and regulations do not place a monetary limit on the amount of expenses that can be incurred, counsel should incur no single expense item in excess of $500.00 without prior approval of the Court. Such approval may be sought by filing *ex parte* application with the clerk, stating the nature of the expense, the estimated cost and the reason the expense is necessary to the representation. An application seeking such approval

2

may be filed *in camera*, if necessary. Recurring expenses, such as telephone toll calls, photocopying and photographs, which may aggregate more than $500 on one or more interim vouchers are not considered a single item expense requiring court approval.

With respect to travel outside the City of Chicago or County of Cook for the purpose of consulting with the client or his or her former counsel, interviewing witnesses, etc., travel expenses, such as airfare, mileage, parking fee, meals and lodging, can be claimed as itemized expenses. if expenses relating to a single trip shall aggregate to an amount excess of $500.00, counsel should seek prior approval of the Court.

The following additional guidelines may be helpful to counsel:

a.) Case related travel by privately owned automobile should be claimed at the rate approved by the Administrative Office of the United States Courts for the given time period in which the travel occurred. Parking fees, ferry fares, road, bridge and tunnel tolls or fees are also reimbursable. Transportation other than by privately owned automobiles should be claimed on an actual expense basis. Air travel is first class is prohibited. Counsel and persons providing services under CJA are courage to contact the clerk for air travel authorization at government rates.

b.) Actual expenses incurred for meals and lodging in the course of travel outside the City of Chicago or County of Cook in the course of this representation must conform to the prevailing limitations placed upon travel and subsistence expenses of federal judiciary employees in accordance with existing government travel regulations. For specific details concerning high-cost areas, counsel should consult the Court Clerk.

c.) Telephone toll calls, telegrams, photocopying and photographs can all be reimbursable expenses if reasonably incurred. However, general office overhead, such as rent, secretarial help and normal telephone service is not a reimbursable expense, nor are items of a personal nature. In addition, expenses for service of subpoenas on fact witnesses are not reimbursable, but rather are governed by Rule 17 of the F.R,Cr.P. and 28 U.S.C. § 1825.

3.) Further Questions or Guidance.

Answers to questions concerning appointment under the Criminal Justice Act can generally be found in (1) 18 U.S.C. §3006A; (2) the Plan of the United States District Court for the Northern District of Illinois, available through the Clerk of Court; and (3) Guidelines for the Administration of the Criminal Justice Act, published by the Administrative Office of the U.S. Courts, also available through the Clerk of Court. Should these references fail to provide the desired clarification or direction, counsel should address their inquiry directly to this Court and its staff.

It is so ordered:

Dated: _11/25/11_

United States District Judge

Approved:

Chief Judge of the United States Court of Appeals for the Seventh Circuit

Dated: _12-8-11_

4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 09 CR 332 |
| v. | ) | |
| | ) | Hon. Joan B. Gottschall |
| ROBERT CARDENA | ) | |

**GOVERNMENT'S PROPOSED REDACTIONS PURSUANT TO *BRUTON***

     The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, submits the proposed redactions to defendant Robert Cardena's statements pursuant to *Bruton*.

     On October 24, 2011, the Court denied the government's motion to sever defendant Robert Cardena from the instant case and directed the government to propose redactions to statements Cardena made to law enforcement on April 8, 2010 and January 3, 2011. R. 587. On both April 8, 2010 and January 3, 2011, defendant Robert Cardena spoke to law enforcement about Saul Rodriguez, Hector Uriarte and Jorge Uriarte. The government proposes defendant Robert Cardena's statements regarding Hector Uriarte and Jorge Uriarte be amended to read as "guys in Rodriguez' crew."

Respectfully submitted,


PATRICK J. FITZGERALD

United States Attorney


By:     s/ Terra L. Brown                              

TERRA L. BROWN

STEVEN BLOCK

TIFFANY J. TRACY

Assistant United States Attorneys

219 South Dearborn Street, 5th Floor

Chicago, Illinois 60604

(312) 353-5300

Dated: December 27, 2011

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 332 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| ROBERT CARDENA | ) | |

## CERTIFICATE OF SERVICE

    The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

### GOVERNMENT'S PROPOSED REDACTIONS PURSUANT TO *BRUTON*

was served pursuant to the district court's ECF system.

        Respectfully submitted,

        **PATRICK J. FITZGERALD**
        United States Attorney

By:    s/ Terra Reynolds        
        TERRA REYNOLDS
        Assistant United States Attorney
        219 South Dearborn Street, 5th Floor
        Chicago, IL  60604
        (312) 353-3148

Dated: December 27, 2011

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2, 3, 4, 5, 7 and 11 | **DATE** | 12/27/2011 |
| **CASE TITLE** | USA vs. Lewellen | | |

**DOCKET ENTRY TEXT**

Motion hearing held 12/27/11. Defendant Cardena's motions in limine [667], [712] and [738] are granted in part and denied in part as stated on the record.  Defendant Lewellen's motion for a proposed jury instruction [740] is taken under advisement; the defendant should renew the motion at an appropriate time as discussed in open court. Jury Instruction Conference set for 1/4/12 at 10:15AM.

Docketing to mail notices.

01:00

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Hon. Joan B. Gottschall |
| GLENN LEWELLEN, et al. | ) | |

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD,

United States Attorney for the Northern District of Illinois, Eastern Division,

respectfully submits the following proposed jury instructions.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     s/ Tiffany J. Tracy
Terra Reynolds
Steven A. Block
Tiffany J. Tracy
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604

# GENERAL INSTRUCTIONS

Members of the jury, you have seen and heard all the evidence and the arguments of the attorneys.  Now I will instruct you on the law.

You have two duties as a jury.  Your first duty is to decide the facts from the evidence in the case.  This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts.  You must follow these instructions, even if you disagree with them.  Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially.  Do not allow sympathy, prejudice, fear, or public opinion to influence you.  You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

GOVERNMENT INSTRUCTION NO. 1

Seventh Circuit Committee (1999) 1.01

2

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true, or that a person would have given certain testimony.

GOVERNMENT INSTRUCTION NO. 2

Seventh Circuit Committee (1999) 1.02

You are to decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case.

[You should judge any defendant's testimony in the same way that you judge the testimony of any other witness.]

GOVERNMENT INSTRUCTION NO. 3

Seventh Circuit Committee (1999) 1.03 (modified)

4

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists.  In law we call this "inference."  A jury is allowed to make reasonable inferences.  Any inferences you make must be reasonable and must be based on the evidence in the case.

GOVERNMENT INSTRUCTION NO. 4

Seventh Circuit Committee (1999) 1.04

5

Some of you have heard the phrases "circumstantial evidence" and "direct evidence." Direct evidence is evidence that, if you believe it, directly proves a fact. Circumstantial evidence is evidence that, if you believe it, indirectly proves a fact. The law makes no distinction between the weight to be given either direct or circumstantial evidence. You should decide how much weight to give to any evidence. All the evidence in the case, including the circumstantial evidence, should be considered by you in reaching your verdict.

GOVERNMENT INSTRUCTION NO. 5

Seventh Circuit Committee (1999) 1.05 (modified)

*United States v. Blagojevich*, 08 CR 888 (Zagel, J.)
*United States v. Cellini*, 08 CR 888 (Zagel, J.)

6

Certain things are not evidence.  I will list them for you:

First, testimony that I struck from the record, or that I told you to disregard, is not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, or television reports you may have seen or heard.  Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections by the lawyers are not evidence.  Attorneys have a duty to object when they believe a question is improper.  You should not be influenced by the fact that the lawyers made objections.  If I sustained objections to questions the lawyers asked, you must disregard the question, and must not speculate on what the answers might have been.

Fourth, the lawyers' statements to you are not evidence.  The purpose of these statements is to discuss the issues and the evidence.  If the evidence as you remember it differs from what the lawyers said, your memory is what counts.


GOVERNMENT INSTRUCTION NO. 6

Seventh Circuit Committee (1999) 1.06 (modified)

*United States v. Blagojevich*, 08 CR 888 (Zagel, J.)
*United States v. Cellini*, 08 CR 888 (Zagel, J.)

7

It is proper for an attorney to interview any witness in preparation for trial.

GOVERNMENT INSTRUCTION NO. 7

Seventh Circuit Committee (1999) 1.07

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number.  You need not accept the testimony of the larger number of witnesses.

GOVERNMENT INSTRUCTION NO. 8

Seventh Circuit Committee (1999) 1.09

9

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

GOVERNMENT INSTRUCTION NO. 9

Seventh Circuit Committee (Civil) (2009) 1.07

*United States v. Blagojevich*, 08 CR 888 (Zagel, J.)
*United States v. Cellini*, 08 CR 888 (Zagel, J.)
*United States v. Rezko*, (05 CR 691) (St. Eve, J.)
*United States v. Marzook, et al.*, (03 CR 978) (St. Eve, J.)

The indictment in this case is the formal method of accusing the defendants of offenses and placing the defendants on trial.  It is not evidence against the defendants and does not create any inference of guilt.

Defendant Glenn Lewellen is charged with:  (1) conspiracy to commit racketeering (Count One); and (2) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

Defendant Hector Uriarte is charged with:  (1) conspiracy to commit racketeering (Count One); (2) kidnapping in aid of the racketeering conspiracy (Counts Five, Seven, and Ten); (3) knowingly and intentionally possessing cocaine with the intent to distribute, and attempting to do so (Counts Four and Twelve); (4) using and carrying firearms during and in relation to a crime of violence (Counts Eight and Eleven); and (5) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

Defendant Jorge Uriarte is charged with:  (1) conspiracy to commit racketeering (Count One); (2) kidnapping in aid of the racketeering conspiracy (Counts Five, Seven, and Ten); (3) knowingly and intentionally possessing cocaine with the intent to distribute, and attempting to do so (Counts Four and Twelve); (4) using and carrying firearms during and in relation to a crime of violence (Counts Eight and Eleven); and (5) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

11

Defendant Manuel Uriarte is charged with:  (1) conspiracy to commit racketeering (Count One); and (2) murder in aid of the racketeering conspiracy (Counts Two and Three).

Defendant Tony Sparkman is charged with:  (1) conspiracy to commit racketeering (Count One); (2) kidnapping in aid of the racketeering conspiracy (Counts Five, Seven, and Ten); (3) knowingly and intentionally possessing cocaine with the intent to distribute, and attempting to do so (Counts Four and Twelve); (4) using and carrying firearms during and in relation to a crime of violence (Counts Eight and Eleven); and (5) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

Defendant Robert Cardena is charged with: (1) knowingly and intentionally possessing cocaine with the intent to distribute (Count Four); and (2) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

Each of the defendants has pleaded not guilty to each of the charges.

GOVERNMENT INSTRUCTION NO. 10

Seventh Circuit Committee (1999) 2.01 (modified)

12

Each defendant is presumed to be innocent of each of the charges against him. This presumption continues during every stage of the trial and your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that a defendant is guilty as charged. The government has the burden of proving the guilt of each defendant beyond a reasonable doubt.

This burden of proof stays with the government throughout the case. A defendant is never required to prove his innocence or to produce any evidence at all.

GOVERNMENT INSTRUCTION NO. 11

Seventh Circuit Committee (1999) 2.03 (modified)

13

A defendant has an absolute right not to testify. The fact that a defendant did not testify should not be considered by you in any way in arriving at your verdict.

GOVERNMENT INSTRUCTION NO. 12

Seventh Circuit Committee (1999) 3.01

You have received evidence of statements said to be made by defendants Glenn Lewellen and Robert Cardena to law enforcement officers.  You must decide whether defendants Lewellen and Cardena did in fact make the statements.  If you find that defendants Lewellen and Cardena did make the statements, then you must decide what weight, if any, you feel the statements deserve.  In making this decision, you should consider all matters in evidence having to do with the statements, including evidence concerning defendants Lewellen and Cardena themselves, and the circumstances under which the statements were made.

You may not consider these statements as evidence against any defendant other than the one who made it.  Thus, you may not consider the statement of defendant Lewellen as evidence against any defendant other than defendant Lewellen, and you may not consider the statement of defendant Cardena as evidence against any defendant other than defendant Cardena.

GOVERNMENT INSTRUCTION NO. 13

Seventh Circuit Committee (1999) 3.02 (modified)

You have heard witnesses give opinions about matters requiring special knowledge or skill.  You should judge this testimony in the same way that you judge the testimony of any other witness.  The fact that such a person has given an opinion does not mean that you are required to accept it.  Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness' qualifications, and all of the other evidence in the case.

GOVERNMENT INSTRUCTION NO. 14

Seventh Circuit Committee (1999) 3.07

16

You have heard testimony of an identification of a person.  Identification testimony is an expression of belief or impression by the witness.  You should consider whether, or to what extent, the witness had the ability and the opportunity to observe the person at the time of the offense and to make a reliable identification later.  You should also consider the circumstances under which the witness later made the identification.

The government has the burden of proving beyond a reasonable doubt that the defendant was the person who committed the crime charged.

GOVERNMENT INSTRUCTION NO. 15

Seventh Circuit Committee (1999) 3.08

You have heard evidence that before the trial witnesses made statements that may be inconsistent with the witness's testimony here in court. If you find that such as statement is consistent with the witness's trial testimony, you may consider the earlier statement only in deciding the truthfulness and accuracy of that witness's testimony in this trial. If the earlier statement was made under oath, then you may also consider the earlier statement as evidence of the truth of whatever the witness said in the earlier statement.

GOVERNMENT INSTRUCTION NO. 16

Seventh Circuit Committee (1999) 3.09 (modified)

You have heard evidence that certain witnesses have been convicted of crimes. You may consider this evidence only in deciding whether the testimony of those witnesses is truthful in whole, in part, or not at all.  You may not consider this evidence for any other purpose.

GOVERNMENT INSTRUCTION NO. 17

Seventh Circuit Committee (1999) 3.11

You have heard testimony from Lisette Venegas and David Venegas, who:

(a)  received immunity; that is, a promise from the government that any truthful testimony or other information they provided would not be used against them in a criminal case; and

(b)  stated that they were involved in the commission of some of the offenses charged against the defendants.

You may give their testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

GOVERNMENT INSTRUCTION NO. 18

Seventh Circuit Committee (1999) 3.13 (modified)

20

You have heard testimony from Roy Cockriel, who received immunity, that is, a promise from the government that any truthful testimony or other information he provided would not be used against him in a criminal case.

You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

GOVERNMENT INSTRUCTION NO. 19

Seventh Circuit Committee (1999) 3.13 (modified)

21

You have heard testimony from Fares Umar, Andres Torres, Andres Flores, Jorge Lopez, Pedro Victoria, and Saul Rodriguez, who:

(a)   received benefits from the government in connection with this case; namely, a recommendation for a reduction in their sentence;

(b)  stated that they were involved in the commission of some of the offense as charged against the defendants; and

(c)   have pleaded guilty to an offense arising out of the same occurrence for which the defendants are now on trial.  Their guilty pleas are not to be considered as evidence against the defendants.

You may give their testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

GOVERNMENT INSTRUCTION NO. 20

Seventh Circuit Committee (1999) 3.13 (modified)

Summary charts are in evidence. The summary charts should be considered together with and in the same way as all other evidence in the case.

GOVERNMENT INSTRUCTION NO. 21

Seventh Circuit Committee (1999) 3.15 (modified)

Among the exhibits admitted during the trial were audio recordings some of which contained conversations that took place partially in the Spanish language. English transcripts of those conversations were also admitted in evidence. The transcripts were provided to you so that you could consider the content of the conversations on the recordings.

It is up to you to decide whether a transcript is accurate, in whole or in part. You may consider the translator's knowledge, training, and experience, the nature of the conversation, and the reasonableness of the translation in light of all the evidence in the case.

In considering the audio recordings, you may not rely on any knowledge you may have of the Spanish language. Rather, your consideration of the recordings and transcripts should be based on the evidence introduced in the trial.

With respect to the English language portion of the recordings, the tape recordings themselves are the evidence of what was and was not recorded on the tapes. If from your hearing of the English portion of a particular recording you perceive any variation between the recording and the corresponding transcript, you will be guided solely by the recording and not by the transcript.

I am providing you with the audio recordings admitted at trial and a computer, together with the transcripts you had in court, as well as the video

recordings that were admitted in evidence.  You are not required to play the audio or video recordings, in part or in whole.  You may rely, instead, on your recollections of these recordings as you heard and saw them at trial.

GOVERNMENT INSTRUCTION NO. 22

Seventh Circuit Committee (1999) 3.17 and 3.18 (modified)

*United States. v. Jordan*, 223 F.3d 676, 689-90 (7th Cir. 2000)

The indictment charges that certain offenses were committed "on or about" certain dates.   The government must prove that the offenses happened reasonably close to those dates but is not required to prove that the alleged offenses happened on those exact dates.

GOVERNMENT INSTRUCTION NO. 23

Seventh Circuit Committee (1999) 4.04

26

Even though the defendants are being tried together, you must give each of them separate consideration.  In doing this, you must analyze what the evidence shows about each defendant, leaving out of consideration any evidence that was admitted solely against some other defendant.  Each defendant is entitled to have his case decided on the evidence and the law that applies to that defendant.

GOVERNMENT INSTRUCTION NO. 24

Seventh Circuit Committee (1999) 4.05

27

When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident.  Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

GOVERNMENT INSTRUCTION NO. 25

Seventh Circuit Committee (1999) 4.06

An offense may be committed by more than one person.  A defendant's guilt may be established without proof that the defendant personally performed every act constituting the crime charged.

GOVERNMENT INSTRUCTION NO. 26

Seventh Circuit Committee (1999) 5.05

Any person who knowingly aids, counsels, commands, induces or procures the commission of an offense may be found guilty of that offense.  That person must knowingly associate with the criminal activity, participate in the activity, and try to make it succeed.

If a defendant knowingly caused the acts of another, the defendant is responsible for those acts as though he personally committed them.

GOVERNMENT INSTRUCTION NO. 27

Seventh Circuit Committee (1999) 5.06

The law allowed the government to use various deceptive and disguised investigative techniques, including the use of undercover operations and covert wiretaps. These are permissible and recognized means of criminal investigation.

Any opinions you may hold regarding the use of such investigative techniques to detect unlawful activities are not to enter into your deliberations in any way.

GOVERNMENT INSTRUCTION NO. 28

*United States v. Blagojevich*, 08 CR 888 (Zagel, J.)
*United States v. Armstead*, 02 CR 895 (Pallmeyer, J.) (modified)
*United States v. Solis*, 97 CR 814 (Manning, J.) (modified)
*United States v. Gajo*, 98 CR 100 (Gottschall, J.) (modified)
*Lewis v. United States*, 385 U.S. 206, 208, 209 (1966)
*Caminetti v. United States*, 242 U.S. 470 (1917)
Sand, Siffert, Loughlin & Reiss, Modern Federal Jury Instructions, Criminal, at 556 (modified).
*See United States v. McGee*, 612 F.3d 627, 631 (7th Cir. 2010) (stating that it would be appropriate, in a wiretap case, for the judge to tell the jury that judicial permission was required and received to make the recordings; in other words, the evidence is "[proper].")

Gang membership, standing alone, is not a violation of any law.

GOVERNMENT INSTRUCTION NO. 29

You should not speculate why any other person whose name you may have

heard during the trial or who is named in the indictment is not currently on trial

before you.

GOVERNMENT INSTRUCTION NO. 30

*United States v. Blagojevich*, 08 CR 888 (Zagel, J.)
*United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (modified)

Defendants Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, and Tony Sparkman are charged in Count One with conspiracy to commit racketeering.

Defendants Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Tony Sparkman, and Robert Cardena are charged in Count Thirteen with conspiracy to possess cocaine with intent to distribute.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. To sustain a charge of conspiracy, the government must prove that the conspiracy charged in the particular count you are considering existed, and that the particular defendant you are considering knowingly became a member of that conspiracy, with an intention to further the conspiracy.

To establish the existence of the charged racketeering conspiracy and the charged drug conspiracy, and their common purposes, the government need not establish that there existed a formal agreement. The agreement may be informal, and may consist of an implicit understanding among the participants. In deciding whether the charged conspiracies existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

A conspiracy may be established even if its purposes were not accomplished.

GOVERNMENT INSTRUCTION NO. 31

Seventh Circuit Committee (1999) 5.08 (modified)

*United States v. Cellini,*08 CR 888 (Zagel, J.) (modified)
*United States v. Blagojevich,*08 CR 888-1 (Zagel, J.) (modified)
*United States v. Curescu, et al.,*08 CR 398 (Lefkow, J.) (modified)
*United States v. McMahan et al.,* 04 CR 423 (St. Eve, J.) (modified)
*United States v. Marzook, et al.,* 03 CR 978 (St. Eve, J.) (modified)
*United States v. Armstead, et al.,* 02 CR 895 (Pallmeyer, J.) (modified)
*United States v. Katalinich,* 113 F.3d 1475, 1482-83 (7th Cir. 1997)(modified)
*United States v. Seawood,* 172 F.3d 986, 988 (7th Cir. 1999) (only the most informal of agreements is necessary to establish existence of conspiracy).

To be a member of the conspiracy, a defendant need not join at the beginning or know all the other members or all the means by which the conspiracy's purposes were to be accomplished, and need not participate in all of the events of the conspiracy. The government must prove beyond a reasonable doubt that the defendant was aware of the common purposes of the conspiracy, and that he knowingly joined the agreement.

In deciding whether a defendant joined the charged conspiracy, you must base your decision only on what that particular defendant did or said. In determining what a particular defendant did or said, you may consider the defendant's own words and acts. You may also consider the words or acts of other persons to decide what the defendant did or said, and you may use them to help you understand what the defendant did or said.

GOVERNMENT INSTRUCTION NO. 32

Seventh Circuit Committee (1999) 5.08, 5.11 (modified)

*United States v. Cellini*,08 CR 888 (Zagel, J.) (modified)
*United States v. Blagojevich*,08 CR 888-1 (Zagel, J.) (modified)
*United States v. Marzook, et al.*, 03 CR 978 (St. Eve, J.)(modified)
*United States v. Ryan*, 02 CR 506 (Pallmeyer, J.)(modified)
*United States v. Martinez de Ortiz*, 907 F.2d 629, 635 (7th Cir. 1990)(*en banc*).
*United States v. Curescu, et al.*,08 CR 398 (Lefkow, J.)(modified)
*United States v. Oros*, 07 CR 125 (St. Eve, J.) (modified)
*United States v. McMahan, et al.*, 04 CR 423 (St. Eve, J.) (modified)
*United States v. Griggs*, 569 F.3d 341, 344 (7th Cir. 2009)
*United States v. Longstreet*, 567 F.3d 911, 918-19 (7th Cir. 2009) (a defendant becomes a member of a conspiracy when he knowingly and

36

intentionally joins the agreement).

A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a foreseeable consequence of the conspiracy.

GOVERNMENT INSTRUCTION NO. 33

Seventh Circuit Committee (1999) 5.09

# INSTRUCTIONS FOR COUNTS ONE, TWO, THREE, FIVE, SEVEN AND TEN

# Racketeering Conspiracy and Offenses Committed in Aid of Racketeering Conspiracy

Defendants Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, and Tony Sparkman are charged in Count One with conspiracy to commit racketeering.

To sustain the charge of conspiracy to commit racketeering as charged in Count One, the government must prove the following propositions beyond a reasonable doubt:

First, that the defendant you are considering knowingly conspired to conduct or participate in the conduct of the affairs of the Rodriguez Enterprise, an enterprise, through a pattern of racketeering activity as described in Count One; and

Second, that Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Tony Sparkman, Fares Umar, Andres Torres, Pedro Victoria, and others (referred to in the indictment collectively as the "Rodriguez Enterprise"), were an enterprise; and

Third, that the activities of the Rodriguez Enterprise would be engaged in, or its activities would affect, interstate or foreign commerce.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to a particular defendant, then you should find that defendant guilty of Count One.

If, on the other hand, you find from your consideration of all the evidence

39

that any of these propositions has not been proved beyond a reasonable doubt as

to a particular defendant, then you should find that defendant not guilty of

Count One.

GOVERNMENT INSTRUCTION NO. 34

Seventh Circuit Committee (1999) 18 U.S.C. § 1962(d)
(Racketeering conspiracy - Elements) (modified)

*United States v. Blagojevich*, 08 CR 888 (Zagel, J.) (modified)
*United States v. Marcello, et al.*, 02 CR 1050 (Zagel, J.) (modified)
*United States v. Wren*, 02 CR 163 (Kocoras, J.) (modified)
*United States v. Taylor*, 116 F.3d 269, 271 (7th Cir. 1997) (modified)
*United States v. Jones*, 950 F.2d 1309, 1313 (7th Cir. 1991) (modified)
*United States v. Marren*, 890 F.2d 924, 933 (7th Cir. 1989) (modified)

In order to find a "pattern of racketeering activity" for purposes of Count One, you must find beyond a reasonable doubt that the particular defendant you are considering agreed that some member or members of the conspiracy would commit at least two separate acts of racketeering as described in Count One. You must also find that those acts were in some way related to each other and that there was continuity between them.

Acts are related to each other if they are not isolated events, that is, if they have similar purposes, or results, or participants, or victims, or are committed a similar way, or have other similar distinguishing characteristics, or are part of the affairs of the same enterprise.

There is continuity between acts if, for example, they are ongoing over a substantial period of time, or had the potential to continue over a substantial period, or if they are part of the regular way some entity does business or conducts its affairs.

GOVERNMENT INSTRUCTION NO. 35

Seventh Circuit Committee (1999) 18 U.S.C. § 1962(d)

41

For purposes of Count One, the government does not have to prove that any racketeering acts were actually committed at all, or that the defendant agreed to personally commit any such acts, or that the defendant agreed that two or more specific acts would be committed.

GOVERNMENT'S INSTRUCTION NO. 36

Seventh Circuit Committee (1999) 18 U.S.C. § 1962(d)
(Pattern Requirement - Racketeering Conspiracy) (modified)

*Salinas v. United States*, 522 U.S. 57 (1997)

42

A person conducts or participates in the conduct of the affairs of an enterprise if that person uses his or her position in, or association with, the enterprise to perform acts which are involved in some way with the operation or management of the enterprise, directly or indirectly, or if the person causes another to do so, or if the person agrees to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner.

In order to have conducted or participated in the conduct of the affairs of an enterprise, a person need not have participated in all the activity alleged in Count One.

GOVERNMENT'S INSTRUCTION NO. 37

Seventh Circuit Committee (1999) 18 U.S.C. § 1962(c & d)

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000) (when analyzing a conspiracy to violate RICO pursuant to § 1962(d), to "participate in the affairs of an enterprise," "[o]ne must knowingly agree to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner."); *United States v. Delatorre*, 581 F.Supp.2d 968, 992 (N.D. Ill. 2008).

For purposes of Counts One, Two, Three, Five, Seven and Ten, the term "enterprise" can include a group of people associated together for a common purpose of engaging in a course of conduct. This group may be associated together for purposes that are both legal and illegal.

In considering whether a group is an "enterprise," you may consider whether it has an ongoing organization or structure, either formal or informal, and whether the various members of the group functioned as a continuing unit. A group may continue to be an "enterprise" even if it changes membership by gaining or losing members over time. The government need not prove that the association had any form or structure beyond the minimum necessary to conduct the charged pattern of racketeering.

The government must prove that the group described in the indictment was the "enterprise" charged, but need not prove each and every allegation in the indictment about the enterprise or the manner in which the enterprise operated.

The term "enterprise" includes a criminal organization.

GOVERNMENT'S INSTRUCTION NO. 38

Seventh Circuit Committee (1999) 18 U.S.C. § 1961(4)
(Enterprise - Association in Fact) (modified)

*Boyle v. United States*, 129 S.Ct 2237 (2009) (holding that an association in fact need not have a form or structure beyond that inherent in the pattern of racketeering activity).
*United States v. Marcello, et al.*, 02 CR 1050 (Zagel, J.) (modified)

45

Interstate or foreign commerce includes the movement of money, goods, services or persons from one state to another or between another country and the United States.  This would include the purchase or sale of goods or supplies from outside the state in which the enterprise was located, the use of interstate mail or wire facilities, or the causing of any of those things.  If you find that beyond a reasonable doubt either: (a) that the enterprise made, purchased, sold or moved goods or services that had their origin or destination outside the state in which the enterprise was located, or (b) that the actions of the enterprise affected in any degree the movement of money, goods or services across state lines or the borders of the United States, then interstate or foreign commerce was engaged in or affected.

For purposes of Counts One, Five, Seven and Ten, the government need only prove that the enterprise as a whole engaged in interstate or foreign commerce or that its activity affected interstate or foreign commerce to any degree, although proof that racketeering acts did affect interstate or foreign commerce meets that requirement.  The government need not prove that a defendant engaged in interstate or foreign commerce, or that the acts of a defendant affected interstate or foreign commerce.

GOVERNMENT INSTRUCTION NO. 39

Seventh Circuit Committee (1999) 18 U.S.C. § 1962
(Interstate Commerce – Definition) (modified)

For purposes of Counts One, Two, Three, Five, Seven and Ten, the law defines "racketeering activity" as acts constituting Murder, Attempted Murder, Solicitation of Murder, Kidnapping, Aggravated Kidnapping, Robbery, and Armed Robbery, as those offenses are defined under Illinois State law, and acts constituting Robbery, Obstruction of Justice, and Drug Trafficking, as those offenses are defined under federal law.

**Murder** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/7-1, 5/8-2, and 5/9-1)

Under Illinois law, a person commits the offense of murder when he, or one for whose conduct he is legally responsible, kills an individual and, in performing the acts which cause the death:

(1)    intends to kill or do great bodily harm to that individual; or

(2)    knows that such acts would cause death to that individual; or

(3)    knows that such acts would create a strong probability of death or great bodily harm to that individual.

**Attempted Murder** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/7-1, 5/8-2, 5/8-4, and 5/9-1)

Under Illinois law, a person commits the offense of attempted murder when he, or one for whose conduct he is legally responsible, performs an act

which constitutes a substantial step toward the killing of an individual; and does so with the intent to kill an individual.  The killing attempted need not have been accomplished.

**Solicitation of Murder** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/7-1, 5/8-1, 5/8-2, 5/8-4, and 5/9-1)

Under Illinois law, a person commits the offense of solicitation of murder when he, or one for whose conduct he is legally responsible, commands, encourages, or requests another person to commit the offense of murder, and does so with the intent that the offense of murder be committed.

**Kidnapping** (720, Illinois Compiled Statutes ,Sections 5/5-1, 5/5-2, 5/8-2, 5/8-4, 5/10-1)

Under Illinois law, a person commits the offense of kidnapping when he, or one for whose conduct he is legally responsible:

(1)    knowingly and secretly confines the individual against his will; or

(2)    knowingly and by force, or threat of imminent force, carries the individual from one place to another with intent secretly to confine that person against his will; or

(3)    knowingly and by deceit or enticement, induces another person to go from one place to another place with intent secretly to confine that person against his will.

48

***Aggravated Kidnapping*** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-2,  5/8-4, 5/10-1, 5/10-2, 5/10-2(a))

Under Illinois law, a person commits the offense of aggravated kidnapping when he, or one for whose conduct he is legally responsible:

(1)     knowingly confines a child under the age of 13 years, without the consent of the child's parent or legal guardian; or

(2)     commits the offense of kidnapping, as defined above, and:

(a)     does so for the purpose of obtaining ransom, that is, money, benefits, or other valuable thing or concession; or

(b)     inflicts great bodily harm, other than by the discharge of a firearm, or commits another felony upon his victim; or

(c)     wears a hood or mask, or conceals his identity; or

(d)     commits the offense of kidnapping while carrying on or about his person or otherwise armed with a firearm or a dangerous weapon, that is, a taser, a knife with a blade of at least 3 inches in length, a bludgeon, a sand-bag, a sand-club, a billy club, or another dangerous weapon of like character.

***Robbery*** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-2, 5/8-4, 5/18-1)

Under Illinois state law, a person commits robbery when he, or one for whose conduct he is legally responsible:

(1)     knowingly takes property from the person or presence of a victim; and

(2)     does so by the use of force or by threatening the imminent use of force.


***Armed Robbery*** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-2, 5/8-4, 5/18-1, and 5/18-2)

Under Illinois law, a person commits armed robbery when he, or one for whose conduct he is legally responsible:

(1)     knowingly takes property from the person or presence of another; and

(2)      does so by the use of force or by threatening the imminent use of force; and

(3)     carries on or about his person, discharges, or is otherwise armed with a firearm or dangerous weapon other than a firearm, at the time of the taking.

***Responsibility for the Conduct of Another Person under Illinois Law*** (720, Illinois Compiled Statutes, Section 5/5-1)

Under Illinois law, a person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.

***Attempt under Illinois Law*** (720, Illinois Compiled Statutes, Section 5/8-4)

Under Illinois law, a person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense.

***Obstruction of Justice*** (18 U.S.C. § 1503)

A person engages in obstruction of justice under federal law when:

(1)     he influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due administration of justice;

(2)     the person acts knowingly; and

(3)     the person's acts were done corruptly, that is, with the purpose of wrongfully impeding the due administration of justice.

The word endeavor describes any effort or act to influence, obstruct, or

impede the due administration of justice.  The endeavor need not be successful, but it must have at least a reasonable tendency to influence, obstruct, or impede the due administration of justice.

***Robbery*** (18 U.S.C. § 1951)

A person commits robbery under federal law when:

(1)    he knowingly obtains money or property from or in the presence of a victim;

(2)    he does so by means of robbery, that is, by unlawfully taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession;

(3)    he believes that the victim parted with the money or property because of the robbery; and

(4)    his conduct affects interstate commerce.

To constitute racketeering activity, it is not necessary that any particular act constitute a "robbery" under *both* state and federal law.

52

***Drug Trafficking*** (21 U.S.C. §§ 841(a)(1) and 846)

Under federal law, a person commits a drug trafficking offense if he knowingly and intentionally distributes, or possesses with the intent to distribute, a controlled substance, namely, cocaine, or if he attempts or conspires to do so.

GOVERNMENT INSTRUCTION NO. 40

Illinois Pattern Instructions – Criminal – 5.03
Illinois Pattern Instructions – Criminal – 7.01, 7.02
Illinois Pattern Instructions – Criminal – 6.01A, 601.C
Illinois Pattern Instructions – Criminal – Instructions 6.02A
Illinois Pattern Instructions – Criminal – 6.05
Illinois Pattern Instructions – Criminal – 6.05x
Illinois Pattern Instructions – Criminal – 6.07x
Illinois Pattern Instructions – Criminal – 8.01
Illinois Pattern Instructions – Criminal – 8.03
Illinois Pattern Instructions – Criminal – 8.04
Illinois Pattern Instructions – Criminal – 8.04A
Illinois Pattern Instructions – Criminal – 14.01, 14.02
Illinois Pattern Instructions – Criminal – 14.05
720 ILCS 5/33A-1
Seventh Circuit Committee (1999) 18 U.S.C. §§ 1503, 1512 (Definition of Corruptly), 1951, 1961(1)(D); 21 U.S.C. §§ 841(a)(1), 846.

# INSTRUCTIONS FOR COUNTS TWO AND THREE– MURDER IN AID OF RACKETEERING CONSPIRACY

Counts Two and Three charge that defendant Manuel Uriarte knowingly and intentionally committed the murder of an individual in aid of the racketeering conspiracy; specifically, that he knowingly and intentionally murdered Juan Luevano (as charged in Count Two), and Michael Garcia (as charged in Count Three), for the purpose of gaining entrance to, or for maintaining or increasing his position in the Rodriguez Enterprise, or for the purpose of obtaining pecuniary gain from the enterprise.

To sustain the charges in Counts Two and Three, the government must prove the following propositions beyond a reasonable doubt:

First, that the Rodriguez Enterprise was an enterprise;

Second, that the Rodriguez Enterprise was engaged in racketeering activity;

Third, that the activities of the Rodriguez Enterprise affected interstate or foreign commerce;

Fourth, that the defendant knowingly and intentionally committed the murder charged in the particular count you are considering; and

Fifth, that defendant's purpose in committing the murder was to gain entrance to, or to maintain, or to increase his position in the Rodriguez Enterprise, or to receive anything of pecuniary value from the Rodriguez Enterprise.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular count you are considering, then you should find the defendant guilty of that count.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to the particular count you are considering, then you should find the defendant not guilty of that count.

GOVERNMENT INSTRUCTION NO. 41

18 U.S.C. § 1959(a)(1), (a)(3)

*United States v. DeSilva,* 505 F.3d 711, 715 (7th Cir. 2007)
*United States v. Smith*, 413 F.3d 1253, 1277-78 (10th Cir. 2005)
*United States v. Pimento*, 346 F.3d 285, 295-96 (2d Cir. 2003)
*United States v. Tse*, 135 F.3d 200, 206 (1st Cir. 1998)
*United States v. Fiel*, 35 F.3d 997, 1004 (4th Cir. 1994)
*United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992)

For purposes of Counts Two and Three, the government does not have to prove that the defendant's sole or principal motive in committing the murder was to receive anything of pecuniary value from the enterprise, or to gain entrance to, or to maintain, or increase his position in the enterprise.

GOVERNMENT INSTRUCTION NO. 42

*United States v. Smith*, 413 F.3d 1253, 1277-78 (10th Cir. 2005)
*United States v. Pimento*, 346 F.3d 285, 295-96 (2d Cir. 2003)
*United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992)

For the purposes of Counts Two and Three, under Illinois law, a person commits the offense of murder when he, or one for whose conduct he is legally responsible, kills an individual and, in performing the acts which cause the death,

(1)    intends to kill or do great bodily harm to that individual; or

(2)    knows that such acts will cause death to that individual; or

(3)    knows that such acts create a strong probability of death or great bodily harm to that individual.

In order to establish that the acts of the defendant caused the death of Juan Luevano (Count Two) and Michael Garcia (Count Three), the government must prove beyond a reasonable doubt that defendant's acts were a contributing cause of the death, and that the death did not result from a cause unconnected to the defendant's acts.  However, it is not necessary that you find the acts of the defendant were the sole or immediate cause of death.

GOVERNMENT INSTRUCTION NO. 43

Illinois Pattern Instructions – Criminal – 7.01, 7.02, 7.15

# INSTRUCTIONS FOR COUNTS FOUR, TWELVE, AND THIRTEEN – DRUG TRAFFICKING

Count Four charges defendants Hector Uriarte, Jorge Uriarte, Tony Sparkman, and Robert Cardena with possession of cocaine with intent to distribute.   To sustain the charge of possession of cocaine with intent to distribute against the defendants as charged in Count Four, the government must prove the following propositions beyond a reasonable doubt:

First, the defendant you are considering knowingly or intentionally possessed cocaine; and

Second, the defendant possessed the cocaine with the intent to distribute it to another person.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Four.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Four.

GOVERNMENT INSTRUCTION NO. 44

Seventh Circuit Committee (1999) 21 U.S.C. § 841(a)(1) (modified)

Possession of an object is the ability to control it.  Possession may exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction and control over it, either directly or through others.

GOVERNMENT INSTRUCTION NO. 45

Seventh Circuit Committee (1999) 21 U.S.C. § 841(a)(1)

Distribution is the transfer of possession from one person to another.

GOVERNMENT INSTRUCTION NO. 46

Seventh Circuit Committee (1999) 21 U.S.C. § 841(a)(1) (Definition of Distribution)

62

You are instructed that cocaine is a controlled substance.

GOVERNMENT INSTRUCTION NO. 47

Seventh Circuit Committee (1999) 21 U.S.C. § 841(a)(1) (Definition of Controlled Substance)

It is sufficient that the defendant knew that the substance was some kind of prohibited drug. It does not matter whether the defendant knew that the substance was cocaine.

GOVERNMENT INSTRUCTION NO. 48

Seventh Circuit Committee (1999) 21 U.S.C. § 841(a)(1)(Knowledge of identity of substance)

64

Intent to distribute can be inferred from the possession of a quantity of drugs larger than needed for personal use.

GOVERNMENT INSTRUCTION NO. 49

*United States v. Curry*, 79 F.3d 1489, 1498 (7th Cir. 1996)
*United States v. Turner*, 93 F.3d 276, 288 (7th Cir. 1996)
*United States v. Velasquez*, 69 F.3d 650, 653 (7th Cir. 1995)
*United States v. Hernandez*, 13 F.3d 248, 252 n.1 (7th Cir. 1994)

Count Twelve charges defendants Hector Uriarte, Jorge Uriarte, and Tony Sparkman with knowingly and intentionally attempting to possess cocaine. To sustain the charge in Count Twelve, the government must prove the following propositions beyond a reasonable doubt:

First, that the particular defendant you are considering knowingly and intentionally attempted to possess cocaine;

Second, that the particular defendant you are considering attempted to possess cocaine with the intent to distribute it to another person.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Twelve.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Twelve.


GOVERNMENT INSTRUCTION NO. 50

Seventh Circuit Committee (1999) 21 U.S.C. § 841(a)(1) (modified)

For purposes of Count Twelve, to "attempt" means that the defendant knowingly took a substantial step toward the commission of the offense with the intent to commit that offense.

GOVERNMENT INSTRUCTION NO. 51

Seventh Circuit Committee (1999) 4.07

Count Thirteen charges defendants Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Tony Sparkman, and Robert Cardena with engaging in a conspiracy to distribute and to possess with the intent to distribute cocaine.  As I have already instructed you, a conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. To sustain the charge of conspiracy in Count Thirteen, the government must prove beyond a reasonable doubt:

First, that the conspiracy as charged in Count Thirteen existed, and

Second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Thirteen.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Thirteen.

GOVERNMENT INSTRUCTION NO. 52

Seventh Circuit Committee (1999) 21 U.S.C. § 841(a)(1) and 846 (modified)

To establish the existence of, or a particular defendant's membership in, the conspiracy charged in Count Thirteen, the government need not prove that defendant participated in all of the events of the conspiracy.  The government must prove beyond a reasonable doubt that the defendant was aware of the common purpose and was a willing participant.

GOVERNMENT INSTRUCTION NO. 53

21 U.S.C. § 841(a)(1)

*United States v. Duran,*  407 F.3d 828, 846-47  (7th Cir. 2005)

69

For purposes of Counts Four, Twelve and Thirteen, the government is not required to prove that the offense involved the specific type or quantity of controlled substances charged in the particular count you are considering. However, the government must prove that the offense involved a measurable quantity of some type of controlled substance.

If, however, you find any defendant guilty of Count Four, Twelve or Thirteen, you will be required to determine separately the type and quantity of controlled substances that the government has proven. I will address this further when I discuss the verdict forms with you.

GOVERNMENT INSTRUCTION NO. 54

Seventh Circuit Committee (1999) - 21 U.S.C. § 841(a)(1)
(Knowledge of Identity of Substance)
*United States v. Barlow*, 310 F.3d 1007 1012 (7th Cir. 2002) (modified)
*United States v. Hughes*,  310 F.3d 557, 560-561 (7th Cir. 2002) (modified)
*United States v. Muelbl*,   739 F.2d 1175, 1181 (7th Cir. 1984)(modified)
*United States v. Macedo*, 406 F.3d 778, 787 (7th Cir. 2005) (modified)
*Knox v. United States*, 400 F.3d 519, 522 (7th Cir. 2005) (modified)
*United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002) (modified)
*United States v. Kibler*, 279 F.3d 511, 517 (7th Cir. 2002)  (modified)
*United States v. Brough*, 243  F.3d 1078, 1080 (7th Cir. 2001) (modified)
*United States v. Carrerra*, 259 F.3d 818, 830 (7th Cir. 2001) (modified)
*Horton v. United States*, 244 F.3d 546, 551-52 (7th Cir. 2001) (modified)
*United States v. Williams*,  31 F. 3d 522, 526 (7th Cir. 1994) (modified)
*United States v. Lake*, 500 F.3d 629 (7th Cir 2007)
*United States v. Edwards*, 397 F.3d 570 (7th Cir. 2005)

# INSTRUCTIONS FOR COUNTS FIVE, SEVEN, AND TEN – KIDNAPPING IN AID OF RACKETEERING CONSPIRACY

Count Five charges defendants Hector Uriarte and Jorge Uriarte with kidnapping, for the purpose of gaining entrance to, or for maintaining or increasing their position in, the Rodriguez Enterprise, or for the purpose of obtaining anything of pecuniary value from the Rodriguez Enterprise.

Counts Seven and Ten charge defendants Hector Uriarte, Jorge Uriarte, and Tony Sparkman with kidnapping, for the purpose of gaining entrance to, or for maintaining or increasing their position in, the Rodriguez Enterprise, or for the purpose of obtaining anything of pecuniary value from the Rodriguez Enterprise.

To sustain the charges in Counts Five, Seven, and Ten, the government must prove the following propositions beyond a reasonable doubt with respect to the particular defendant you are considering:

First, that the Rodriguez Enterprise was an enterprise;

Second, that the Rodriguez Enterprise was engaged in racketeering activity;

Third, that the activities of the Rodriguez Enterprise affected interstate or foreign commerce;

Fourth, that the defendant knowingly and intentionally committed the kidnapping charged in the particular count you are considering; and

Fifth, that the defendant's purpose in committing the kidnapping was to

gain entrance to, or maintain or increase his position in, the Rodriguez Enterprise, or for the purpose of obtaining anything of pecuniary value from the Rodriguez Enterprise.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to a particular count, you should find the defendant guilty of that count.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to a particular count, then you must find the defendant not guilty of that count.

GOVERNMENT INSTRUCTION NO. 55

Title 18, United States Code, Section 1959(a)(1) and 2

For purposes of Counts Five, Seven and Ten, the government does not have to prove that the defendant's sole or principal motive in committing the kidnapping was to gain entrance to, or to maintain, or increase his position in the Rodriguez Enterprise, or for the purpose of obtaining anything of pecuniary value from the Rodriguez Enterprise.

GOVERNMENT INSTRUCTION NO. 56

*United States v. Smith*, 413 F.3d 1253, 1277-78 (10th Cir. 2005)
*United States v. Pimento*, 346 F.3d 285, 295-96 (2d Cir. 2003)
*United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992)

# INSTRUCTIONS FOR COUNTS EIGHT AND ELEVEN –
# USE OF A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE

Count Eight charges Hector Uriarte, Jorge Uriarte, and Tony Sparkman with using and carrying a firearm during or in relation to a crime of violence, namely, the kidnapping charged in Count Seven.

To sustain the charge in Count Eight, the government must prove the following propositions beyond a reasonable doubt:

First, that the defendant committed the crime of kidnapping as charged in Count Seven; and

Second, that the defendant knowingly used or carried a firearm during and in relation to that crime.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Eight.

If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Eight.

GOVERNMENT INSTRUCTION NO. 57

Seventh Circuit Committee (1999), Title 18, United States Code, Section 924(c)

76

Count Eleven charges Hector Uriarte, Jorge Uriarte, and Tony Sparkman with using and carrying a firearm during or in relation to a crime of violence, namely, the kidnapping charged in Count Ten.

To sustain the charge in Count Eleven, the government must prove the following propositions beyond a reasonable doubt:

First, that the defendant committed the crime of kidnapping as charged in Count Ten; and

Second, that the defendant knowingly used or carried a firearm during and in relation to that crime.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Eleven.

If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Eleven.

GOVERNMENT INSTRUCTION NO. 58

Seventh Circuit Committee (1999), Title 18, United States Code, Section 924(c)

77

A defendant uses a firearm when he actively employs it in some way that is related to the violent crime that he is committing.

GOVERNMENT INSTRUCTION NO. 59

Seventh Circuit Committee (1999), 18 U.S.C. Section 924(c) (Definition of Use)

A defendant carries a firearm when he transports the firearm on his person and does so during, and in relation to, the violent crime that he is committing.

GOVERNMENT INSTRUCTION NO. 60

Seventh Circuit Committee (1999), 18 U.S.C. Section 924(c) (Definition of Use)

79

# FINAL INSTRUCTIONS

If you find a defendant guilty, it will then be my job to decide what punishment should be imposed.  In considering the evidence and arguments presented during the trial, you should not guess about the punishment.  It should not enter into your considerations or discussions at any time.  None of the defendants on trial are facing the death penalty.

GOVERNMENT INSTRUCTION NO. 61

*United States v. Blagojevich*, 08 CR 888 (Zagel, J. )(modified)
*United States v. Suarez*, 98 CR 614 (Castillo, J.)(modified)
*United States v. Arrington, Jr.*, 97 CR 192 (Castillo, J.)(modified)
*United States v. Curry*, 97 CR 121 (Norgle, J.) (modified)
*United States v. Shields*, 90 CR 1044 (Rovner, J.) (modified)

Upon retiring to the jury room, select one of your number as your foreperson.  The foreperson will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your foreperson will fill in and date the appropriate form, and each of you will sign it.

GOVERNMENT INSTRUCTION NO. 62

Seventh Circuit Committee (1999) 7.01

Each count of the indictment charges each defendant named in that count with having committed a separate offense.

You must give separate consideration both to each count and to each defendant.  You must consider each count and the evidence relating to it separate and apart from every other count.

You should return a separate verdict as to each defendant and as to each count.  Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to that defendant under any other count.

GOVERNMENT INSTRUCTION NO. 63

Seventh Circuit Committee (1999) 7.04

I do not anticipate that you will need to communicate with me.  If you do, however, the only proper way is in writing, signed by the foreperson, or if he or she is unwilling to do so, by some other juror, and given to the Marshal.  I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division, if any, regarding your verdict.

GOVERNMENT INSTRUCTION NO. 64

Seventh Circuit Committee (1999) 7.05 (modified)

*United States v. Blagojevich*, 08 CR 888 (Zagel, J.)

The verdict must represent the considered judgment of each juror.  Your verdict, whether it be guilty or not guilty, must be unanimous.

You should make every reasonable effort to reach a verdict.  In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors.  Discuss your differences with an open mind.  Do not hesitate to re-examine your own views and change your opinion if you come to believe it is wrong.  But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of your fellow jurors or for the purpose of returning a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement which is consistent with the individual judgment of each juror.

You are impartial judges of the facts.  Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt.

GOVERNMENT INSTRUCTION NO. 65

Seventh Circuit Committee (1999) 7.06

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
    )
v.    )    No. 09 CR 332
    )    Hon. Joan B. Gottschall
GLENN LEWELLEN    )

## **VERDICT FORM**

With respect to Count One of the Indictment, in which the defendant Glenn Lewellen is charged with racketeering conspiracy, we, the jury, find the defendant, Glenn Lewellen:

GUILTY ☐        NOT GUILTY ☐

With respect to Count Thirteen in the indictment, in which the defendant Glenn Lewellen is charged with drug conspiracy, we, the jury, find the defendant, Glenn Lewellen:

GUILTY ☐        NOT GUILTY ☐

If you find the defendant Glenn Lewellen guilty of Count Thirteen, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

The offense involved at least ☐
5 kilograms of mixtures
containing cocaine

The offense involved less ☐
than 500 grams of mixtures
containing cocaine

SO SAY WE ALL

_____     _____
  Foreperson

_____     _____


_____     _____


_____     _____


_____     _____


_____     _____

Dated: _____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA       )
       )
      v.       )    No. 09 CR 332
       )    Hon. Joan B. Gottschall
HECTOR URIARTE       )

## **VERDICT FORM**

With respect to Count One of the Indictment, in which the defendant Hector Uriarte is charged with racketeering conspiracy, we, the jury, find the defendant, Hector Uriarte:

GUILTY ☐          NOT GUILTY ☐

With respect to Count Four of the Indictment, in which the defendant Hector Uriarte is charged with possession of cocaine with the intent to distribute, we, the jury, find the defendant, Hector Uriarte:

GUILTY ☐          NOT GUILTY ☐

If you find the defendant Hector Uriarte guilty of Count Four, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

    The offense involved at least  ☐
    5 kilograms of mixtures
    containing cocaine

    The offense involved less  ☐
    than 500 grams of mixtures
    containing cocaine

With respect to Count Five of the Indictment (Kidnapping of Victims M and N – Lou

88

Vega and Francisco Pizzaro, in which the defendant Hector Uriarte is charged with Kidnapping in Aid of Racketeering, we, the jury, find the defendant, Hector Uriarte:

GUILTY ☐          NOT GUILTY ☐

With respect to Count Seven of the Indictment (Kidnapping of Victims O through U - Pedro Avila and family), in which the defendant Hector Uriarte is charged with Kidnapping in Aid of Racketeering, we, the jury, find the defendant, Hector Uriarte:

GUILTY ☐          NOT GUILTY ☐

With respect to Count Eight of the Indictment, in which the defendant Hector Uriarte is charged with use of a weapon in a crime of violence, we, the jury, find the defendant, Hector Uriarte:

GUILTY ☐          NOT GUILTY ☐

With respect to Count Ten of the Indictment (Kidnapping of Victims V and W - Jose Carranza and friend), in which the defendant Hector Uriarte is charged with Kidnapping in Aid of Racketeering, we, the jury, find the defendant, Hector Uriarte:

GUILTY ☐          NOT GUILTY ☐

With respect to Count Eleven of the Indictment, in which the defendant Hector Uriarte is charged with use of a weapon in a crime of violence, we, the jury, find the defendant, Hector Uriarte:

GUILTY ☐          NOT GUILTY ☐

With respect to Count Twelve of the Indictment, in which the defendant Hector Uriarte is charged with attempted possession of cocaine with intent to distribute, we, the jury, find the defendant, Hector Uriarte:

GUILTY ☐          NOT GUILTY ☐

If you find the defendant Hector Uriarte guilty of Count Twelve, you must answer the following question:

89

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

        The offense involved at least     ☐
        5 kilograms of mixtures
        containing cocaine

        The offense involved less       ☐
        than 500 grams of mixtures
        containing cocaine

With respect to Count Thirteen of the Indictment, in which the defendant Hector Uriarte is charged with drug conspiracy, we, the jury, find the defendant, Hector Uriarte:

        GUILTY ☐                NOT GUILTY ☐

If you find the defendant Hector Uriarte guilty of Count Thirteen, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

        The offense involved at least     ☐
        5 kilograms of mixtures
        containing cocaine

        The offense involved less       ☐
        than 500 grams of mixtures
        containing cocaine

SO SAY WE ALL

_____          _____
  Foreperson

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Dated:  _____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
          v. )     No. 09 CR 332
)     Hon. Joan B. Gottschall
JORGE URIARTE )

## **VERDICT FORM**

With respect to Count One of the Indictment, in which the defendant Jorge Uriarte is charged with racketeering conspiracy, we, the jury, find the defendant, Jorge Uriarte:

GUILTY ☐          NOT GUILTY ☐

With respect to Count Four of the Indictment, in which the defendant Jorge Uriarte is charged with possession of cocaine with intent to distribute, we, the jury, find the defendant, Jorge Uriarte:

GUILTY ☐          NOT GUILTY ☐

If you find the defendant Jorge Uriarte guilty of Count Four, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

The offense involved at least  ☐
5 kilograms of mixtures
containing cocaine

The offense involved less  ☐
than 500 grams of mixtures
containing cocaine

With respect to Count Five of the Indictment (Kidnapping of Victims M and N – Lou Vega and Francisco Pizzaro, in which the defendant Jorge Uriarte is charged with kidnapping in aid of racketeering, we, the jury, find the defendant, Jorge Uriarte:

GUILTY ☐                    NOT GUILTY ☐

With respect to Count Seven of the Indictment (Kidnapping of Victims O through U - Pedro Avila and family), in which the defendant Jorge Uriarte is charged with kidnapping in aid of racketeering, we, the jury, find the defendant, Jorge Uriarte:

GUILTY ☐                    NOT GUILTY ☐

With respect to Count Eight of the Indictment, in which the defendant Jorge Uriarte is charged with use of a weapon in a crime of violence, we, the jury, find the defendant, Jorge Uriarte:

GUILTY ☐                    NOT GUILTY ☐

With respect to Count Ten of the Indictment (Kidnapping of Victims V and W - Jose Carranza and friend), in which the defendant Jorge Uriarte is charged with kidnapping in aid of racketeering, we, the jury, find the defendant, Jorge Uriarte:

GUILTY ☐                    NOT GUILTY ☐

With respect to Count Eleven of the Indictment, in which the defendant Jorge Uriarte is charged with use of a weapon in a crime of violence, we, the jury, find the defendant, Jorge Uriarte:

GUILTY ☐                    NOT GUILTY ☐

With respect to Count Twelve of the Indictment, in which the defendant Jorge Uriarte is charged with attempted possession of cocaine with intent to distribute, we, the jury, find the defendant, Jorge Uriarte:

GUILTY  ☐                    NOT GUILTY  ☐

If you find the defendant Jorge Uriarte guilty of Count Twelve, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

The offense involved at least    ☐
5 kilograms of mixtures
containing cocaine

The offense involved less       ☐
than 500 grams of mixtures
containing cocaine

With respect to Count Thirteen of the Indictment, in which the defendant Jorge Uriarte is charged with drug conspiracy, we, the jury, find the defendant, Jorge Uriarte:

GUILTY  ☐                    NOT GUILTY  ☐

If you find the defendant Jorge Uriarte guilty of Count Thirteen, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

The offense involved at least 5 kilograms of mixtures containing cocaine      ☐

The offense involved less than 500 grams of mixtures containing cocaine      ☐

SO SAY WE ALL

_____        _____
Foreperson

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

Dated:  _____

95

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Hon. Joan B. Gottschall |
| MANUEL URIARTE | ) | |

## **VERDICT FORM**

With respect to Count One of the Indictment, in which the defendant Manuel Uriarte is charged with racketeering conspiracy, we, the jury, find the defendant, Manuel Uriarte:

GUILTY  ☐                    NOT GUILTY  ☐

With respect to Count Two of the Indictment, in which the defendant Manuel Uriarte is charged with murder in aid of racketeering, we, the jury, find the defendant, Manuel Uriarte:

GUILTY  ☐                    NOT GUILTY  ☐

With respect to Count Three of the Indictment, in which the defendant Manuel Uriarte is charged with murder in aid of racketeering, we, the jury, find the defendant, Manuel Uriarte:

GUILTY  ☐                    NOT GUILTY  ☐

SO SAY WE ALL

_____          _____
Foreperson

_____          _____

_____          _____

96

_____    _____

_____    _____

_____    _____

_____    _____

Dated: _____

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA )
                                     )
              v.                     )       No. 09 CR 332
                                     )       Hon. Joan B. Gottschall
TONY SPARKMAN                        )

## **VERDICT FORM**

With respect to Count One of the Indictment, in which the defendant Tony Sparkman is charged with racketeering conspiracy, we, the jury, find the defendant, Tony Sparkman:

      GUILTY ☐            NOT GUILTY ☐

With respect to Count Four of the Indictment, in which the defendant Tony Sparkman is charged with possession of cocaine with intent to distribute, we, the jury, find the defendant, Tony Sparkman:

      GUILTY ☐            NOT GUILTY ☐

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

      The offense involved at least   ☐
5 kilograms of mixtures
containing cocaine

      The offense involved less   ☐
than 500 grams of mixtures
containing cocaine

With respect to Count Seven of the Indictment (Kidnapping of Victims O through U - Pedro Avila and family), in which the defendant Tony Sparkman is charged with kidnapping in aid racketeering, we, the jury, find the defendant, Tony Sparkman:

      GUILTY ☐            NOT GUILTY ☐

With respect to Count Eight of the Indictment, in which the defendant Tony Sparkman

is charged with use of a weapon in a crime of violence, we, the jury, find the defendant, Tony Sparkman:

GUILTY ☐                    NOT GUILTY ☐

With respect to Count Ten of the Indictment (Kidnapping of Victims V and W - Jose Carranza and friend), in which the defendant Tony Sparkman is charged with kidnapping in aid of racketeering, we, the jury, find the defendant, Tony Sparkman:

GUILTY ☐                    NOT GUILTY ☐

With respect to Count Eleven of the Indictment, in which the defendant Tony Sparkman is charged with use of a weapon in a crime of violence, we, the jury, find the defendant, Tony Sparkman:

GUILTY ☐                    NOT GUILTY ☐

With respect to Count Twelve of the Indictment, in which the defendant Tony Sparkman is charged with attempted possession of cocaine with intent to distribute, we, the jury, find the defendant, Tony Sparkman:

GUILTY ☐                    NOT GUILTY ☐

If you find the defendant Tony Sparkman guilty of Count Twelve, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

The offense involved at least      ☐
5 kilograms of mixtures
containing cocaine

The offense involved less          ☐
than 500 grams of mixtures
containing cocaine

99

With respect to Count Thirteen of the Indictment, in which the defendant Tony Sparkman is charged with drug conspiracy, we, the jury, find the defendant, Tony Sparkman: :

GUILTY  ☐                    NOT GUILTY  ☐

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

        The offense involved at least   ☐
        5 kilograms of mixtures
        containing cocaine

        The offense involved less   ☐
        than 500 grams of mixtures
        containing cocaine

SO SAY WE ALL

_____          _____
Foreperson

_____          _____


_____          _____


_____          _____


_____          _____


_____          _____

Dated: _____

100

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Hon. Joan B. Gottschall |
| ROBERT CARDENA | ) | |

## **VERDICT FORM**

With respect to Count Four of the Indictment, in which the defendant Robert Cardena is charged with possession of cocaine with intent to distribute, we, the jury, find the defendant, Robert Cardena:

GUILTY ☐                    NOT GUILTY ☐

If you find the defendant Robert Cardena guilty of Count Four, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

The offense involved at least   ☐
5 kilograms of mixtures
containing cocaine

The offense involved less   ☐
than 500 grams of mixtures
containing cocaine

With respect to Count Thirteen of the Indictment, in which the defendant Robert Cardena is charged with possession of cocaine with intent to distribute, we, the jury, find the defendant, Robert Cardena:

GUILTY ☐                    NOT GUILTY ☐

101

If you find the defendant Robert Cardena guilty of Count Thirteen, you must answer the following question:

As to COCAINE, we, the jury, find beyond a reasonable doubt as follows:

       The offense involved at least   ☐
       5 kilograms of mixtures
       containing cocaine

       The offense involved less    ☐
       than 500 grams of mixtures
       containing cocaine

SO SAY WE ALL

_____     _____
 Foreperson

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

Dated: _____

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| GLENN LEWELLEN, | ) | |
| | ) | |
| Defendant. | ) | |

*UNOPPOSED MOTION TO CONTINUE MODIFIED CONDITIONS OF BOND*

GLENN LEWELLEN, through counsel, and without objection from the

government or Pre-trial Services, respectfully requested that his conditions of bond

be modified from December 15, 2011, until January 2, 2012, to allow him to

participate in church and family activities during the holiday season.  Mr. Lewellen

requested that he be given a curfew, from 7: 00 a.m. until 11:00 p.m., on trial days,

and from 9:00 a.m. until 11:00 p.m., on non-trial days.  The Court granted this

Motion.

We respectfully request that this curfew be continued until the conclusion of

the trial.

A proposed Order is attached for the Court's review.


DATE:        January 3, 2012              Respectfully submitted,

                                          By:    s/Andréa E. Gambino
                                                 s/Matthew J. Madden
                                                 Attorneys for Glenn Lewellen

1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2012, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which sent notification of

such filing to the following:

Steven Block, Esq.
Terra Reynolds, Esq.
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604


and I hereby certify that I have mailed by United State Postal Service or hand

delivered the document to the following non-CM/ECF participants: N/A.


DATE:          January 3, 2012          Respectfully submitted,

                                        By:    s/Andréa E. Gambino
                                               Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

2

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,            )
                          Plaintiff,  )
            v.                        )        No. 09 CR 332
                                      )        Judge Joan B. Gottschall
GLENN LEWELLEN,                       )
                                      )
                          Defendant.  )

## PROPOSED ORDER

IT IS HEREBY ORDERED THAT conditions of bond for GLENN

LEWELLEN, previously modified to allow Mr. Lewellen to have a curfew of 7:00

a.m. to 11:00 p.m., during trial weeks, are allowed to stand until the conclusion of

the trial.

IT IS FURTHER ORDERED that Mr. Lewellen continue to keep Pre-trial

Services informed of his activities during this time period, as directed by his Pre-

trial Services Officer, Brian Kolbus.

DATE:        January 3, 2012

                                   ENTER:


                                   _____
                                   Judge Joan B. Gottschall

3

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| SAUL RODRIGUEZ, et al, | ) | |
| [Glenn Lewellen] | ) | |
| Defendants. | ) | |

*GLENN LEWELLEN'S PETITION FOR A WRIT OF HABEAS CORPUS
AD TESTIFICANDUM*

GLENN LEWELLEN, by his attorneys, Andréa E. Gambino and Matthew J.
Madden, respectfully request that this Court enter an Order requiring that the
United States Marshal's Service arrange for the presentment of an inmate, FRANK
FARELLA, inmate number 22720-424, currently in the custody of the United States
Marshals, at the Metropolitan Correctional Center, Chicago, Illinois, to be a
material witness at trial in the above-captioned matter.  In support of this Petition,
Mr. Lewellen, through counsel, states the following:

(1)     Mr. Farella is currently in the custody of the Metropolitan Correctional
Center, Chicago, Illinois.  His inmate number is 22720-424.

(2)     Counsel for Mr. Lewellen has consulted with counsel for Mr. Farella, Beau
Brindley.

(3)     Mr. Farella, through counsel, has agreed to testify pursuant to subpoena or
court order, as long as it is possible to protect certain rights and privileges which

1

will be the subject of a Motion in Limine, filed contemporaneously with this

Petition.

(4)     Mr. Farella will be an impeachment witness for the defense of Mr. Lewellen.

        WHEREFORE, GLENN LEWELLEN respectfully requests that this Court

grant his petition and enter an Order, requiring that Mr. FRANK FARELLA,

inmate number 22720-424, be brought to court, to be a material witness at trial in

the above-captioned matter, on January 5, 2012.

DATE:           January 3, 2012               Respectfully submitted,

                                              By: s/Andréa E. Gambino

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014
agambinolaw@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2012, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which sent notification of

such filing to the following:

Counsel for Co-defendants

Steven Block, Esq.
Tiffany Tracy, Esq.
Terra Reynolds, Esq.
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604


and I hereby certify that I have mailed by United State Postal Service or hand

delivered the document to the following non-CM/ECF participants: N/A.


DATE:          January 3, 2012          Respectfully submitted,

                                        By:    s/Andréa E. Gambino
                                               Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| SAUL RODRIGUEZ, et al, | ) | |
| [Glenn Lewellen] | ) | |
| Defendants. | ) | |

*WRIT OF HABEAS CORPUS AD TESTIFICANDUM*

TO:    UNITED STATES MARSHAL            WARDEN
       Northern District of Illinois            Metropolitan Correctional Center
       Eastern Division                  71 W. VanBuren Street
       219 S. Dearborn Street            Chicago, Illinois  60605
       Chicago, IL  60604

WE COMMAND YOU that you do, at 12:30 p.m., on January 5, 2012, bring

or cause to be brought before the Honorable Judge Joan B. Gottschall, United

States District Court for the Northern District of Illinois, Eastern Division, in the

United States Courthouse, Chicago, Illinois, the body of:


Frank G. Farella
Date of Birth:      age 48
Sex:                male
Race:               Caucasian
Prisoner No.:       22720-424

Who has been and now is, in due form and process of law, incarcerated in the

following institution:

1

Metropolitan Correctional Center
Chicago, Illinois

And who is wanted to testify at trial before this Court on said date and at said time,

and, when that proceeding has been concluded that you return or cause to be

returned the said body to the custody of the Lawrence Correctional Center.


       AND HAVE YOU THEN AND THERE THIS WRIT.

To the Marshal of the Northern District of Illinois to execute:

WITNESS:        The Honorable Joan B. Gottschall
                Judge of the United States District Court for the
                Northern District of Illinois, Eastern Division,
                This _____day of _____.


_____
MICHAEL W. DOBBINS, CLERK


_____
                              DEPUTY


2

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| SAUL RODRIGUEZ, et al, | ) | |
| [Glenn Lewellen] | ) | |
| Defendants. | ) | |

**ORDER**

On the petition of counsel for defendant GLENN LEWELLEN and it

appearing to the Court that:

Name:              Frank G. Farella
Date of Birth:     Age 48
Sex:               Male
Race:              Caucasian
Prisoner No.:      22720-424

has been and now is, in due process of law, incarcerated in the following institution:

Metropolitan Correctional Center
Chicago, Illinois  60605

And that said person, a witness for the defendant, should appear in this case in the

United States District Court at Chicago, Illinois on January 5, at 12:30 p.m. to

testify in the defendant's case before this Court.

IT IS THEREFORE ORDERED that the following persons:

UNITED STATES MARSHAL          WARDEN
Northern District of Illinois          Metropolitan Correctional Center
Chicago, Illinois          Chicago, Illinois  60605

1

bring or cause to be brought before this Court, at said time on said date, in the

United States Courthouse in Chicago, Illinois, the body of the said defendant; and

that a Writ of Habeas Corpus Ad Testificandum, directed to said persons, so

commanding them, be issued by the Clerk of this Court.

ENTER:

_____
Judge Joan B. Gottschall

DATED at Chicago, Illinois
This _____day of _____

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| SAUL RODRIGUEZ, et al, | ) | |
| [Glenn Lewellen] | ) | |
| Defendants. | ) | |

*MOTION IN LIMINE TO PRECLUDE INQUIRY INTO PENDING CASE AND
FAILED PLEA NEGOTIATIONS FOR FRANK FARELLA*

GLENN LEWELLEN, through his attorneys, Andréa E. Gambino and

Matthew J. Madden, respectfully moves this Court, *in limine*, pursuant to Federal

Rules of Evidence 609 and 410, to preclude inquiry into the underlying facts and

trial testimony provided by Mr. Farella in his own case, which is not yet final, and

to preclude inquiry into the facts and circumstances surrounding failed plea

negotiations that preceded Mr. Farella's trial.  In support of this Motion, GLENN

LEWELLEN, through counsel, states the following:

(1)     Frank Farella is being called to testify for the limited purpose of perfecting

impeachment of Saul Rodriguez, and through that impeachment, supporting

defendant LEWELLEN's theory of defense.

(2)     Mr. Farella has been found guilty of drug conspiracy and firearms charges at

trial in his own case, *United States v. Farella, 09 CR 87-1*, but has not yet been

sentenced.  He has filed a Motion for Judgment of Acquittal and Motion for a New

1

Trial, R. 240, and the Court has scheduled a due date of February 17, 2012, for the filing of supporting memoranda.  R. 237.

(3)     Federal Rule of Evidence 609 permits the impeachment of witnesses, other than the accused, by evidence of a prior conviction, subject to Rule 403.  In this case, Mr. Farella's prior convictions, apart from his pending case and provided that they are within the time limit provided by Rule 609(b), are admissible.

(4)     In the case of the admission of prior convictions, the Seventh Circuit has limited inquiry to the offense charged, the date, and the disposition of the case. *See*, *e.g.*, *United States v. Castro,* 788 F.2d 1240, 1246 (7th Cir.1986); *United States v. Dow,* 457 F.2d 246, 250 (7th Cir.1972).  The cross-examiner is not permitted to delve into the details of the offense.  Nor should the government be permitted to inquire about the facts underlying Mr. Farella's case, much less his testimony on his own behalf during his trial.  The government has made similar arguments in order to preclude detailed cross-examination of its own witnesses: "As the government points out, even where a defendant has been *convicted,* impeachment under Fed.R.Evid. 609 would not permit inquiry into the details of the underlying offense. *See United States v. Castro,* 788 F.2d 1240, 1245–46 (7th Cir.1986)." *United States v. Chaverra-Cardona*, 669 F. Supp. 1445, 1446-47 (N.D. Ill. 1987).

(5)     Counsel for the government also has indicated a desire to question Mr. Farella about events surrounding failed plea negotiations that pre-dated Mr. Farella's trial and were accomplished with counsel different from his trial counsel.

2

(6)     Federal Rule of Evidence 410 provides, in relevant part, that evidence of "any

statement made in the course of any proceedings under Rule 11 of the Federal Rules

of Criminal Procedure …. regarding either of the foregoing pleas," and "any

statement made in the course of plea discussions with an attorney for the

prosecuting authority which do not result in a plea of guilty"  are not admissible in

any criminal proceeding against the defendant who was a participant in the plea

discussions. [1]

(7)     The facts and circumstances of Mr. Farella's failed attempts to enter into an

agreement with the government in his own case are not relevant to the testimony

that he is being called upon to provide in this case.

(8)     Questioning about Mr. Farella's current case also will require a "trial within

a trial", will unnecessarily confuse the jury, and will prevent the fair evaluation of

the testimony Mr. Farella is otherwise able to provide in this case.

        WHEREFORE, GLENN LEWELLEN, through counsel, respectfully requests

that this Court limit inquiry into Mr. Farella's criminal history to his prior final

convictions and preclude inquiry into the facts and circumstances surrounding his

pending case.

---

[1]  In a case where a defendant has signed a proffer letter, waiving his rights under
Federal Rule of Criminal Procedure 11 and Federal Rule of Evidence 410, such
statements are admissible for impeachment purposes; however, in this case, it is
counsel's understanding that there is no proffer letter signed by Mr. Farella.  In any
event, Mr. Farella's testimony in this trial is not related in any way to any
statements Mr. Farella may have made to the government on previous occasions.

DATE:        January 3, 2012              Respectfully submitted,

                                          By:    s/Andréa E. Gambino
                                                 s/Matthew J. Madden
                                                 Attorneys for Glenn Lewellen


Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014
agambinolaw@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2012, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which sent notification of

such filing to the following:

Counsel for Co-defendants

Steven Block, Esq.
Tiffany Tracy, Esq.
Terra Reynolds, Esq.
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604


and I hereby certify that I have mailed by United State Postal Service or hand

delivered the document to the following non-CM/ECF participants: N/A.


DATE:        January 3, 2012            Respectfully submitted,

                                        By:    s/Andréa E. Gambino
                                               Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

5

6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
                               )       Case No. 09 CR 332-5
v.                            )       Honorable Joan B. Gottschall
                               )
MANUEL URIARTE              )

### DEFENDANT MANUEL URIARTE'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29(a)

      Defendant MANUEL URIARTE hereby moves for judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure, at the end of the Government's case-in-chief, and in support thereof states as follows:

      Rule 29(1) of the Federal Rules of Criminal Procedure states in pertinent part:

Rule 29. Motion for a Judgment of Acquittal

(a)  Before Submission to the Jury.  After the government closes its evidence or after the close of all the evidence, the court on the defendants motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  The court may on its own consider whether the evidence is a motion for a judgment of acquittal at the close of the government's evidence the defendant may offer evidence without having reserved the right to do so.

      The standard to be applied is, viewing the evidence in the light most favorable to the government, whether or not there is relevant evidence from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  *United States v. Pearson*, 113 F.3d 758 (7th Cir. 1997).

Manuel Uriarte is charged in three Counts in the Third Superseding Indictment which is the basis for the trial in this case.  Defendant Manuel Uriarte has filed a separate Rule 29 motion dealing solely with the issue of whether or not the indictment against him was brought within the statute of limitations for Count 1 after his withdrawal from the alleged conspiracy.

In addition to that Motion, Manuel Uriarte  brings the following bases for a judgment of acquittal under Rule 29.  Count 1 charges a RICO Conspiracy under 18 U.S.C.  §1962(d).  Specifically, Manuel Uriarte is charged with others with being members of a racketeering conspiracy in which acts of violence were allegedly committed, including murders and kidnappings.  The government has failed to prove that the enterprise existed or that Manuel Uriarte was a member of such enterprise.

Count 1 also charged that Manuel Uriarte committed two murders which were allegedly committed in furtherance of the conspiracy which was alleged in Count 1. These are the murders of Juan Luevano and Michael Garcia, and the government has not proven beyond a reasonable doubt that they were committed in furtherance of the enterprise alleged in Count 1.

Concerning Luevano, Andres Flores related that Saul Rodriguez had offered Manny Uriarte money to kill Luevano, and that Rodriguez wanted Baby G killed because of Luevano's relationship with Janet Burgos. He said that Saul Rodriguez paid Manuel Uriarte for the murder and that Manuel Uriarte forwarded payment to him (Flores).  Saul Rodriguez testified that Luevano had been dating his ex-girlfriend, Janet Burgos, and wanted revenge for that.   He had one child with her.  Prior to that time, he had been best friends with Luevano.  They had an understanding that they would never date the same

woman. Rodriguez also learned that the girlfriend of Benjamin Manteca, a La Raza leader with whom Rodriguez maintained a close relationship, had also slept with Luevano, and Manteca also wanted Luevano killed. Manteca would protect Saul Rodriguez. Rodriguez claimed that he asked Manny Uriarte to kill Luevano for these reasons, and that Manny Uriarte allegedly requested that Rodriguez look out for him and his brother.

As to Garcia, Andres Flores testified that he was approached by Manny Uriarte and asked to participate in the Garcia killing, and that Saul Rodriguez would pay them for the murder.. He testified that he went to the home of Michael Garcia with Manny Uriarte. He stated that when Garcia came home he (Flores) ran over to Garcia and shot him. He offered no other reason for the killing. He was paid $5,000 for his role in the killing.

Additionally, Jorge Lopez had a brother who had been killed, he believed, Latin King Michael Garcia. In 2001, Jorge Lopez asked Saul Rodriguez to have Michael Garcia killed. Lopez offered to pay Rodriguez for the revenge killing. Saul Rodriguez testified that he was approached by Jorge and asked to find someone to kill the person who had killed his brother, Michael Garcia. Rodriguez agreed to do so and eventually hired Manny Uriarte and Andres Flores to do so. As shown below, both of these killings were motivated by personal interests and did not further the enterprise itself.

**Legal standards applicable to acts in furtherance of a RICO enterprise**

As stated in the pretrial motions concerning the Santiago proffer and cco-conspirator statements, the requirements of RICO are well covered in *United States v. Turkette*, 452 U.S. 576, (1981). "The existence of an enterprise 'is proved by evidence

of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Turkette* at 583.

RICO is about an enterprise and its goals, not individuals and their individual self-interest. "RICO regulates enterprises, not people. Although RICO 'does not require the violent acts themselves to have any connection to interstate commerce other than that they were committed for the purpose of establishing or maintaining a position within the enterprise,' *United States v. Crenshaw,* 359 F.3d 977, 984 (8th Cir.2004), the predicate acts must still further the goals of an enterprise that itself affects commerce." *Waucash v. United States*, 380 F.3d 251 (6th Cir. 2004).

Further, the case of *United States v. Kehoe*, 310 F.3d 579 (8th Cir. 2002) distinguishes the requirements of RICO from individuals who associate to commit sporadic crime. "Under RICO, an "enterprise is established 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' " *United States v. Kragness*, 830 F.2d 842, 855 (8th Cir.1987) (quoting *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524 (1981)). Three characteristics distinguish a RICO enterprise from "individuals who associate [to commit] sporadic crime." Id. The individuals involved in a RICO enterprise share a common purpose or goal. *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 769 (8th Cir.1992). There is a continuity of personnel, and the organization which they advance is ongoing. Id. Finally, "an ascertainable structure [exists, which is] distinct from that inherent in the pattern of racketeering." Id. at 769–70; see also *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524; *Kragness*, 830 F.2d at 855; *United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir.1982) (internal quotations and citations omitted)." *Kehoe* at 586.

### Application of Facts to Legal Standard

The purported evidence clearly shows that these acts were committed for revenge. The revenge in the Luevano killing was for personal animosity that Saul Rodriguez's ex-girlfriend had a relationship with Luevano. The motive in the Garcia killing was to avenge a gang-related killing, and the gangs involved in the revenge were unrelated to the charged enterprise.  These were acts committed by people, for individual revenge.  Saul Rodriguez and Jorge Lopez were getting even for what they perceived as wrongs committed against them, and they had nothing to do with the Saul Rodriguez enterprise.

If there is a RICO enterprise here, its goal is clearly to financially enrich the enterprise, and hence its members.  These murders did not enrich the enterprise at all. These were sporadic, *ad hoc* incidents to avenge personal issues.  The fact that the acts may have involved some of the same individuals as the alleged enterprise and that there may have been some personal remuneration may at first glance make it appear that they are acts which the government could include in Count One.  However, that superficial look would ignore the critical issue that the murders do not further the enterprise. It is very clear the purpose for the murders was personal, and were not the goals or purposes of the enterprise.

Further, and for the same reasons as discussed above, Defendant Manuel Uriarte moves to strike the murders of Juan Luevano and Miguel Garcia from Count 1 of the indictment because they were not committed in furtherance of the enterprise alleged in Count 1.

Count 2 charges Manuel Uriarte with the murder of Juan Luevano, and that the murder was committed "as consideration for the receipt of, and as consideration for a

promise and agreement to pay, anything of pecuniary value from the Rodriguez

Enterprise, and for the purpose of gaining entrance to, and for maintaining and increasing

position in the Rodriguez Enterprise . . .".   Count 3 charges Manuel Uriarte with the

Murder of Michael Garcia for purposes similar to those charged in Count 2.

As to Count 2 the evidence is insufficient to prove that he committed the murder,

and insufficient proof that he committed the murder for the purposes of entering,

maintaining and increasing position in the Rodriguez Enterprise.

The Defendant submits this motion consistent with time constrictions as set within

the jury trial and does not waive any error that may appear from a complete review of

official proceedings and trial record.

Manuel Uriarte maintains that the evidence was insufficient to sustain a conviction

on any of the three Counts listed above, and that the government has failed to meet its

burden of proving each necessary element of any and each of the three Counts.

WHEREFORE, Defendant Manuel Uriarte respectfully requests that this Court

grant a judgment of acquittal, and direct the verdict of not guilty in favor of the defendant

in Counts 1,2, and 3, and in the alternative, to strike the murders of Juan Luevano and

Miguel Garcia from Count 1 of the indictment because they were not committed in

furtherance of the enterprise alleged in Count 1.

.

Respectfully submitted,


/s/ Robert A. Loeb

/s/ Keith A. Spielfogel
Attorneys for Manuel Uriarte

Robert A. Loeb
190 S. LaSalle St., Suite 520
Chicago, IL 60603
312-368-0611
ARDC No. 1681990

Keith A. Spielfogel
190 S. LaSalle St. Suite 520
Chicago, IL 60603
312-236-6021
ARDC No. 2689537

CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2012, I electronically filed the foregoing Motion with the Clerk of the Court using the District's ECF/Pacer system, which will send notification of such filing to all parties.

  /s/ Robert Loeb_____

Robert A. Loeb
190 S. LaSalle St.
Suite 520
Chicago, IL 60603
312-368-0611
robertloeb@att.net

7

### UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2
### Eastern Division

UNITED STATES OF AMERICA

                              Plaintiff,

v.                                         Case No.: 1:09–cr–00332

                                         Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                              Defendant.

### NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, January 6, 2012:

       MINUTE entry before the Honorable Joan B. Gottschall:as to Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Robert Cardena, ( In Court hearing (jury instructions) set for 1/9/2012 at 10:00 AM.) Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2 | **DATE** | 1/4/2012 |
| **CASE TITLE** | USA vs. Glenn Lewellen | | |

**DOCKET ENTRY TEXT**

Motion by Glenn Lewellen to modify conditions of release to continue previously modified conditions [762] is granted.  Enter Order.  It is hereby ordered Mr. Lewellen's curfew of 7:00am to 11pm during trial weeks is allowed to stand until conclusion of the trial. It is further ordered that Mr. Lewellen keep Pre-Trial Services informed of his activities during this time period, as directed by this Pre-trial Services Officer, Brian Kolbus.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

FILED
2012 JAN -5  PM 3: 16
CLERK
U.S. DISTRICT COURT

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                    Plaintiff,     )
          v.                       )          No. 09 CR 332
                                   )          Judge Joan B. Gottschall
GLENN LEWELLEN,                    )
                                   )
                    Defendant.     )

## PROPOSED ORDER

IT IS HEREBY ORDERED THAT conditions of bond for GLENN

LEWELLEN, previously modified to allow Mr. Lewellen to have a curfew of 7:00

a.m. to 11:00 p.m., during trial weeks, are allowed to stand until the conclusion of

the trial.

IT IS FURTHER ORDERED that Mr. Lewellen continue to keep Pre-trial

Services informed of his activities during this time period, as directed by his Pre-

trial Services Officer, Brian Kolbus.

DATE:        January 3, 2012

                                        ENTER:

                                        _____
                                        Judge Joan B. Gottschall


                                        JAN 0 4 2012

3

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 332 |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| GLENN LEWELLEN | ) | |

**DEFENDANT GLENN LEWELLEN'S MOTION FOR JUDGMENT OF ACQUITTAL**

NOW COMES DEFENDANT Glenn Lewellen, by and through his attorneys Andrea Gambino and Matthew J. Madden, pursuant to Rule 29 of the Federal Rules of Criminal Procedure and respectfully moves this Honorable Court to enter a judgment of acquittal at the close of the government's case on each count of the Indictment in which he is charged.  In support thereof, the following is stated:

1.     The government has rested after presentation of its case in chief.

2.     Even taking the evidence in a light most favorable to the government at the close of the government's case, the proof was insufficient to satisfy each and every element of the offenses charged in the counts in which Mr. Lewellen is named.

3.     With respect to Count One, the government did not prove the existence of the "enterprise" within the meaning of 18 U.S.C. Section 1961(4) and *Boyle v. United States*, 129 S. Ct. 2237 (2009).

4.     With respect to the Count Thirteen, the government did not prove that defendant Glenn Lewellen entered into any agreement to participate in the alleged drug conspiracy.

5.     Defendant Glen Lewellen hereby moves to adopt any and all arguments made by

co-defendants in their Motion for Judgment of Acquittal that are also applicable to

him.

Wherefore, based on the foregoing, Defendant Glenn Lewellen respectfully moves this

Court to enter judgment of acquittal as to Glenn Lewellen on all counts of the Indictment

charged against him.


Respectfully submitted,


By:      s// *Matthew J. Madden*

Matthew J. Madden


Matthew J. Madden
Attorney At Law
53 W. Jackson Boulevard, Suite 703
Chicago, IL 60604
(312) 212-1900

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2
### Eastern Division

UNITED STATES OF AMERICA

                     Plaintiff,

v.                                  Case No.: 1:09–cr–00332

                                  Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                     Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, January 6, 2012:

        MINUTE entry before the Honorable Joan B. Gottschall:Motion in limine [764] is granted in part and denied in part as to Glenn Lewellen (2) as stated on the record in open court. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332, 2, 3, 4, 5, 7 and 10 | **DATE** | 1/6/2012 |
| **CASE TITLE** | USA vs. Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Sparkman and Cardena | | |

**DOCKET ENTRY TEXT**

Defendants orally renewed their motions for judgment of acquittal following the close of the government's evidence. The court reserves rulings as to all defendants.

Docketing to mail notices.

| | | Courtroom Deputy | RJ |
|---|---|---|---|

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2
### Eastern Division

UNITED STATES OF AMERICA

                         Plaintiff,

v.                                      Case No.: 1:09–cr–00332

                                      Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                         Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, January 10, 2012:

      MINUTE entry before the Honorable Joan B. Gottschall:as to Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen, Manuel Uriarte, Robert Cardena, Jury trial held on 1/10/2012, ( Jury Trial set for 1/12/2012 at 09:30 AM. ) Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

09 CR 332
USA v. Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Tony Sparkman and
Robert Cardena
Jury Instructions as Read to Jury
January 17, 2012
Judge Joan B. Gottschall



FILED

JAN 17 2012

JUDGE JOAN B. GOTTSCHALL

General.
Instructions

# GENERAL INSTRUCTIONS

Members of the jury, you have seen and heard all the evidence and the arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

2

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true, or that a person would have given certain testimony.

You are to decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the witness's age;

- the witness's intelligence;

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case.

4

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inferences you make must be reasonable and must be based on the evidence in the case.

Some of you have heard the phrases "circumstantial evidence" and "direct evidence."  Direct evidence is evidence that, if you believe it, directly proves a fact. Circumstantial evidence is evidence that, if you believe it, indirectly proves a fact. The law makes no distinction between the weight to be given either direct or circumstantial evidence.  You should decide how much weight to give to any evidence.  All the evidence in the case, including the circumstantial evidence, should be considered by you in reaching your verdict.

Certain things are not evidence.  I will list them for you:

First, testimony that I struck from the record, or that I told you to disregard, is not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, or television reports you may have seen or heard.  Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections by the lawyers are not evidence. Attorneys have a duty to object when they believe a question is improper.  You should not be influenced by the fact that the lawyers made objections.  If I sustained objections to questions the lawyers asked, you must disregard the question, and must not speculate on what the answers might have been.

Fourth, the lawyers' statements to you are not evidence.  The purpose of these statements is to discuss the issues and the evidence.  If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

It is proper for an attorney to interview any witness in preparation for trial.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

The indictment in this case is the formal method of accusing the defendants of offenses and placing the defendants on trial.  It is not evidence against the defendants and does not create any inference of guilt.

Defendant Glenn Lewellen is charged with:  (1) conspiracy to commit racketeering (Count One); and (2) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

Defendant Hector Uriarte is charged with:  (1) conspiracy to commit racketeering (Count One); (2) kidnapping in aid of the racketeering conspiracy (Counts Five, Seven, and Ten); (3) knowingly and intentionally possessing cocaine with the intent to distribute, and attempting to do so (Counts Four and Twelve); (4) using and carrying firearms during and in relation to a crime of violence (Counts Eight and Eleven); and (5) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

Defendant Jorge Uriarte is charged with:  (1) conspiracy to commit racketeering (Count One); (2) kidnapping in aid of the racketeering conspiracy (Counts Five, Seven, and Ten); (3) knowingly and intentionally possessing cocaine with the intent to distribute, and attempting to do so (Counts Four and Twelve); (4) using and carrying firearms during and in relation to a crime of violence (Counts Eight and Eleven); and (5) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

10

Defendant Manuel Uriarte is charged with: (1) conspiracy to commit racketeering (Count One); and (2) murder in aid of the racketeering conspiracy (Counts Two and Three).

Defendant Tony Sparkman is charged with: (1) conspiracy to commit racketeering (Count One); (2) kidnapping in aid of the racketeering conspiracy (Counts Seven and Ten); (3) knowingly and intentionally possessing cocaine with the intent to distribute, and attempting to do so (Counts Four and Twelve); (4) using and carrying firearms during and in relation to a crime of violence (Counts Eight and Eleven); and (5) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

Defendant Robert Cardena is charged with: (1) knowingly and intentionally possessing cocaine with the intent to distribute (Count Four); and (2) conspiracy to possess cocaine with intent to distribute (Count Thirteen).

Each of the defendants has pleaded not guilty to each of the charges.

11

Each defendant is presumed to be innocent of each of the charges against him.  This presumption continues during every stage of the trial and your deliberations on the verdict.  It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that a defendant is guilty as charged.  The government has the burden of proving the guilt of each defendant beyond a reasonable doubt.

This burden of proof stays with the government throughout the case.  A defendant is never required to prove his innocence or to produce any evidence at all.

A defendant has an absolute right not to testify. The fact that a defendant did not testify should not be considered by you in any way in arriving at your verdict.

13

You have received evidence of statements said to be made by defendant Glenn Lewellen to law enforcement officers. You must decide whether defendant Lewellen did in fact make the statements. If you find that defendant Lewellen did make the statements, then you must decide what weight, if any, you feel the statements deserve. In making this decision, you should consider all matters in evidence having to do with the statements, including evidence concerning defendant Lewellen himself, and the circumstances under which the statements were made.

You may not consider these statements as evidence against any defendant other than defendant Lewellen.

You have received evidence of statements said to be made by defendant Robert Cardena to law enforcement officers. You must decide whether defendant Cardena did in fact make the statements. If you find that defendant Cardena did make the statements, then you must decide what weight, if any, you feel the statements deserve. In making this decision, you should consider all matters in evidence having to do with the statements, including evidence concerning defendant Cardena himself, and the circumstances under which the statements were made.

You may not consider these statements as evidence against any defendant other than defendant Cardena.

You have heard witnesses give opinions about matters requiring special knowledge or skill.  You should judge this testimony in the same way that you judge the testimony of any other witness.  The fact that such a person has given an opinion does not mean that you are required to accept it.  Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness' qualifications, and all of the other evidence in the case.

You have heard testimony of an identification of a person.  Identification testimony is an expression of belief or impression by the witness.  You should consider whether, or to what extent, the witness had the ability and the opportunity to observe the person at the time of the offense and to make a reliable identification later.  You should also consider the circumstances under which the witness later made the identification.

The government has the burden of proving beyond a reasonable doubt that the defendant was the person who committed the crime charged.

You have heard evidence that before the trial witnesses made statements that may be inconsistent with the witness's testimony here in court. If you find that such a statement is inconsistent with the witness's trial testimony, you may consider the earlier statement only in deciding the truthfulness and accuracy of that witness's testimony in this trial. If the earlier statement was made under oath, then you may also consider the earlier statement as evidence of the truth of whatever the witness said in the earlier statement.

18

You have heard evidence that certain witnesses have been convicted of crimes. You may consider this evidence only in deciding whether the testimony of those witnesses is truthful in whole, in part, or not at all.  You may not consider this evidence for any other purpose.

19

You have heard testimony from Lisette Venegas and David Venegas, who:

(a)      received immunity; that is, a promise from the government that any testimony or other information they provided would not be used against them in a criminal case; and

(b)      stated that they were involved in the commission of some of the offenses charged against the defendants.

You may give their testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

20

You have heard testimony from Roy Cockriel, who:

(a)      received immunity; that is, a promise from the government that any testimony or other information he provided would not be used against him in a criminal case; and

(b)      stated that he was involved in the commission of some of the offenses charged against the defendants.

You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

You have heard testimony from Fares Umar, Andres Torres, Andres Flores, Jorge Lopez, and Pedro Victoria, who:

(a)    received benefits from the government in connection with this case; namely, a recommendation for a reduction in their sentences;

(b)    stated that they were involved in the commission of some of the offenses as charged against the defendants; and

(c)    have pleaded guilty to an offense arising out of some of the same occurrences for which the defendants are now on trial. Their guilty pleas are not to be considered as evidence against the defendants.

You may give their testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

You have heard testimony from Saul Rodriguez, who:

(a)      received benefits from the government in connection with this case, namely, a recommendation for a reduction in his sentence;

(b)      stated that he was involved in the commission of some of the offenses as charged against the defendants;

(c)      has admitted lying under oath; and

(d)      has pleaded guilty to an offense arising out of some of the same occurrences for which the defendants are now on trial.  His guilty plea is not to be considered as evidence against the defendants.

You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

23

You have heard testimony from Lou Vega, who:

(a)     has pleaded guilty to an offense unrelated to the charges for which the defendants are now on trial; and

(b)     received benefits from the government, namely, a recommendation for a reduction in his sentence in the unrelated criminal case, in return for his cooperation in this and other cases.

You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

24

Summary charts are in evidence.   The summary charts should be considered together with and in the same way as all other evidence in the case.

Among the exhibits admitted during the trial were audio recordings some of which contained conversations that took place partially in the Spanish language. English transcripts of those conversations were also admitted in evidence. The transcripts were provided to you so that you could consider the content of the conversations on the recordings.

It is up to you to decide whether a transcript is accurate, in whole or in part. You may consider the translator's knowledge, training, and experience, the nature of the conversation, and the reasonableness of the translation in light of all the evidence in the case.

In considering the audio recordings, you may not rely on any knowledge you may have of the Spanish language. Rather, your consideration of the recordings and transcripts should be based on the evidence introduced in the trial.

With respect to the English language portion of the recordings, the tape recordings themselves are the evidence of what was and was not recorded on the tapes. If from your hearing of the English portion of a particular recording you perceive any variation between the recording and the corresponding transcript, you will be guided solely by the recording and not by the transcript.

I am providing you with the audio recordings admitted at trial and a computer, together with the transcripts you had in court, as well as the video

recordings that were admitted in evidence.  You are not required to play the

audio or video recordings, in part or in whole.  You may rely, instead, on your

recollections of these recordings as you heard and saw them at trial.

27

The indictment charges that certain offenses were committed "on or about" certain dates.   The government must prove that the offenses happened reasonably close to those dates but is not required to prove that the alleged offenses happened on those exact dates.

Even though the defendants are being tried together, you must give each of them separate consideration.  In doing this, you must analyze what the evidence shows about each defendant, leaving out of consideration any evidence that was admitted solely against some other defendant.  Each defendant is entitled to have his case decided on the evidence and the law that applies to that defendant.

When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

A defendant's presence at the scene of a crime and knowledge that a crime is being committed is not alone sufficient to establish the defendant's guilt.

A defendant's association with conspirators or persons involved in a criminal enterprise is not by itself sufficient to prove his participation or membership in a conspiracy or criminal enterprise.

If a defendant performed acts that advanced a criminal activity but had no knowledge that a crime was being committed or was about to be committed, those acts alone are not sufficient to establish the defendant's guilt.

An offense may be committed by more than one person.  A defendant's guilt may be established without proof that the defendant personally performed every act constituting the crime charged.

Any person who knowingly aids, counsels, commands, induces or procures the commission of an offense may be found guilty of that offense.  That person must knowingly associate with the criminal activity, participate in the activity, and try to make it succeed.

If a defendant knowingly caused the acts of another, the defendant is responsible for those acts as though he personally committed them.

33

The law allowed the government to use various deceptive and disguised investigative techniques, including the use of undercover operations and covert wiretaps. These are permissible and recognized means of criminal investigation.

Any opinions you may hold regarding the use of such investigative techniques to detect unlawful activities are not to enter into your deliberations in any way.

Gang membership, standing alone, is not a violation of any law.

You should not speculate why any other person whose name you may have heard during the trial or who is named in the indictment is not currently on trial before you.

Counts 1,2,3,
5,7,10

# INSTRUCTIONS FOR COUNTS ONE, TWO, THREE, FIVE, SEVEN, AND TEN

## Racketeering Conspiracy and Offenses Committed in Aid of Racketeering Conspiracy

Defendants Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, and Tony Sparkman are charged in Count One with conspiracy to commit racketeering.

To sustain the charge of conspiracy to commit racketeering as charged in Count One, the government must prove the following propositions beyond a reasonable doubt:

First, that the defendant you are considering knowingly conspired to conduct or participate in the conduct of the affairs of the Rodriguez Enterprise, an enterprise, through a pattern of racketeering activity as described in Count One; and

Second, that Saul Rodriguez, Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Manuel Uriarte, Andres Flores, Tony Sparkman, Fares Umar, Andres Torres, Pedro Victoria, and others (referred to in the indictment collectively as the "Rodriguez Enterprise"), were an enterprise; and

Third, that the activities of the Rodriguez Enterprise would affect, interstate or foreign commerce.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to a particular defendant, then you should find that defendant guilty of Count One.

If, on the other hand, you find from your consideration of all the evidence

38

that any of these propositions has not been proved beyond a reasonable doubt as

to a particular defendant, then you should find that defendant not guilty of

Count One.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.  For purposes of Count One, the government must prove beyond a reasonable doubt that the conspiracy as charged in Count One existed, and that the particular defendant you are considering knowingly became a member of the conspiracy with an intention to further the conspiracy.

To establish the existence of the racketeering conspiracy charged in Count One and its common purposes, the government need not establish that there existed a formal agreement. The agreement may be informal, and may consist of an implicit understanding among the participants.  In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

A conspiracy may be established even if its purposes were not accomplished.

To be a member of the conspiracy, a defendant need not join at the beginning or know all the other members or all the means by which the conspiracy's purposes were to be accomplished, and need not participate in all of the events of the conspiracy. The government must prove beyond a reasonable doubt that the defendant was aware of the common purposes of the conspiracy, and that he knowingly joined the agreement.

In deciding whether a defendant joined the racketeering conspiracy charged in Count One, you must base your decision only on what that particular defendant did or said. In determining what a particular defendant did or said, you may consider the defendant's own words and acts. You may also consider the words or acts of other persons to decide what the defendant did or said, and you may use them to help you understand what the defendant did or said.

42

In order to find a "pattern of racketeering activity" for purposes of Count One, you must find beyond a reasonable doubt that the particular defendant you are considering agreed that some member or members of the conspiracy would commit at least two separate acts of racketeering as described in Count One. You must also find that those acts were in some way related to each other and that there was continuity between them.

Acts are related to each other if they are not isolated events, that is, if they have similar purposes, or results, or participants, or victims, or are committed a similar way, or have other similar distinguishing characteristics, or are part of the affairs of the same enterprise.

There is continuity between acts if, for example, they are ongoing over a substantial period of time, or had the potential to continue over a substantial period, or if they are part of the regular way some entity does business or conducts its affairs.

For purposes of Count One, the government does not have to prove that any racketeering acts were actually committed at all, or that the defendant agreed to personally commit any such acts, or that the defendant agreed on the specific acts that would be committed.

44

A person conducts or participates in the conduct of the affairs of an enterprise if that person knowingly

(a)    uses his or her position in, or association with, the enterprise to perform acts which are involved in some way with the operation or management of the enterprise, directly or indirectly; or

(b)    causes another to do so; or

(c)    agrees to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner.

In order to have conducted or participated in the conduct of the affairs of an enterprise, a person need not have participated in all the activity alleged in Count One.

45

For purposes of Counts One, Two, Three, Five, Seven and Ten, the term "enterprise" is a group of people associated together for a common purpose of engaging in a course of conduct.  This group may be associated together for purposes that are both legal and illegal.  The enterprise must have at least three features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purposes.

In considering whether a group is an "enterprise," you may consider whether it has an ongoing organization or structure, either formal or informal, and whether the various members of the group functioned as a continuing unit. A group may continue to be an "enterprise" even if it changes membership by gaining or losing members over time.  The government need not prove that the association had any particular or formal structure; all that is necessary is organization sufficient for the enterprise's associates to function and operate in a coordinated manner in order to carry out the common purpose or purposes of the enterprise.

The government must prove that the group described in the indictment was an enterprise, but need not prove each and every allegation in the indictment about the enterprise or the manner in which the enterprise operated.

The term "enterprise" includes a criminal organization.

Interstate or foreign commerce includes the movement of money, goods, services or persons from one state to another or between another country and the United States. This would include the purchase or sale of goods or supplies from outside the state in which the enterprise was located, the use of interstate mail or wire facilities, or the causing of any of those things. If you find that beyond a reasonable doubt either: (a) that the enterprise made, purchased, sold or moved goods or services that had their origin or destination outside the state in which the enterprise was located, or (b) that the actions of the enterprise affected in any degree the movement of money, goods or services across state lines or the borders of the United States, then interstate or foreign commerce was engaged in or affected.

For purposes of Counts One, Five, Seven and Ten, the government need only prove that the enterprise as a whole engaged in interstate or foreign commerce or that its activity affected interstate or foreign commerce to any degree, although proof that racketeering acts did affect interstate or foreign commerce meets that requirement. The government need not prove that a defendant engaged in interstate or foreign commerce, or that the acts of a defendant affected interstate or foreign commerce.

48

For purposes of Counts One, Two, Three, Five, Seven and Ten, the law defines "racketeering activity" as acts constituting Murder, Attempted Murder, Solicitation of Murder, Kidnapping, Aggravated Kidnapping, Robbery, and Armed Robbery, as those offenses are defined under Illinois State law, and acts constituting Robbery, Obstruction of Justice, and Drug Possession and Distribution, as those offenses are defined under federal law.

***Murder*** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/7-1, 5/8-2, 5/8-4, and 5/9-1)

Under Illinois law, a person commits the offense of murder when he, or one for whose conduct he is legally responsible, kills an individual and, in performing the acts which cause the death:

(1)     intends to kill or do great bodily harm to that individual; or

(2)     knows that such acts will cause death to that individual; or

(3)     knows that such acts create a strong probability of death or great bodily harm to that individual.

***Attempted Murder*** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/7-1, 5/8-2, 5/8-4, and 5/9-1)

Under Illinois law, a person commits the offense of attempted murder when he, or one for whose conduct he is legally responsible, performs an act which constitutes a substantial step toward the killing of an individual; and does so with the intent to kill an individual.  The killing attempted need not have been accomplished.


***Solicitation of Murder*** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/7-1, 5/8-1, 5/8-2, 5/8-4, and 5/9-1)

Under Illinois law, a person commits the offense of solicitation of murder when he, or one for whose conduct he is legally responsible, commands, encourages, or requests another person to commit the offense of murder, and does so with the intent that the offense of murder be committed.

50

***Kidnapping*** (720, Illinois Compiled Statutes ,Sections 5/5-1, 5/5-2, 5/8-2, 5/8-4, 5/10-1)

Under Illinois law, a person commits the offense of kidnapping when he, or one for whose conduct he is legally responsible:

(1)     knowingly and secretly confines the individual against his will; or

(2)     knowingly and by force, or threat of imminent force, carries the individual from one place to another with intent secretly to confine that person against his will; or

(3)     knowingly and by deceit or enticement, induces another person to go from one place to another place with intent secretly to confine that person against his will.

***Aggravated Kidnapping*** (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-2,  5/8-4, 5/10-1, 5/10-2, 5/10-2(a))

Under Illinois law, a person commits the offense of aggravated kidnapping when he, or one for whose conduct he is legally responsible:

(1)     knowingly confines a child under the age of 13 years, without the consent of the child's parent or legal guardian; or

(2)     commits the offense of kidnapping, as defined above, and:

(a)     does so for the purpose of obtaining ransom, that is, money, benefits, or other valuable thing or concession; or

51

(b)     inflicts great bodily harm, other than by the discharge of a

         firearm, or commits another felony upon his victim; or

(c)     wears a hood or mask, or conceals his identity; or

(d)     commits the offense of kidnapping while carrying on or about

         his person or otherwise armed with a firearm or a dangerous

         weapon, that is, a taser, a knife with a blade of at least 3

         inches in length, a bludgeon, a sand-bag, a sand-club, a billy

         club, or another dangerous weapon of like character.

*Robbery* (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-2, 5/8-4, 5/18-1)

Under Illinois state law, a person commits robbery when he, or one for whose conduct he is legally responsible:

(1)    knowingly takes property from the person or presence of a victim; and

(2)    does so by the use of force or by threatening the imminent use of force.

*Armed Robbery* (720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-2, 5/8-4, 5/18-1, and 5/18-2)

Under Illinois law, a person commits armed robbery when he, or one for whose conduct he is legally responsible:

(1)    knowingly takes property from the person or presence of another; and

(2)     does so by the use of force or by threatening the imminent use of force; and

(3)    carries on or about his person, discharges, or is otherwise armed with a firearm or dangerous weapon other than a firearm, at the time of the taking.

53

***Responsibility for the Conduct of Another Person under Illinois Law*** (720, Illinois Compiled Statutes, Section 5/5-1)

Under Illinois law, a person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.

***Attempt under Illinois Law*** (720, Illinois Compiled Statutes, Section 5/8-4)

Under Illinois law, a person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense.

54

**Obstruction of Justice** (18 U.S.C. § 1503)

A person engages in obstruction of justice under federal law when:

(1)   he influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due administration of justice;

(2)   the person acts knowingly; and

(3)   the person's acts were done corruptly, that is, with the purpose of wrongfully impeding the due administration of justice.

The word endeavor describes any effort or act to influence, obstruct, or impede the due administration of justice.  The endeavor need not be successful, but it must have at least a reasonable tendency to influence, obstruct, or impede the due administration of justice.


**Robbery** (18 U.S.C. § 1951)

A person commits robbery under federal law when:

(1)   he knowingly obtains money or property from or in the presence of a victim;

(2)   he does so by means of robbery, that is, by unlawfully taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession;

55

(3)     he believes that the victim parted with the money or property because of the robbery; and

(4)     his conduct affects interstate commerce.

To constitute racketeering activity, it is not necessary that any particular act constitute a "robbery" under *both* state and federal law.

**Drug Offenses** (21 U.S.C. §§ 841(a)(1) and 846)

Under federal law, a person commits a drug offense if he knowingly and intentionally distributes, or possesses with the intent to distribute, a controlled substance, namely, cocaine, or if he attempts or conspires to do so.

Defendant Robert Cardena is not charged in Count One of the indictment which alleges a racketeering conspiracy.  Evidence regarding kidnappings that did not involve the possession of drugs and murders may not be considered as evidence against him.

If you find that the conspiracy alleged in Count One existed, defendant Manuel Uriarte cannot be found guilty of Count One if he withdrew from the conspiracy more than five years before the indictment was returned. The indictment in this case was returned on November 18, 2010. Thus, the government must prove beyond a reasonable doubt that Manuel Uriarte did not withdraw from the conspiracy prior to November 18, 2005.

In order to withdraw, defendant Manuel Uriarte must have taken some affirmative act in an attempt to defeat or disavow the goals of the conspiracy, such as, by performing an affirmative act that is inconsistent with the goals of the conspiracy in such a way that the co-conspirators are reasonably likely to know about it before they carry through with additional acts of the conspiracy.

Merely ceasing active participation in the conspiracy is not sufficient to evidence withdrawal.

Counts 2, 3

# INSTRUCTIONS FOR
# COUNTS TWO AND THREE

## Murder in Aid of
## Racketeering Conspiracy

Counts Two and Three charge that defendant Manuel Uriarte knowingly and intentionally committed the murder of an individual in aid of the racketeering conspiracy; specifically, that he knowingly and intentionally murdered Juan Luevano (as charged in Count Two), and Michael Garcia (as charged in Count Three), for the purpose of gaining entrance to, or for maintaining or increasing his position in the Rodriguez Enterprise, or for the purpose of obtaining pecuniary gain from the enterprise.

To sustain the charges in Counts Two and Three, the government must prove the following propositions beyond a reasonable doubt:

First, that the Rodriguez Enterprise was an enterprise;

Second, that the Rodriguez Enterprise was engaged in racketeering activity;

Third, that the activities of the Rodriguez Enterprise affected interstate or foreign commerce;

Fourth, that the defendant knowingly and intentionally committed the murder charged in the particular count you are considering; and

Fifth, that defendant's purpose in committing the murder was to gain entrance to, or to maintain, or to increase his position in the Rodriguez Enterprise, or to receive anything of pecuniary value from the Rodriguez Enterprise.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular count you are considering, then you should find the defendant guilty of that count.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to the particular count you are considering, then you should find the defendant not guilty of that count.

For purposes of Counts Two and Three, the government does not have to prove that defendant Manuel Uriarte's sole or primary motive in committing the murder was to receive something of pecuniary value from the enterprise, or to gain entrance to, or to maintain or increase his position in, the enterprise. However, defendant Manuel Uriarte's desire to receive anything of pecuniary value from the enterprise, or to gain entrance to, or to maintain, or increase his position in the enterprise, must have been a substantial motive in committing the murder.

For the purposes of Counts Two and Three, under Illinois law, a person commits the offense of murder when he, or one for whose conduct he is legally responsible, kills an individual and, in performing the acts which cause the death,

(1)     intends to kill or do great bodily harm to that individual; or

(2)     knows that such acts will cause death to that individual; or

(3)     knows that such acts create a strong probability of death or great bodily harm to that individual.

Counts 4,
12, 13

# INSTRUCTIONS FOR COUNTS
# FOUR, TWELVE, AND THIRTEEN

## Drug Offenses

Count Four charges defendants Hector Uriarte, Jorge Uriarte, Tony Sparkman, and Robert Cardena with possession of cocaine with intent to distribute. To sustain the charge of possession of cocaine with intent to distribute against the defendants as charged in Count Four, the government must prove the following propositions beyond a reasonable doubt:

First, the defendant you are considering knowingly and intentionally possessed cocaine; and

Second, the defendant possessed the cocaine with the intent to distribute it to another person.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Four.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Four.

Possession of an object is the ability to control it.  Possession may exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction and control over it, either directly or through others.

Distribution is the transfer of possession from one person to another.

You are instructed that cocaine is a controlled substance.

It is sufficient that the defendant knew that the substance was some kind of prohibited drug. It does not matter whether the defendant knew that the substance was cocaine.

Intent to distribute can be inferred from the possession of a quantity of drugs larger than needed for personal use.

Count Twelve charges defendants Hector Uriarte, Jorge Uriarte, and Tony Sparkman with knowingly and intentionally attempting to possess cocaine.  To sustain the charge in Count Twelve, the government must prove the following propositions beyond a reasonable doubt:

First, that the particular defendant you are considering knowingly and intentionally attempted to possess cocaine;

Second, that the particular defendant you are considering attempted to possess cocaine with the intent to distribute it to another person.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Twelve.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Twelve.

For purposes of Count Twelve, to "attempt" means that the defendant knowingly took a substantial step toward the commission of the offense with the intent to commit that offense.

72

Count Thirteen charges defendants Glenn Lewellen, Hector Uriarte, Jorge Uriarte, Tony Sparkman, and Robert Cardena with engaging in a conspiracy to distribute and to possess with the intent to distribute cocaine.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.  To sustain the charge of conspiracy as charged in Count Thirteen, the government must prove beyond a reasonable doubt:

First, that the conspiracy as charged in Count Thirteen existed, and

Second, that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Thirteen.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Thirteen.

To establish the existence of the drug conspiracy charged in Count Thirteen and its common purposes, the government need not establish that there existed a formal agreement. The agreement may be informal, and may consist of an implicit understanding among the participants. In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

A conspiracy may be established even if its purposes were not accomplished.

To be a member of the conspiracy, a defendant need not join at the beginning or know all the other members or all the means by which the conspiracy's purposes were to be accomplished, and need not participate in all of the events of the conspiracy. The government must prove beyond a reasonable doubt that the defendant was aware of the common purposes of the conspiracy, and that he knowingly joined the agreement.

In deciding whether a defendant joined the drug conspiracy charged in Count Thirteen, you must base your decision only on what that particular defendant did or said. In determining what a particular defendant did or said, you may consider the defendant's own words and acts. You may also consider the words or acts of other persons to decide what the defendant did or said, and you may use them to help you understand what the defendant did or said.

For purposes of Counts Four, Twelve and Thirteen, the government is not required to prove that the offense involved the specific type or quantity of controlled substances charged in the particular count you are considering. However, the government must prove that the offense involved a measurable quantity of some type of controlled substance.

If, however, you find any defendant guilty of Count Four, Twelve or Thirteen, you will be required to determine separately the type and quantity of controlled substances that the government has proven. I will address this further when I discuss the verdict forms with you.

Counts 5,7
10

# INSTRUCTIONS FOR COUNTS
# FIVE, SEVEN, AND TEN

## Kidnapping in Aid of
## Racketeering Conspiracy

Count Five charges defendants Hector Uriarte and Jorge Uriarte with kidnapping for the purpose of gaining entrance to, or for maintaining or increasing their position in, the Rodriguez Enterprise, or for the purpose of obtaining anything of pecuniary value from the Rodriguez Enterprise.

Counts Seven and Ten charge defendants Hector Uriarte, Jorge Uriarte, and Tony Sparkman with kidnapping for the purpose of gaining entrance to, or for maintaining or increasing their position in, the Rodriguez Enterprise, or for the purpose of obtaining anything of pecuniary value from the Rodriguez Enterprise.

To sustain the charges in Counts Five, Seven, and Ten, the government must prove the following propositions beyond a reasonable doubt with respect to the particular defendant you are considering:

First, that the Rodriguez Enterprise was an enterprise;

Second, that the Rodriguez Enterprise was engaged in racketeering activity;

Third, that the activities of the Rodriguez Enterprise affected interstate or foreign commerce;

Fourth, that the defendant knowingly and intentionally committed the kidnapping charged in the particular count you are considering; and

Fifth, that the defendant's purpose in committing the kidnapping was to

gain entrance to, or maintain or increase his position in, the Rodriguez Enterprise, or for the purpose of obtaining anything of pecuniary value from the Rodriguez Enterprise.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to a particular count, you should find the defendant guilty of that count.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt as to a particular count, then you must find the defendant not guilty of that count.

For purposes of Counts Five, Seven and Ten, under Illinois law, a person commits the offense of kidnapping when he, or one for whose conduct he is legally responsible:

(1)   knowingly and secretly confines the individual against his will; or

(2)   knowingly and by force, or threat of imminent force, carries the individual from one place to another with intent secretly to confine that person against his will; or

(3)   knowingly and by deceit or enticement, induces another person to go from one place to another place with intent secretly to confine that person against his will.

For purposes of Counts Five, Seven and Ten, the government does not have to prove that a defendant's sole or primary motive in committing the kidnapping was to receive something of pecuniary value from the enterprise, or to gain entrance to, or to maintain or increase his position in, the enterprise. However, the defendant's desire to receive anything of pecuniary value from the enterprise, or to gain entrance to, or to maintain or increase his position in, the enterprise, must have been a substantial motive in committing the kidnapping.

Counts 8,11

# INSTRUCTIONS FOR
# COUNTS EIGHT AND ELEVEN

## Use of a Firearm During and
## In Relation to a Crime of Violence

Count Eight charges Hector Uriarte, Jorge Uriarte, and Tony Sparkman with using and carrying a firearm during or in relation to a crime of violence, namely, the kidnapping charged in Count Seven.

To sustain the charge in Count Eight, the government must prove the following propositions beyond a reasonable doubt:

First, that the defendant committed the crime of kidnapping as charged in Count Seven; and

Second, that the defendant knowingly used or carried a firearm during and in relation to that crime.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Eight.

If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Eight.

Count Eleven charges Hector Uriarte, Jorge Uriarte, and Tony Sparkman with using and carrying a firearm during or in relation to a crime of violence, namely, the kidnapping charged in Count Ten.

To sustain the charge in Count Eleven, the government must prove the following propositions beyond a reasonable doubt:

First, that the defendant committed the crime of kidnapping as charged in Count Ten; and

Second, that the defendant knowingly used or carried a firearm during and in relation to that crime.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant guilty of Count Eleven.

If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt as to the particular defendant you are considering, then you should find that defendant not guilty of Count Eleven.

A defendant uses a firearm when he actively employs it in some way that is related to the violent crime that he is committing.

A defendant carries a firearm when he transports the firearm on his person and does so during, and in relation to, the violent crime that he is committing.

A conspirator is a person who knowingly and intentionally agrees with one or more persons to accomplish an unlawful purpose. A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a foreseeable consequence of the conspiracy. Therefore:

With respect to Count Eight, if you find beyond a reasonable that a particular defendant charged in Count Eight was a member of a conspiracy to commit the kidnapping charged in Count Seven (Pedro Avila and Family) at the time the kidnapping was committed; and that, in furtherance of and as a foreseeable consequence of that conspiracy, one of the conspirators knowingly used or carried a firearm during and in relation to the kidnapping, then you should find that defendant guilty of Count Eight.

With respect to Count Eleven, if you find beyond a reasonable that a particular defendant charged in Count Eleven was a member of a conspiracy to commit the kidnapping charged in Count Ten (Jose Carranza and Friend) at the time the kidnapping was committed; and that, in furtherance of and as a foreseeable consequence of that conspiracy, one of the conspirators knowingly used or carried a firearm during and in relation to the kidnapping, then you should find that defendant guilty of Count Eleven.

87

Final
Instructions

# FINAL INSTRUCTIONS

If you find a defendant guilty, it will then be my job to decide what punishment should be imposed.  In considering the evidence and arguments presented during the trial, the potential punishment faced by any defendant should not enter into your considerations or discussions at any time. None of the defendants on trial are facing the death penalty.

Upon retiring to the jury room, select one of your number as your foreperson.  The foreperson will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your foreperson will fill in and date the appropriate form, and each of you will sign it.

Each count of the indictment charges each defendant named in that count with having committed a separate offense.

You must give separate consideration both to each count and to each defendant. You must consider each count and the evidence relating to it separate and apart from every other count.

You should return a separate verdict as to each defendant and as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to that defendant under any other count.

I do not anticipate that you will need to communicate with me.  If you do, however, the only proper way is in writing, signed by the foreperson, or if he or she is unwilling to do so, by some other juror, and given to the Marshal.  I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division, if any, regarding your verdict.

The verdict must represent the considered judgment of each juror. Your verdict, whether it be guilty or not guilty, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to re-examine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of your fellow jurors or for the purpose of returning a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement which is consistent with the individual judgment of each juror.

You are impartial judges of the facts. Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt.

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2 | **DATE** | 1/31/2012 |
| **CASE TITLE** | USA vs. Glenn Lewellen | | |

**DOCKET ENTRY TEXT**

Jury Trial Ends. Verdict Reached. Jury finds Defendant, Glenn Lewellen guilty as to Count Thirteen of Third Superseding Indictment. Jury also finds that the offense involved 5 kilograms or more of mixtures containing cocaine.  Oral motion by USA to detain defendant is granted. Defendant ordered detained. Status hearing set for 2/15/2012 at 10:00AM.  Post-trial motions due by 4/2/2012.  Responses by 5/2/2012. Replies by 5/17/2012.  Ruling by mail.   Time is excluded through 2/15/2012 for complexity of case pursuant to 18:3161(h)(7)(B)(ii). (T).

Docketing to mail notices.

00:05

FILED
2012 JAN 32   AM 8: 42
CLERK
U.S. DISTRICT COURT

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2 | **DATE** | 2/15/2012 |
| **CASE TITLE** | USA vs. Glenn Lewellen | | |

**DOCKET ENTRY TEXT**

Status hearing held. Cause referred to Probation Department for preparation of presentence investigation report. Sentencing memoranda and/or objections to psr due by 6/8/12. Responses by 6/15/12. Sentencing set for 6/27/12 at 10:15AM. It is hereby ordered that Manuel Uriarte, Hector Uriarte, Jorge Uriarte, Tony Sparkman, Glenn Lewellen and Robert Cardena not be separated from each other but separated from Saul Rodriguez, Pedro Victoria and Andres Flores.

Docketing to mail notices.

00:05

| | | Courtroom Deputy Initials: | RJ |
|---|---|---|---|

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| GLENN LEWELLEN, | ) | |
| Defendant. | ) | |

*DEFENDANT GLEN LEWELLEN'S MOTION TO RECONSIDER
DETENTION ORDER*

Defendant GLENN LEWELLEN, by his attorneys, Andréa E. Gambino and

Matthew J. Madden, respectfully requests that this Honorable Court enter an Order

permitting him to be released to the supervision of Pre-trial Services pending his

sentencing hearing, currently scheduled for June 29, 2012.

Glenn Lewellen is neither a flight risk, nor a danger to the community, as he

amply demonstrated during the period of his pre-trial release.  This Court does have

the authority to continue Mr. Lewellen's bond, and has done so for at least one other

person who pled guilty to multiple crimes of violence.

Previously set conditions of release will continue to reasonably assure both

his appearance in court and the safety of the community.  In support of this Motion,

counsel for Mr. Lewellen state the following:

I.   The Court has the authority to permit Mr. Lewellen to continue his pre-trial
     release, pursuant to Title 18, United States Code, Section 3145(c).

     The statutory provision that allows the Court to permit Mr. Lewellen to

remain on release and self-surrender to the institution designated by the Federal Bureau of Prisons is Title 18, United States Code, Section 3145(c). The Fifth Circuit has found that, "The district court denied release pending sentencing . . .Defendants  . . . contend that the district court erred by refusing to consider granting relief under the "exceptional reasons" clause of 18 U.S.C. §3145(c)." The Fifth Circuit concluded that §3145(c) was "designed to provide an avenue of relief from those provisions," referring to §§3143(a)(2) and (b)(2), the sections under which the government sought Mr. Lewellen's detention.  The Court of Appeals remanded for the district court "to consider whether the defendants meet the conditions for release set forth in §3143(a)(1) or (b)(1) and whether there are "exceptional reasons" why their detention would be inappropriate under §3145(c)." *United States v. Carr,* 947 F.2d 1239, 1240 (5th Cir. 1991). *See also, United States v. Herrera-Soto,* 961 F.2d 645, 647 (7th Cir. 1992)[The "exceptional reasons" provision of §3145(c) was added to the Bail Reform Act along with the amendment providing for mandatory detention in certain circumstances (citations omitted). It was therefore included as an avenue of relief from the mandatory detention provisions…"].

The Tenth Circuit has concluded that even though the section 3145(c) is headed "Appeal form a release or detention order", the district court may never less apply it.  The court stated, "We . . .are asked to decide only whether the district court had the authority to apply the "exceptional reasons" provision of §3145(c) . . ." The court concluded that "[a]ll the other circuits that have addressed the issue have

2

ruled that the "exceptional reasons" provision does apply to district courts . . . We now join those circuits and hold that a district court may consider whether exceptional reasons exist to release a defendant under § 3145(c)." *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992).

A number of cases have addressed the question of what constitutes exceptional circumstances. They have generally concluded that this is a question which a district court is best situated to determine and that unique combinations of circumstances can satisfy the statutory requirement. *United States v. Mitchell,* 358 F.Supp.2d 707 (E.D. Wisc. 2005); *United States v. Kaquatosh,* 252 F.Supp.2d 775, 778 (E.D. Wisc. 2003); *United States v. Reboux,* 2007 WL 4009801 (docket #5:06-CR-451, N.D.N.Y., Dec. 14, 2007).

This Court was persuaded by the above argument to allow a defendant who was charged with five bank robberies which occurred in the month of December 2008 to remain on bond, with the same security posted, through his plea agreement, sentencing, and until the date set for his self-surrender – nearly 6 months after he entered his guilty plea. In *United States v. James Howze,* 08-CR-1078-1 (Gottschall, J.), defendant Howze was charged with having committed five bank robberies, each of which involved a threat of death. R. 9. Over the government's objection and after the Magistrate had denied bail twice, this Court set a bond and conditions of release for Mr. Howze. He entered a plea to three of the five bank robberies, acknowledging the other two as relevant conduct, on July 23, 2009. R. 45. Again, over the

government's objection, this Court permitted Mr. Howze to continue under the conditions of pre-trial release.  Mr. Howze was sentenced to a below-guideline range sentence of 70 months and permitted to self-surrender on January 4, 2010.  R. 67.

Mr. Howze, unlike Mr. Lewellen, had a criminal history that included a bank fraud conviction, forgery conviction, and others which put him in a criminal history category IV.  Mr. Howze had also committed the bank robberies within two years of having completed his supervised release for his bank fraud case.

II.     Exceptional circumstances are present in this case.

Glenn Lewellen has no criminal background.  He is 55 years old.  He is a former police officer, whose time in prison is going to be made more difficult as a result of that fact.  It is undisputed that Mr. Lewellen did not participate in any criminal conduct with any co-defendant after 2006, now nearly 6 years ago.  Being able to remain on release and to self-surrender to serve his term of imprisonment will have a positive effect on the security score calculation done by the Bureau of Prisons in determining the appropriate designation for him.  He is more likely to be able to serve his time in a camp or low-security facility if he is permitted to self-surrender.

Mr. Lewellen ceased communication with his co-defendant Rodriguez and moved out of the Chicago area well before he was indicted.  While he was in Las Vegas, he assisted his daughters and his daughter Sandy's children, joined a church, and participated in volunteer activities in the church community, including

helping at the women's shelter and other activities of a similar nature.  At the time of his arrest, in November 2010, he was heading back to Illinois to reconcile with his wife from whom he had been estranged.  He was not then engaged in any criminal conduct, and according to the government's evidence, had not been for at least 4 years.

Prior to his arrest and during the time of his release from custody, Mr. Lewellen was the primary person responsible for financially supporting his aunt Diane Coday, through the maintenance and upkeep of her home, among other things.  She must now prepare to move from her family home of 50 years, and needs Glenn's assistance to sell her home, find a new home, and move a lifetime's worth of belongings from one place to the next.

While on pre-trial release, Mr. Lewellen was able to reconcile with his own mother, from whom he had been estranged for many years, because of her alcoholism, and because his mother had not intervened to stop the abuse that Mr. Lewellen had suffered at the hands of his father.  Mr. Lewellen and his mother would both benefit from the additional time preceding his surrender to establish this renewed relationship and part well.  Both Diane Coday and Mr. Lewellen's mother may not survive the lengthy term of imprisonment that will be imposed in this case, even if the Court imposes the statutory mandatory minimum of ten years.

Mr. Lewellen had no difficulties and presented no problems while on pre-trial release.  He was, if anything, over-cooperative with his pre-trial services officer.  He

appeared on time – usually early – for every appearance prior to trial and for every

day of the two and one-half month trial.  Mr. Lewellen is in a better position than

he had anticipated – having prepared himself for the possibility of losing both the

RICO count and the conspiracy count.  Now he faces sentencing for only one count

of conviction.  He has no additional incentive to flee, as he continues to fight to

reverse his conviction.  No one believes that Mr. Lewellen is either a flight risk or a

current danger to the community.

III.    Glenn Lewellen does not present a flight risk.

Glenn Lewellen was born in Chicago, on April 2, 1956.  He has lived in the

Chicago area all his life, with the exception of a brief period of time when he lived in

Las Vegas, Nevada, where he was at the time of his arrest.  Mr. Lewellen has a long

and stable history of employment, which includes his 16 years as a Chicago Police

Officer.  While he was a police officer, Mr. Lewellen developed his own business in

home construction and property development – also in the Northern District of

Illinois.  He left the police department when his own business became successful

enough to support him and his family.  He and his wife Debra owned their home –

which Debra designed and Glenn built.[1]  Although Glenn was not living with his

wife at the time of his arrest, he and his wife now are in regular communication

with each other.

Glenn and Debra married on March 2, 1985.  They have an adult daughter,

---

[1] They sold their home in 2010 and split the proceeds from the sale after the mortgage and a
secondary loan were paid.

Ashley, who recently graduated from college with a degree in Criminal Justice studies.  Ashley went to school in Ohio, but now lives in Illinois and visits her father regularly.  She is actively involved in supporting her father and assisting him in any way she can.  Glenn also has another adult daughter, Sandra, from his first marriage.  This daughter lives in Bourbonnais, Illinois, with her three children.  Glenn maintains ties with this daughter and his grandchildren, as well.

In the Spring of 2009, Glenn embraced his faith and became involved in religion.  He attends the Victory Baptist Church in New Lenox and the Independent Baptist Church in Bolingbrook.  Through his practice he also has a number of friends and supporters.  While he was in Las Vegas, he became involved with the Oasis Baptist Church.  According to the Pre-trial Services Report from Las Vegas, "Glenn is a fine worker, he volunteers at the church, and he is active in bible study.  Pastor Neil stated that while he has not known Mr. Lewellen for a significant amount of time, he does not believe he is a danger to the community, nor does he feel he is a risk of nonappearance."

In addition to his own family, Glenn has a network of friends and business partners in the greater Chicago area who also are supportive of him.  Among his business partners are Kris Cozzo, of MC Builders, in Lockport, and Brian Wille, of Brian Wille Construction, also in Lockport.  All of his close friends, family, and business associates live and work in Illinois.  He does not have strong ties to any other place.

In fact, Mr. Lewellen's ties to this community are strong and life-long.  Glenn Lewellen has lived and worked in the Chicago area all of his adult life.  He has raised two daughters here and he now also has three grandchildren who are very important to him.  He has been a property owner and a business owner whose assets are here and whose connections are in this community.

While Mr. Lewellen may have had sufficient assets to relocate or flee before this case began, his assets are now exhausted.  It is also worth remembering that Mr. Lewellen was aware that he was the target of an investigation before his arrest and took no steps to leave the United States or evade apprehension.  He did not move assets abroad, find a new home or source of employment outside the United States, change his identity, attempt to live in another jurisdiction under any name but his own, or otherwise make any preparation to flee.

Mr. Lewellen surrendered his passport as a condition of his pre-trial release and that passport remains in the custody of Pre-trial Services.

There is no basis, apart from pure speculation, to support a finding that Glenn Lewellen is risk of flight.

IV.    Glenn Lewellen is not a danger to the community.

This Court has acknowledged that Mr. Lewellen is not a danger to the community by permitting his pre-trial release.  He has no prior criminal record, no history of substance abuse, mental health problems, or other evidence that he would be a danger to the community if released under the supervision of the Court.

Mr. Lewellen is strongly rooted to this community.  He has family, friends, and business associates who support him.  Thomas Dukes, one of Mr. Lewellen's uncles, is willing to risk his homes to secure Glenn's release, evincing a faith in him and his willingness to comply with any conditions of supervision set by this Court.

No prior criminal history or other evidence of dangerous behavior has been offered in support of a finding that Mr. Lewellen is a danger to any particular individual or the community at large.

WHEREFORE, GLENN LEWELLEN, through his attorneys, respectfully requests that this Court reconsider the detention order and permit Mr. Lewellen to remain under the previous conditions of release until final judgment is entered and a date is set by which he must surrender to begin serving his sentence.

DATE:        March 2, 2012                    Respectfully submitted,

                                              By:    s/Andréa E. Gambino
                                                     s/Matthew J. Madden

                                                     Attorneys for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014
agambinolaw@gmail.com

9

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on March 2, 2012, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which sent notification of

such filing to the following:

Steven Block, Esq.
Terra Reynolds, Esq.
Tiffany Tracy, Esq.
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604


and I hereby certify that I have mailed by United State Postal Service or hand

delivered the document to the following non-CM/ECF participants: N/A.


DATE:  March 2, 2012   Respectfully submitted,

          By:  s/Andréa E. Gambino
             An Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

## UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3
### Eastern Division

UNITED STATES OF AMERICA

                    Plaintiff,

v.                             Case No.: 1:09–cr–00332
                             Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, March 7, 2012:

      MINUTE entry before the Honorable Joan B. Gottschall: Motion for reconsideration of detention order [836] is denied for the reasons stated in open court as to Glenn Lewellen (2). Motion hearing held on 3/7/2012. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| GLENN LEWELLEN, | ) | |
| Defendant. | ) | |

*DEFENDANT GLENN LEWELLEN'S MOTION TO FOR TEMPORARY RELEASE*
*TO OBTAIN MEDICAL TREATMENT*

Defendant GLENN LEWELLEN, through his attorneys, Andréa E. Gambino and Matthew J. Madden, respectfully requests that this Court order his temporary release for the purpose of obtaining medical treatment. In support of this motion, defendant GLENN LEWELLEN, through his attorneys, states the following:

(1)     In February of this year, shortly after being taken into custody, Mr. Lewellen sought medical attention because he was having dizzy spells more than once a day and because he was suffering from a persistent headache. An EKG and blood work were ordered to be done. To date the EKG has not been done.

(2)     Mr. Lewellen was told that he is suffering from high blood pressure.

(3)     Mr. Lewellen has had his blood pressure taken in each of his arms with differing results. He has been told that this presents a concern about blod clots and the possibility of stroke.

(4)     On March 15, Mr. Lewellen saw an individual he believes is a physician's assistant who ordered that his blood pressure be taken every 3 days, on both arms,

but this has not been done.  Mr. Lewellen has had is pressure taken only once since the PA's order.

(5)     Mr. Lewellen has been given and is taking a 25 milligram water pill and baby aspirin.  This has reduced the frequency of his dizzy spells, but has not eliminated them.  His headaches persist unabated.  Mr. Lewellen has also informed the physician's assistant/nurses who have seen him that he has a shooting pain that originates behind his left ear and runs down his neck into his shoulder.  This, too, was worrying to the caregivers.

(6)     Mr. Lewellen has yet to be seen by a medical doctor.

(7)     When counsel saw Mr. Lewellen this afternoon, he was visibly suffering from a serious headache.

(8)     Mr. Lewellen and his family are concerned about the possibility of Mr. Lewellen suffering from a heart attack or a stroke if he does not receive appropriate care.  His concerns are not insignificant given the fact that his complaints are serious and legitimate, and that he has yet to see a medical doctor about his condition.

        WHEREFORE, Mr. Lewellen seeks a temporary reinstatement of his bond, so that he can see his own physician and obtain a proper diagnosis and course of treatment to address his high blood pressure, dizzy spells, persistent headache, and other pains.

DATE:        March 23, 2012                    Respectfully submitted,

By: s/Andréa E. Gambino
   Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014
agambinolaw@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2012, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which sent notification of

such filing to the following:

Steven Block, Esq.
Terra Reynolds, Esq.
Tiffany Tracey, Esq.
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604


and I hereby certify that I have mailed by United State Postal Service or hand

delivered the document to the following non-CM/ECF participants: N/A.


DATE:        March 23, 2012          Respectfully submitted,

                                     By:    s/Andréa E. Gambino
                                            Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

4

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3
### Eastern Division

UNITED STATES OF AMERICA

                              Plaintiff,

v.                                         Case No.: 1:09–cr–00332

                                         Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                              Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, March 28, 2012:

      MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen, Motion hearing held on 3/28/2012 regarding motion for release from custody[847], ( Motion Hearing set for 4/3/2012 at 09:30 AM.) Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

## UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3
## Eastern Division

UNITED STATES OF AMERICA

                    Plaintiff,

v.                                Case No.: 1:09–cr–00332
                                Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, April 2, 2012:

      MINUTE entry before the Honorable Joan B. Gottschall:Motion for release from custody [847] is withdrawn without prejudice as to Glenn Lewellen (2) via electronic request by his counsel. No appearance required 4/3/12. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| | ) | |
| GLENN LEWELLEN, | ) | |
| Defendant. | ) | |

*GLENN LEWELLEN'S MOTION FOR A JUDGMENT OF ACQUITTAL OR A*
*NEW TRIAL*

Defendant GLENN LEWELLEN, through counsel, respectfully moves this

Court, pursuant to Rules 29(a) and (c) and 33 of the Federal Rules of Criminal

Procedure, for a judgment of acquittal as to Count 13 of the third superseding

indictment, or, in the alternative, for a new trial.

I.    The Government did not produce sufficient evidence to support a conviction
      on the charge of drug conspiracy contained in Count 13.

Federal Rule of Criminal Procedure 29, section (a), provides that the court,

"on the defendant's motion must enter a judgment of acquittal of any offense for

which the evidence is insufficient to sustain a conviction."  Count 13 alleges that

Glenn Lewellen conspired with others to possess with the intent to distribute and to

distribute cocaine and heroin.  Count 13 also contains allegations as to the manner

in which the conspiracy was alleged to have been conducted, including the role of

each defendant.  These allegations are similar to, but broader than, the specific

allegations contained in Count 1, upon which the jury could not agree, as

1

demonstrated by their failure to reach a verdict on Count 1, with respect to Mr.

Lewellen.[1]

> A.    The evidence at trial did not establish the existence of a single
>         conspiracy.

The evidence at trial did not establish the existence of a single conspiracy,

beginning in 1996 and continuing until April 9, 2009, as alleged in the indictment.

A single conspiracy exists if "the co-conspirators joined to effectuate a common

design or purpose… The government must demonstrate the the the defendant joined

the agreement alleged, not just the group." *United States v. Green,* 648 F.3d 569

(7th Cir. 2011).

No common design or purpose was identified with respect to the individuals

charged in Count 13.   With respect to Mr. Lewellen, the evidence was undisputed

that his relationship with Saul Rodriguez ended in 2006 or 2007.  By 2008, Mr.

Lewellen had left the state altogether and had no further contact with Saul

Rodriguez.  No evidence was introduced at trial that supported the existence of any

relationship – let alone a agreement -- among Lewellen, Hector Uriarte, Jorge

Uriarte, Andres Flores, Tony Sparkman, Walter Johnson, Jorge Lopez, or Robert

Cardena. The evidence at trial was insufficient to establish that Glenn Lewellen

agreed with any other person to become a member of the conspiracy alleged, or that

he took any step in furtherance of the conspiracy.

---

[1] Manuel Uriarte also was not convicted of Count 1 – the Racketeering conspiracy.
Robert Cardena was not included in Count 1.  Jorge Uriarte, Hector Uriarte, and
Tony Sparkman were found guilty of Count 1.

Insufficient evidence established that Glenn Lewellen ever knowingly possessed or attempted to possess five kilograms of cocaine or one kilogram of heroin with the intent to distribute it, nor did the evidence show that he ever did, in fact, distribute any amount of cocaine or heroin, or agree that such distribution take place.  In fact, Saul Rodriguez claimed to have used his warehouse without his knowledge and to have hidden the extent of his conduct from Glenn and others to benefit himself.

The jury was unable to agree that any specific act of violence was attributable to Glenn Lewellen, as evidenced by its failure to reach a verdict as to Mr. Lewellen on Count I, wherein specific acts of violence were enumerated and alleged to have been committed by Mr. Lewellen.  Paragraph 5 of Count 13 alleges that Glenn Lewellen and others obtained wholesale quantities of cocaine in the Chicago area through threats of violence, violence, and intimidation.  Insufficient evidence of this allegation was presented at trial to sustain a verdict of guilty as to Count 13.

Insufficient evidence was presented at trial to support the allegation, contained in paragraph 6, Count 13, that Glenn Lewellen held himself out as a police officer when obtaining wholesale quantities of cocaine in the Chicago area. Evidence at trial showed that from 1996 until 2002, Glenn Lewellen was a police officer.  No evidence that he obtained wholesale quantities of cocaine illegally was presented to the jury.  During this period of time, Glenn Lewellen had a

3

relationship with Saul Rodriguez, who was acting as an informant for the Chicago Police Department, but no evidence was presented to support a finding beyond a reasonable doubt that Glenn Lewellen illegally obtained wholesale quantities of cocaine during this period of time.

Insufficient evidence was adduced at trial to support a finding that Glenn Lewellen obtained, used, carried, possessed, brandished, and discharged firearms in connection with kidnapping, robbery, and illegal trafficking of controlled substances, as alleged in paragraph 11, Count 13.

The allegation contained in paragraph 13, Count 13, that Glenn Lewellen provided Saul Rodriguez and Andres Torres with information about federal investigations into Rodriguez' activities was not supported by evidence at trial.  Nor was credible evidence presented to support a finding that Glenn Lewellen obstructed justice to protect and conceal Saul Rodriguez' activities, as alleged in paragraph 14, Count 13.

II.   The government violated Mr. Lewellen's right to Due Process, Fourth Amendment right to be free from unreasonable search and seizure, Fifth Amendment Privilege against self-incrimination, and Sixth Amendment right to confront the witnesses against him through its abuse of process before and during trial.

    A.   The government abused the Court process prior to trial.

        1.   The government obtained a search warrant to circumvent litigation about the validity of its trial subpoena for documents in Mr. Lewellen's possession.

Prior to trial, the government issued a trial subpoena to Thomas Dukes,

4

requiring the production of business records the government had already obtained

through its Grand Jury subpoena in 2009.  Mr. Dukes was not the appropriate

subject of the subpoena and this matter was being litigated when the government

circumvented the process by obtaining a search warrant for which it lacked

probable cause.

> 2.   The government collected hair samples from Mr. Lewellen
>       without a finding of probable cause.

The government subpoenaed hair samples from Mr. Lewellen without

probable cause to do so.  Based on the FBI's findings of residue, hairs, and other

artifacts from a car alleged to have been used by Mr. Lewellen over a decade ago,

the government sought to collect hair samples, an invasive procedure from which

it had no reasonable expectation of finding any relevant evidence.  The

government then presented the findings cloaked in the mantle of "it doesn't

mean he wasn't in the car, just because we didn't find any evidence that he was."

This introduced prejudice into the trial without any proper basis for it.

> B.   The government abused the Court process during trial.

> 1.   Agent Reynolds brought several witnesses to the back door of
>      the courtroom to identify defendants before testifying.

Agent Reynolds brought several of the government's witnesses to the back

doors of the courtroom to look into the courtroom at the defendants prior to the

witnesses' testimony.  This was an unfair and prejudicial "show up" that calls

into question the reliability and integrity of the in-court identifications made by these witnesses. *Neil v. Biggers,* 409 U.S. 188 (1972).

      2.     The government introduced the photograph of Mr. Lewellen's deceased partner and information about him at the trial, in violation of Mr. Lewellen's Sixth Amendment confrontation rights.

Over the defendant's objection, the government was permitted to introduce a photograph of James Entress into evidence, along with the false assertion that he engaged in criminal conduct with Glenn Lewellen and Saul Rodriguez – based solely on the word of Saul Rodriguez, an admitted liar. James Entress is dead. Glenn did not have the opportunity to bring him into the courtroom to refute the claims made by Rodriguez. This evidence was admitted in violation of Mr. Lewellen's Sixth Amendment right to confront the witnesses against him. *Crawford v. Washington*, 541 U.S. 36 (2004).

      3.     The government misrepresented the evidence it presented during closing argument.

In its closing argument that government made claims that were not based on the evidence and misrepresented what the evidence was. In discussing the "unexplained wealth" contention, the government stated, "It is not a common happening in life to pay for a luxury car with a bag filled with $80,000 in cash." Vol. 30: 5373:14. The witness who testified about Mr. Lewellen's purchase of an antique car, testified that the price was $80,000 and that Mr. Lewellen used some cash to purchase the car, but he did not see how much cash he used. This same

witness indicated that the seller had asked to be paid in cash.

The government also misstated the evidence by saying that "It is not a common happening in life for a police officer to fund his new construction business by giving $140,000 to someone he just met." Vol. 30: 5374. There was no testimony that supported this statement.

The government also misrepresented the evidence about James Entress, asking the jury, "So why did Glenn Lewellen send James Entress to the 9th District on the date of Rodriguez' arrest?" There was no evidence that Glenn Lewellen had anything at all to do with Rodriguez' arrest or his release from jail. The officers who were involved and the records belied this claim, made solely by Rodriguez himself. Rodriguez falsely testified that he had called Glenn. The arrest report indicated that Rodriguez refused to make a phone call at the station and the arresting officer testified that Rodriguez made no calls while he was in the officer's custody.

In discussing the evidence that Mr. Lewellen had taken two weeks' vacation around the time of September 11, 2001, the government again misstated the evidence, claiming that "Now the argument is that Lewellen was on vacation that day. He was out of town on vacation." Vol. 30: 5382. That was not the argument, but another misrepresentation of what the evidence and the argument based on that evidence were.

7

4.  The government's reference to Mr. Lewellen's unexplained wealth was false and commented on his right to remain silent.

During closing argument the government referred to Mr. Lewellen's "unexplained wealth", calling into question the burden of proof and Mr. Lewellen's right to remain silent:

> The other things that corroborate the testimony that you heard from the insiders is the evidence that you've seen and heard about the money, basically the unexplained wealth, the unexplained wealth of Hector Uriarte, the unexplained wealth of Glenn Lewellen, the hundreds of thousands of dollars that these men were spending that ther just is no other explanation for, no other explanation for the cash coming anywhere except from the crew's activities and their participation in it.

Vol. 30: 5014. This statement is simply false.

As the government well knew, Mr. Lewellen's wealth was a product of his housing business. His was not the legally recognized situation in which a defendant has no legal source of income, yet maintains a lifestyle or engages in activities that require significant amounts of money. The government did a financial analysis of Mr. Lewellen's businesses and chose not to introduce its results into evidence, knowing that the analysis did not show "unexplained" wealth, but significant sources of legal funds.

Evidence of unexplained wealth is admissible in drug cases only when (1) evidence presented creates an inference that defendant was involved in drug trafficking; (2) unexplained wealth was acquired during the period in which the drug crime allegedly occurred; and (3) other evidence is presented to support the

8

charge. *United States v. Carrera*, 259 F.3d 818 (7th Cir. 2001). In Mr. Lewellen's case the wealth presented was not unexplained, and was *explainable* by evidence in the government's possession of Mr. Lewellen's legitimate business.

This characterization also misrepresented the testimony of the witnesses who were called to testify about Mr. Lewellen's building and development business, his gambling, and the fact that Mr. Lewellen and his wife had both received financial benefits from lawsuits that they had won. Mr. Lewellen had a history of obtaining significant loans and reaping substantial profits from his home building and lot sales. It was untrue to claim that there was no legitimate source for the money that Mr. Lewellen had and spent.

The statement also shifted the burden of proof to Mr. Lewellen to demonstrate his innocence and violated his Fifth Amendment privilege against self incrimination by highlighting the fact that Mr. Lewellen did not testify. Describing the evidence as "unexplained" – falsely implied that Mr. Lewellen had an obligation to explain the evidence and that he failed to meet that obligation. *Doyle v. Ohio*, 426 U.S. 610 (1976).

III. Knowing use of witness, Saul Rodriguez, who lied to the government, agents, Bureau of Prisons' employees, grand jury, and jury at trial violated Mr. Lewellen's right to Due Process.

   A. The government used Saul Rodriguez' testimony knowing that he had lied repeatedly to them, agents, the grand jury, and the trial jury, in violation of Mr. Lewellen's right to Due Process of Law.

Saul Rodriguez admitted to manufacturing stories, leaving out material

9

evidence, misrepresenting who was involved in murders, failing to disclose his own

illegal activities while co-operating with the government, lying to the grand jury,

and failing to be truthful about aiding Vicente Zambada in his efforts to locate and

kill relatives of the "Twins" who were associates of Rodriguez and potential

witnesses against Zambada.

The jury's inability to convict Mr. Lewellen of the RICO conspiracy charge,

the allegations of which were supported solely by the testimony of Saul Rodriguez,

is but one indicator of the value of his testimony.  Yet, the government put him on

the stand and asked the jury to believe him.  The government's sole obligation is not

to gain a conviction, but to uphold justice and the integrity of the criminal justice

system.  Knowingly asking a jury to believe an admitted and inveterate liar

demeans the integrity of the system and violated Mr. Lewellen's right to Due

Process.

The fact that Saul Rodriguez obtained a cell phone for his private use and

lied about where he obtained it and what he did with it and that he was not

punished in any way for doing so, further degraded the prosecution effort in this

case.

      B.     The government did not disclose additional benefits that Saul
             Rodriguez received as a result of his cooperation with the
             government.

While Saul Rodriguez was working for the Cook County States Attorneys'

office, his mother received notice that she was subject to deportation.  She was not

deported.  This information was a part of the informant file obtained by subpoena from the Cook County States' Attorney's office and not from the government.  It appears that there was some law enforcement cooperation involved in allowing Rodriguez' mother to remain in the United States, although the precise nature of it is unclear.  This information was relevant *Brady/Giglio*  material and should have been produced by the government prior to trial.

III.     The Court's errors resulted in the violation of Mr. Lewellen's Fourth, Fifth, and Sixth Amendment rights.

Glenn Lewellen raised the following issues prior to and during trial in this case:

A.     The Court erred in failing to grant Mr. Lewellen's Motion for Severance.

The Court denied Mr. Lewellen's Motion for Severance of defendants and counts, in violation of Mr. Lewellen's right to Due Process. Mr. Lewellen was accused of acts of violence for which there were not victims. The only evidence that was presented in support of such acts was the uncorroborated and contradictory testimony of Saul Rodriguez, Fares Umar, and David Venegas.

The victim witnesses presented by the government testified about events that occurred after Mr. Lewellen was no longer involved with Saul Rodriguez.  Similarly, the only objective evidence that government presented about drug dealing was the controlled theft of drugs from a warehouse that also occurred after Mr. Lewellen was no longer involved with Saul Rodriguez.  The spillover effect unfairly prejudiced

11

Mr. Lewellen.

      B.    The Court erred in failing to issue a pre-trial ruling on the government's  Santiago Proffer.

The Court did not require the government to identify the co-conspirator testimony that it intended to introduce and did not rule definitively on the existence of the RICO conspiracy or the conspiracy alleged in Count 13, nor did the Court rule on whether Mr. Lewellen or any other defendant had joined either of the two conspiracies, so that any alleged coconspirator statements could be admitted at trial.

      C.    The Court erred in admitting a photo of and testimony about Mr. Lewellen's deceased partner, Police Officer James Entress.

Permitting the government to introduce a photograph of deceased Officer James Entress and to allow Saul Rodriguez to testify about his involvement in criminal conduct was error.  Mr. Lewellen was not able to refute this evidence without being able to bring Mr. Entress in to testify, in violation of Mr. Lewellen's right to confront the witnesses against him.   Introducing the spectre of a dead man, who is unable to rebut the allegations made against him, not only unnecessarily drags his name through the mud, but introduces evidence that cannot be attacked.

      D.    In denying Mr. Lewellen's objections to the government's proposed Jury Instructions, the Court violated Mr. Lewellen's right to Due Process and a Fair Trial.

The Court erred in disallowing argument about punishment and in instructing the jury that they were not to consider punishment in this case.  The

rationale for disallowing consideration of punishment is that the jury does not play a role in deciding punishment. This, however, is untrue in this case and in most drug cases, where the jury is specifically asked to find drug quantities that will determine the mandatory minimum floor of the punishment that must be imposed. To the extent the jury is involved in making the determinative decision about punishment, the jury should be told what it is doing and what the effect of its decision will be.

The Pinkerton instruction as given is misleading and suggests to the jury that they do not, in fact, have to require the government to meet its burden of proof with respect to each defendant. This is especially important in Mr. Lewellen's case, where it appears that the jury's verdict was inconsistent at best. If the jury were following its instructions, it would not have been able to find Mr. Lewellen guilty of Count 13, if they were unable to decide about guilt on Count 1. The verdict and the non-verdict are inconsistent and illogical.

Glenn Lewellen moves to adopt the arguments of co-counsel insofar as they address issues that are relevant to his case. He also moves to incorporate and reassert all objections written and oral, made before and during the trial which have not been explicitly referenced in this motion.

WHEREFORE, defendant GLENN LEWELLEN, through counsel, respectfully requests that this Honorable Court enter a judgment of acquittal in this case.

In the alternative, GLENN LEWELLEN, requests a new trial

DATE:          April 2, 2012              Respectfully submitted,

                                          By:    s/Andréa E. Gambino
                                                 Attorney for Glenn Lewellen

14

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2012, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which sent notification of such

filing to the following:

John Beal
Counsel for Jorge Uriarte

Cynthia Giachetti
Molly Armor
Counsel for Hector Uriarte

Keith Spielfogel
Robert Loeb
Counsel for Manuel Uriarte

Eugene Steingold
Counsel for Tony Sparkman

Heather Winslow
Counsel for Robert Cardena

Terra Reynolds
Steven Block
Tiffany Tracy
Assistant United States Attorneys

and I hereby certify that I have mailed by United State Postal Service the document

to the following non-CM/ECF participants: [not applicable in this case].

DATE:          April 2, 2012          Respectfully submitted,

                                    By:     s/Andréa E. Gambino
                                            Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

15

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| GLENN LEWELLEN, | ) | |
| Defendant. | ) | |

*DEFENDANT GLEN LEWELLEN'S MOTION FOR AN ORDER TO*
*PERMIT SALE OF TACOMA NARROWS, LLC., PROPERTIES*

Defendant GLENN LEWELLEN, through counsel, Andréa E. Gambino and

Matthew J. Madden, respectfully requests an Order permitting the sale of three

properties owned by Mr. Lewellen, in order to satisfy attorneys' fees and other

obligations.  In support of this Motion, Glenn Lewellen, through counsel, states the

following:

(1)     Mr. Lewellen owns three undeveloped lots, referred to as property purchased

by Tacoma Narrows, LLC, lots numbered 66, 105, and 112.  These lots have been for

sale for a substantial period of time.

(2)     Mr. Lewellen now has buyers for each of these three lots and contracts for the

pending sale of each.  The contracts are available for review by the Court and the

government, but will not be made part of the public record.

(3)     Chicago Title has listed an exception in the title commitment, based on the

pending criminal proceedings against Mr. Lewellen.  This means that the sales

cannot go forward without a Court Order permitting them to do so.

(4)     Glenn Lewellen requests that the sales be permitted to occur and that the proceeds from the sales be held in an escrow account, pending the Court's determination of whether it will impose a fine or other financial obligation on Mr. Lewellen as part of his sentence.

(5)     Mr. Lewellen further requests that the Order permit a portion of the proceeds from the sale of the property to be used to satisfy outstanding legal fees.

WHEREFORE, GLENN LEWELLN, through counsel, respectfully requests that this Court enter an Order permitting the sale of lots 66, 105, and 112, owned by Tacoma Narrows, LLC..

DATE:        April 5, 2012          Respectfully submitted,

By:    Andréa E. Gambino
       An Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014
agambinolaw@gmail.com

2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2012, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which sent notification of such

filing to the following:

John Beal
Counsel for Jorge Uriarte

Cynthia Giachetti
Molly Armor
Counsel for Hector Uriarte

Keith Spielfogel
Robert Loeb
Counsel for Manuel Uriarte

Eugene Steingold
Counsel for Tony Sparkman

Heather Winslow
Counsel for Robert Cardena

Terra Reynolds
Steven Block
Tiffany Tracy
Assistant United States Attorneys

and I hereby certify that I have mailed by United State Postal Service the document

to the following non-CM/ECF participants: [not applicable in this case].

DATE:          April 5, 2012          Respectfully submitted,

                                      By:    s/Andréa E. Gambino
                                             Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

3

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3
### Eastern Division

UNITED STATES OF AMERICA

                    Plaintiff,

v.                               Case No.: 1:09−cr−00332
                               Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, April 25, 2012:

      MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen, Motion hearing held on 4/25/2012 regarding MOTION FOR ORDER PERMITTING SALE OF TACOMA NARROWS, LLC., PROERTIES [864], ( Motion Hearing set for 4/27/2012 at 02:00 PM.) Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2 | **DATE** | 4/27/2012 |
| **CASE TITLE** | USA vs. Glenn Lewellen | | |

**DOCKET ENTRY TEXT**

Motion for agreed protective order relating to the proceeds from the sale of certain property is granted.  Enter Order relating to the proceeds from the sale of from the sale of certain property.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 09 CR 332-2 |
| | ) | Judge Joan B. Gottschall |
| GLENN LEWELLEN | ) | |

ORDER RELATING TO THE PROCEEDS
FROM THE SALE OF FROM THE SALE OF CERTAIN PROPERTY

This matter comes before this Court on motion of the United States for a protective order

relating to the proceeds from the sale of certain real property subject to forfeiture pursuant to Title

21, United States Code, Section 853(e), and this Court fully advised finds as follows:

(a)    On January 13, 2011, a third superseding indictment was returned charging defendant

GLENN LEWELLEN and others with violations of the Controlled Substances Act pursuant to the

provisions of 21 U.S.C. § 841(a)(1), among other violations;

(b)    The third superseding indictment sought forfeiture to the United States of certain

property pursuant to the provisions of 21 U.S.C. § 853, including but not limited to:

> LOTS 66, 101, 102, 105 AND 112 IN BRIDGES OF MOKENA, BEING A
> SUBDIVISION OF PART OF THE NORTHWEST QUARTER OF
> SECTION 30, TOWNSHIP 35 NORTH, RANGE 12 EAST OF THE THIRD
> PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF
> RECORDED NOVEMBER 21, 2005, AS DOCUMENT NUMBER
> R2005205381, CERTIFICATES OF CORRECTION RECORDED
> DECEMBER 23, 2005, AS DOCUMENT NO. R2005-226863, FEBRUARY
> 6, 2006, AS DOCUMENT NO. R2006-023129, MARCH 16, 2006, AS
> DOCUMENT R2006-44613, AND APRIL 10, 2007, AS DOCUMENT
> R2007-054421, IN WILL COUNTY, ILLINOIS.

> PIN: 09-30-103-003; Address: 11789 London Bridge Drive, Mokena, Illinois;

> PIN: 09-30-105-015; Address: 21701 London Bridge Drive, Mokena, Illinois;

> PIN: 09-30-105-016; Address: 21717 London Bridge Drive, Mokena, Illinois;

PIN: 09-30-105-019; Address: 21753 London Bridge Drive, Mokena, Illinois; and

PIN: 09-30-105-026; Address: 21777  London Bridge Drive, Mokena, Illinois;

(c)        Beginning on November 15, 2011, a jury trial was held before this Court;

(d)        On January 31, 2012, the jury returned a verdict of guilty against the defendant GLENN LEWELLEN on Count Thirteen of the third superseding indictment, thereby making certain property subject to forfeiture pursuant to the provisions of 21 U.S.C. § 853;

(e)        On or about April 5, 2012, the government learned that defendant GLENN LEWELLEN had entered into contracts to sell Lot 66 (11789 London Bridge Drive), Lot 105 (21753 London Bridge Drive) and Lot 112 (21777 London Bridge Drive) for $40,000, $30,000 and $30,000 respectively;

(f)        The United States requests that the Court enter an order allowing the sales of the London Bridge properties to proceed and directing that the proceeds from the sales, after the payment of certain costs, detailed in paragraph (i) below, be retained in an escrow account pending further order of this court;

(g)        Pursuant to 21 U.S.C. § 853, this Court has jurisdiction to enter orders or take other action to preserve and to protect property to insure that the property will be available for forfeiture in the event of conviction;

(h)        Specifically, Title 21, United States Code, Section 853(e)(1) provides in pertinent part:

> Upon application of the United States, the Court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section -

(A)     upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section.

(i)     In the event that the London Bridge vacant lots are sold, pursuant to the terms of the contracts, to preserve the availability of the proceeds of the sales, the United States requests that, after an approved accounting and the payment of certain costs, namely, attorney's fees and the real estate broker's commission, the remaining proceeds shall be held in escrow by the United States Department of Treasury pending further order of this Court.

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1.     That, the government's motion for the entry of a protective order directing the proceeds from the sale of the foregoing vacant lots, be held in escrow, pursuant to the pursuant to the provisions of 21 U.S.C. § 853(e)(1);  it is further ordered,

2.     That, upon satisfaction of certain costs, namely attorney's fees and the real estate broker's commission, and the transfer of the proceeds to the United States Department of Treasury, the lis pendens notice shall be released; it is further ordered,

3.     That, the proceeds from the sale of the foregoing vacant lots shall be retained in an escrow account by the United States Department of Treasury pending further order of this Court; it is further ordered,

4.     That, this Court shall retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this protective order.

JOAN B. GOTTSCHALL
United States District Judge

DATED: April 27, 2012

3

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3
### Eastern Division

UNITED STATES OF AMERICA

                              Plaintiff,

v.                                              Case No.: 1:09–cr–00332
                                                Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                              Defendant.

# NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, May 1, 2012:

         MINUTE entry before the Honorable Joan B. Gottschall:as to Hector Uriarte,
Jorge Uriarte, Tony Sparkman, Glenn Lewellen,, Robert Cardena. Government's
responses to Defendants' post trial motions ar extended and due by 5/7/2012. Defendants
replies by 5/22/2012. Ruling by mail. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at *www.ilnd.uscourts.gov*.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3
### Eastern Division

UNITED STATES OF AMERICA

                             Plaintiff,

v.                                       Case No.: 1:09–cr–00332

                                       Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                             Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, May 8, 2012:

      MINUTE entry before the Honorable Joan B. Gottschall:as to Jorge Uriarte, Tony Sparkman, Glenn Lewellen. Government's responses to Defendants' post trial motions are extended and due by 5/8/2012. Defendants replies by 5/23/2012. Ruling by mail. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 332-2 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| GLENN LEWELLEN | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby submits the following response to defendant Glenn Lewellen's motion for judgment of acquittal or new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. For the following reasons, the government respectfully requests that the Court deny defendant's motion.

## I.    The Evidence was Sufficient for the Jury to Find the Defendant Guilty of Count Thirteen

Glenn Lewellen contends that he is entitled to a judgement of acquittal or a new trial because the government's evidence was insufficient to support the jury's conviction of Lewellen on Count Thirteen. R. 863 at 1-4.[1] To the contrary, the evidence was more than sufficient to support the jury's finding.

---

[1]The pleadings and orders in this case are cited as "R." followed by a document number and, where appropriate, a page number. The trial transcript is cited as "Tr." followed by a page number. Transcripts from other proceedings in the case are cited as "Tr." followed by the date of the proceeding and a page number.

### A.      Factual Background

On January 31, 2012, following a two-month trial, a jury found defendant Glenn Lewellen guilty of the drug conspiracy charge contained in Count Thirteen of the third superseding indictment. The jury was unable to reach a verdict on the racketeering conspiracy charge contained in Count One of the indictment. The government's evidence against Glenn Lewellen included: (1) the testimony of Lewellen's co-conspirators, including Saul Rodriguez, Fares Umar, Andres Flores, Pedro Victoria, Andres Torres, Lisette Venegas, and David Venegas; (2) the testimony of law enforcement officers and agents; (3) documents reflecting Glenn Lewellen's relationship in his role as a police officer with Saul Rodriguez; (4) telephone records showing contact between and among Glenn Lewellen and certain co-conspirators; (5) evidence regarding Glenn Lewellen's use of the illicit proceeds obtained as a result of his criminal activities; (6) Glenn Lewellen's perjured testimony in a prior federal case; and (7) Glenn Lewellen's post-arrest statements to law enforcement agents in the instant case.

The evidence established Glenn Lewellen's involvement in the Rodriguez drug trafficking organization ("Rodriguez DTO") beginning no later than 1998 and continuing until at least 2007. As a member of the Rodriguez DTO, Glenn Lewellen provided Saul Rodriguez and Andres Torres with information about the fact and extent of federal investigations into the Rodriguez DTO's activities. Saul Rodriguez and Andres Torres used that information to evade detection by law enforcement. Glenn Lewellen also obstructed justice in order to protect and conceal Saul Rodriguez and the Rodriguez DTO's activities by, among other things, committing perjury at a federal criminal trial. Glenn Lewellen directly participated in the activities of the Rodriguez DTO by obtaining cocaine and cocaine proceeds through robberies and kidnappings. Glenn Lewellen invested proceeds from his involvement in the Rodriguez DTO in various business ventures, including a home building

2

business.

In short, the breadth of Glenn Lewellen's criminal activities undertaken as part of the drug conspiracy – and the sheer volume of evidence introduced at trial – was overwhelming and more than sufficient to support the jury's verdict.

    **B.**    **Analysis**

           **1.**    **Legal Standard**

                    **a.**    **Rule 29**

When reviewing a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, the Seventh Circuit requires that the district court determine:

> Whether at the time of the motion there was relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government – bear[ing] in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences.'

*United States v. Hagan*, 913 F.2d 1278, 1281 (7th Cir. 1990) (quoting *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989)).  A conviction must be upheld if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Sax*, 39 F.3d 1380, 1394 (7th Cir. 1994).  All reasonable inferences are to be resolved in favor of the prosecution, and the trial court is required to view the evidence in the light most favorable to the government with respect to each element of the offense.  *United States v. Galati*, 230 F.3d 254, 257 - 59 (7th Cir. 2000); *United States v. Writers & Research, Inc.*, 113 F.3d 8, 11 n.3 (2nd Cir. 1997).

A conviction may be based solely on reasonable inferences from circumstantial evidence, and

a defendant's burden in challenging a conviction on sufficiency ground is a heavy one.  *Galati*, 230 F.3d at 258; *United States v. Pinckney*, 85 F.3d 4, 7 (2nd Cir. 1996); *United States v. McDonough*, 56 F.3d 381, 388 (2nd Cir. 1995).

### b.    Rule 33

Federal Rule of Criminal Procedure 33 provides that, "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice."  Motions for new trials in criminal cases are addressed to the sound discretion of the trial court.  However, it is well settled that such motions are not favored and should be granted sparingly and only with great caution, and only in exceptional circumstances.  *See, e.g.*, *United States ex rel. Darcy v. Handy*, 351 U.S. 454 (1956); *United States v. Johnson*, 327 U.S. 106 (1946); *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989).  Such motions should be granted only where there has been a miscarriage of justice or the weight of the evidence is heavily against the verdict, since the jury's verdict is entitled to presumptive validity.  To prevail on a motion for a new trial, a defendant must demonstrate that substantial prejudicial error occurred during the trial, resulting in a gross miscarriage of justice.  The burden upon a defendant to establish the existence of prejudicial error is a heavy one, not satisfied by unsupported conclusory allegations or speculation.  *Darcy*, 351 U.S. at 454.

The Seventh Circuit has interpreted the "interest of justice" standard to require a new trial only in situations in which "the substantial rights of the defendant have been jeopardized by errors or omissions during trial."  *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989).  Further:

> The court may not re-weigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable ... The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand ...

4

*Reed*, 875 F.2d at 113.

    **2.**     **Analysis**

The evidence introduced at trial was more than sufficient for a reasonable jury to find Glenn Lewellen guilty of the drug conspiracy.  The crux of Glenn Lewellen's argument is that the government's evidence did not establish the existence of a single conspiracy that was charged in the indictment.  R. 863 at 2.  The facts proved at trial established that Glenn Lewellen joined the Rodriguez DTO in 1998 when Lewellen and Saul Rodriguez began robbing drug traffickers of cocaine and cocaine proceeds.  Glenn Lewellen subsequently participated in additional kidnappings and robberies with the Rodriguez DTO during which cocaine was obtained.  Glenn Lewellen routinely wore a bulletproof vest and possessed a firearm during those kidnappings and robberies. For example, in the Summer of 2003, Saul Rodriguez, Glenn Lewellen, Fares Umar, Hector Uriarte, Jorge Uriarte, David Venegas, Lisette Venegas, and others participated in the kidnapping of Peter Flores.  Glenn Lewellen along with Fares Umar pretended to be police officers, placed Peter Flores "under arrest," and delivered him to a waiting van, which took Flores to the home at which he was held against his will.  Peter Flores' family paid a ransom of 100 kilograms of cocaine to secure Flores' release.  Saul Rodriguez sold the cocaine and gave Glenn Lewellen some of the profits in exchange for his participation in the kidnapping.

While a Chicago Police Department ("CPD") officer, Glenn Lewellen provided perjured testimony in the case of *United States v. Refugio Ruiz*, 99 CR 493 (Judge Pallmeyer) in an effort to protect the Rodriguez DTO's activities.  As a retired CPD officer, Glenn Lewellen used his connections with law enforcement to find out about the existence and extent of a federal investigation of Saul Rodriguez and Andres Torres.  In May 2006, Glenn Lewellen disclosed the

existence of a federal wiretap to both Saul Rodriguez and Andres Torres.  Glenn Lewellen thereby aided and abetted the Rodriguez DTO's distribution of hundreds of kilograms of cocaine in the Chicago area.  Glenn Lewellen invested some of the proceeds of his criminal activities in his home building business.  Witnesses who worked with Glenn Lewellen in that business testified that between 1999 and 2002, Lewellen paid them a total of $213,000 in cash.  Payroll records introduced into evidence showed that the most Glenn Lewellen ever made as a police officer was about $5,000 per month.  When law enforcement arrested Glenn Lewellen in November 2011 and informed Lewellen of the charges against him, Lewellen volunteered "all that" happened over five years ago.

The law is clear that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences." *Hogan*, 913 F.2d at 1281. The Court is not permitted to re-weigh the evidence. *Reed*, 875 F.2d at 113.  The jury was instructed, without objection, that in order to find Glenn Lewellen guilty of the drug conspiracy charge, the government must prove beyond a reasonable doubt that the conspiracy as charged existed, and that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy. R. 794 at 78.  After considering all of the evidence, the jury concluded that the government had proven its case against Glenn Lewellen on the drug conspiracy charge beyond a reasonable doubt.  The jury further concluded that the drug quantity attributable to Glenn Lewellen was 5 kilograms or more of cocaine.  The defendant has not come close to meeting his heavy burden of establishing that a new trial or judgment of acquittal is warranted.

## II.      The Government Did Not Abuse the Court Process

Glenn Lewellen asserts that he is entitled to a judgement of acquittal or a new trial because the government abused the court process prior to and during trial.  R. 863 at 4-9.  Glenn Lewellen's assertions are unfounded and should be rejected accordingly.

### A.      Pre-Trial Matters

#### 1.      Search Warrant Issued for Financial Documents

On June 16, 2011, the Court issued a search warrant for the home of Thomas Dukes, permitting law enforcement to search and seize financial documents pertaining to Glenn Lewellen. R. 384-3.  Following the Court's issuance of the warrant, Glenn Lewellen moved to dismiss the charges against him based on outrageous government conduct, and in the alternative to suppress the evidence seized by law enforcement.[2]  R. 384.  On June 30, 2011, the Court denied Glenn Lewellen's motion.  R. 393; Tr. 6/30/11 at 3-13.

Glenn Lewellen now moves this Court for a judgement of acquittal or for a new trial based on the government's request for the warrant.  R. 863 at 4-5.  Glenn Lewellen offers no details, no analysis, and no specific legal precedent in support of his instant claim.  As such, the perfunctory argument in his motion for judgment of acquittal or new trial based on this particular issue is waived. *United States v. Andreas*, 150 F.3d 766, 769-70 (7th Cir. 1998) ("Perfunctory and undeveloped arguments (even constitutional ones) are waived."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise

---

[2]The Seventh Circuit has explained that "the defense of outrageous government conduct does not exist in this circuit."  *United States v. Sherman*, 268 F.3d 539, 549 (7th Cir. 2001); *see also United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995) (collecting cases).

constitutional issues)."). To the extent that the Court addresses this argument on its merits, the Court should find, as it did prior to trial, that there was probable cause for the warrant. R. 392. Furthermore, at trial the government did not use the evidence law enforcement seized during the execution of the warrant. Any error that stems from the issuance and execution of the warrant is therefore harmless and does not warrant a judgment of acquittal or new trial.

## 2.    Search Warrant Issued for Hair Samples

On July 5, 2011, the Court issued a search warrant authorizing the seizure of hairs from Glenn Lewellen for purposes of comparing the hairs with those found in a Ford Crown Victoria used by the Rodriguez DTO. The Court issued the warrant after hearing from the parties in open court on June 30, 2011. R. 393, Tr. 6/30/11 at 13-26. Glenn Lewellen now moves this Court for a judgement of acquittal or for a new trial based on the government's request for the warrant.[3] R. 863 at 5.

In reviewing the record, it appears that after the warrant was issued and executed, Glenn Lewellen did not move to suppress the warrant or the items seized during the execution of the warrant as required under Rule 12(b)(3). Therefore, Glenn Lewellen's argument is waived. To the extent the Court finds that Glenn Lewellen did not waive the argument, it should find that the argument is perfunctory and therefore waived. *Andreas*, 150 F.3d at 769-70; *Berkowitz*, 927 F.2d at 1384. To the extent that the Court addresses this argument on its merits, the Court should find, that there was probable cause for the warrant. R. 393, Tr. 6/30/11 at 13-26.

The Court should further find that Glenn Lewellen was not prejudiced by the introduction

---

[3] Glenn Lewellen incorrectly states that the government obtained the hair samples by subpoena.

8

of evidence obtained during the search warrant.  At trial, the government presented evidence of the FBI's comparison of the hairs taken from Glenn Lewellen with those found in the Crown Victoria. FBI trace evidence examiner Sandra Koch testified that the hair samples from Glenn Lewellen were not microscopically like any of the hairs found in the Crown Victoria.  Tr. 2612.  Counsel for Glenn Lewellen did not object to Ms. Koch's testimony (Tr. 2600-2621) and cross examined Ms. Koch about her findings (Tr. 2621-2623).  Thus, to the extent that the Court erred in admitting the evidence at trial, it was harmless.

### B.      Trial Matters

#### 1.      Pre-Testimony Identification of Defendants

At the direction of the prosecutors assigned to the case, agents directed several witnesses to look through the window of the courtroom prior to their testimony to see if they could identify anyone in the courtroom.  Glenn Lewellen's mere assertion that this process was "unfair and prejudicial" (R. 863 at 5-6) is perfunctory and therefore waived. *Andreas*, 150 F.3d at 769-70; *Berkowitz*, 927 F.2d at 1384.  To the extent that the Court considers Glenn Lewellen's argument on the merits, it should find that Lewellen has failed to meet his burden in establishing that the government's process of taking witnesses to the door warrants a judgment of acquittal or a new trial.

The parties discussed the government's practice of bringing witnesses to the door with the Court on December 8, 2011.  Tr. 2322-2330.  At that same time, the government agreed to stop bringing witnesses to the door.  *Id*.  The government further agreed to disclose to defense counsel which witnesses had been brought to the door and who, if anyone, they had identified.  *Id*.  At that time, the government disclosed that the next witness, kidnapping victim Salvador Hernandez, had been brought to door but had been unable to identify anyone inside of the Courtroom.  Tr. 2328-

9

2329.  During the cross examination of Salvador Hernandez, counsel for Hector Uriarte questioned Hernandez about how he had been brought to the door by an agent and asked to see if he recognized anyone involved in his kidnapping.  Tr. 2376.  Consistent with the government's disclosure, Salvador Hernandez stated that he did not see anyone he recognized.  *Id*.

On December 11, 2011, the government provided a letter to defense counsel in which it disclosed that at the direction of the prosecutors in the case, agents directed several witnesses to look through the window of the courtroom prior to their testimony to see if they could identify anyone in the courtroom.  The witnesses were not instructed to look at any particular person or any specific part of the courtroom.   The following witnesses looked through the window and each made identifications consistent with their grand jury testimony: Lisette Venegas, David Venegas, Roy Cockriel, Andres Torres, and Maria Saldivar.  The agents could not recall if Eric Herrera also looked through the windows before his testimony, but Herrera was unable to identify Manuel Uriarte during his testimony.  Unlike the case of *Neil v. Biggers*, 409 U.S. 188 (1972), on which Glenn Lewellen relies, the government's practice did not result in a newfound identification.

Based on a review of the record, it appears that after the government's letter disclosure on December 11, 2011, defense counsel did not raise the issue with the Court again.  On January 5, 2012, the government called the case agents, DEA Task Force Officer ("TFO") James Hearly and DEA Agent David Reynolds, to testify.  Tr. 4455-4537.  Only counsel for Robert Cardena cross-examined TFO Healy, but counsel did not ask him about having brought witnesses to the door. Tr. 4477-4483.  Counsel for Robert Cardena and Glenn Lewellen cross-examined Agent Reynolds, but did not ask him about having brought witnesses to the door.  Tr. 4499-4534.  During the defense case, Hector Uriarte called TFO Healy to testify but did not question him about having brought

10

witnesses to the door.  Aside from Salvador Hernandez, the other witnesses who had been brought

to the door remained under subpoena.  Defense counsel did not call them to testify about having been

brought to the door.  Glenn Lewellen was not prejudiced by the government's practice, as

demonstrated by counsel's decision not to cross examine the case agents about the practice and not

to recall the witnesses who had been brought to the door.  As such, Glenn Lewellen has not met his

burden of demonstrating that a judgment of acquittal or a new trial is warranted.

### 2.    Introduction of Evidence About James Entress

Glenn Lewellen alleges that the admission of evidence about his former partner at the CPD,

James Entress, was improperly admitted (R. 863 at 12) and violated Lewellen's Sixth Amendment

right to confront the witnesses against him (R. 863 at 6), thereby entitling him to a judgment of

acquittal or a new trial.  The evidence was admitted through Saul Rodriguez, former CPD Officer

John Conneely, Cook County Assistant State's Attorney ("ASA") John Brassil, and CPD Sergeant

Brad Williams.  As an initial matter, Glenn Lewellen's argument is perfunctory and therefore

waived.  *Andreas*, 150 F.3d at 769-70; *Berkowitz*, 927 F.2d at 1384.  To the extent that the Court

considers the argument on its merits, it should find that the Court properly admitted the evidence and

that the evidence did not violate Glenn Lewellen's right to confront the witnesses against him.

### a.    Factual Background

At trial, Saul Rodriguez, former CPD Officer John Conneely, Cook County Assistant State's

Attorney ("ASA") John Brassil, and CPD Sergeant Brad Williams testified about James Entress.

<u>Saul Rodriguez</u>

Among other things, Saul Rodriguez testified about his February 25, 1997 arrest and how he,

Glenn Lewellen, and another officer robbed a drug dealer or stash house of drug proceeds.  Glenn

Lewellen objected to portions of Saul Rodriguez' testimony based on foundation.  The Court sustained some of Glenn Lewellen's objections.  Glenn Lewellen did not object to Saul Rodriguez' testimony on Sixth Amendment grounds.  Saul Rodriguez testified that on February 25, 1997, officers from the CPD conducted a traffic stop of his vehicle, searched Rodriguez, and found a loaded gun in his back pocket.  Tr. 2904-2905.  The officers subsequently took Saul Rodriguez to the Ninth District.  Tr. at 2905.  While at the Ninth District, Saul Rodriguez called Glenn Lewellen and said that he had been caught with a gun.  Tr. at 2905.  Glenn Lewellen said he was on his way. *Id*.  Shortly thereafter, an officer appeared at the Ninth District and walked Saul Rodriguez out the back door.  Tr. at 2905-2906.  Saul Rodriguez stated that he was never charged with having possessed a loaded gun in his back pocket.  *Id*.

Saul Rodriguez testified that in the late 1990s, he again saw the officer who had walked him out the back door of the Ninth District.  Tr. at 2918-2921.  Saul Rodriguez saw the officer in a hotel room with Glenn Lewellen after the officer and Lewellen had robbed a drug dealer or stash house of $800,000 based on a tip given to them by Rodriguez.  Tr. at 2920.  Saul Rodriguez believed the officer was Glenn Lewellen's partner.  Tr. at 2920.  According to Saul Rodriguez, the officer was a white male who had passed away from a heart attack in the early 2000s.  Tr. at 2921.  Based on the testimony of the subsequent witnesses outlined below, the officer Saul Rodriguez described was James Entress.

<u>Former CPD Officer John Conneely</u>

At trial, former CPD Officer John Conneely testified about his arrest of Saul Rodriguez on February 25, 1997 and the charges that resulted from that arrest.  Prior to John Conneely's testimony, and after extensive argument with the Court (Tr. at 4109-4135, 4218-4226), Glenn Lewellen agreed

the scope of Conneely's testimony (Tr. 4224-4226).   Furthermore, during John Conneely's testimony, Glenn Lewellen did not object to Conneely's testimony on any substantive grounds.

John Conneely testified that on February 25, 1997, he and his partner conducted a traffic stop of a vehicle driven by Saul Rodriguez.  Tr. at 4428.  Following the traffic stop, John Conneely searched Saul Rodriguez and found a loaded gun in Rodriguez' back pocket.  Tr. at 4428-4429.  John Conneely then transported Saul Rodriguez to the Ninth District where Conneely proposed that Rodriguez be charged with misdemeanor and felony offenses.  Tr. at 4429.  To John Conneely's knowledge, Saul Rodriguez did not make a call while at the Ninth District.  Tr. at 4235-4236.  The felony charges against Saul Rodriguez were rejected by the Cook County State's Attorney's Office. Tr. at 4230.  John Conneely does not know who called felony review seeking approval of the felony charts.  *Id*.  Based on his review of Saul Rodriguez' arrest report, Saul Rodriguez was released twelve hours after his arrest on a misdemeanor offense.  Tr. at 4230-4232.  A week later, the misdemeanor charge against Saul Rodriguez was dropped.  Tr. at 4239.  Although John Conneely had heard of James Entress, he did not know Entress to work at the Ninth District.  Tr. at 4239-4241.

<u>Assistant State's Attorney John Brassil</u>

At trial, ASA John Brassil testified about the felony review process at the Cook County State's Attorney's Office and about certain records kept in the ordinary course of business pertaining to Saul Rodriguez' February 25, 1997 arrest.  Prior to ASA Brassil's testimony, and after extensive argument with the Court (Tr. at 4109-4135, 4218-4226), Glenn Lewellen agreed to the scope of ASA Brassil's testimony.   The government explained the agreement for the record:

> [ASA Brassil] will testify that according to the records maintained by the state's attorney's office, [James] Entress called in to felony review, and then after Entress called in, the felony charges against Rodriguez were rejected.

13

Tr. 4225. Counsel for Glenn Lewellen responded "That's fine, Judge. We've got no objection to the . . . sheet [reflecting James Entress' call to felony review]." Tr. at 4225-4226. The Court and parties agreed that the sheet reflecting James Entress' call to felony review, referred to as "the happy sheet," constituted an admissible business record of the Cook County State's Attorney's Office. Tr. at 4224, 4226.

ASA Brassil explained that in a cases where the police are seeking felony charges, an officer must call the felony review unit of the Cook County State's Attorney's Office to have those charges approved. Tr. at 4243-4244. During ASA Brassil's direct testimony, the government offered the happy sheet pertaining to Saul Rodriguez' February 25, 1997 arrest. Tr. 4245-4246. Counsel for Glenn Lewellen had "no objection" to the introduction of the evidence. Tr. at 4246. The happy sheet reflected that on the morning of February 26, 1997, James Entress called felony review from the Ninth District seeking felony gun charges against Saul Rodriguez but that felony review rejected those charges. Tr. at 4246-4247. Pursuant to the agreement of the parties, the government did not at that time seek the admission of a record reflecting the reason why the felony charges were rejected.

On cross examination, counsel for Glenn Lewellen asked ASA Brassil "whether to charge a felony or not, [felony review attorneys at the Cook County State's Attorney's Office] make that call. The Chicago Police Department doesn't make that call, is that right?" Tr. 4251. ASA Brassil responded "It is our decision on whether a felony gets charges, yes, sir." *Id.* The government then requested a sidebar at which it sought permission to admit a second business record documenting the reason why the proposed felony charges were rejected. Tr. 4252. Earlier that same day, the parties had argued extensively before the Court regarding the admissibility of the document (Tr. at

14

4109-4135, 4218-4226).  The Court granted the government's request, explaining:

> You [counsel for Glenn Lewellen] can't create an impression that this was entirely some discretionary decision by the state's attorney's office.  You know, we had talked about an agreement where this was going to be limited and disciplined.  I don't think that's what happened, and I'm going to go back to my initial ruling which is that it's enough of a business record so that the contents of the phone call can come in.

Tr. at 4252.

The government then offered into evidence a business record of the statements James Entress made to the felony review unit about the facts underlying the proposed felony charges against Saul Rodriguez.  Tr. at 4253-4257.  James Entress did not tell the prosecutor on felony review what actually happened, that Officer Conneely had found a gun in Saul Rodriguez' back pocket.  Tr. at 4428-4429.  Rather, James Entress lied and told the prosecutor on felony review that Officer Conneely had found the gun in the locked trunk of Saul Rodriguez' car.  Tr. at 4254.  The records of the Cook County State's Attorney's Office show that the prosecutor on felony review rejected the felony gun charges against Saul Rodriguez because Rodriguez had no knowledge or access to the loaded gun (thereby calling into question the reason for a felony charge).  Tr. at 4254-4255.

## CPD Sergeant Brad Williams

At trial, CPD Sergeant Brad Williams testified briefly about his working relationship with Glenn Lewellen and James Entress.  Glenn Lewellen did not object to Sergeant Williams' testimony on any grounds.  Indeed, counsel for Glenn Lewellen had "[n]o objection" to the admission of a photograph of James Entress through Sergeant Williams.  Tr. at 4414-4415.  Sergeant Williams explained that Glenn Lewllen and James Entress were partners on the Narcotics Squad, and that James Entress had died in 1999.  Tr. at 4415.

15

### b.      Analysis

The Court properly admitted the evidence regarding James Entress.  Indeed, most of the

evidence was admitted without objection.  The evidence regarding James Entress did not violate

Glenn Lewellen's Sixth Amendment right to confront the witnesses against him.  To the contrary,

Glenn Lewellen had every opportunity to cross examine Saul Rodriguez, former CPD Officer John

Conneely, ASA Brassil, and Sergeant Brad Williams.  Nevertheless, Glenn Lewellen asserts that the

Sixth Amendment entitles him to call James Entress to rebut the testimony of Saul Rodriguez – a

right he could not exercise because Entress is dead.  R. 863 at 6.  Glenn Lewellen's assertion is

meritless and has no foundation in the Sixth Amendment or in *Crawford v. Washington*, 541 U.S.

36 (2004).   As such, Glenn Lewellen has not met his burden of demonstrating that a judgment of

acquittal or a new trial is warranted.

### 3.      Statements Made During the Government's Closing Arguments

Glenn Lewellen contends that the government engaged in prosecutorial misconduct during

its closing arguments by misrepresenting certain evidence and improperly commenting on

defendant's failure to testify, and is therefore entitled to a judgment of acquittal or a new trial.  As

an initial matter, Glenn Lewellen's argument regarding the government's misrepresentation of

certain evidence is perfunctory and therefore waived.  *Andreas*, 150 F.3d at 769-70; *Berkowitz*, 927

F.2d at 1384.  To the extent the Court considers Glenn Lewellen's arguments on their merits, the

Court should reject them because the government's closing arguments were proper.

### a.      Factual Background

Minutes before the government began its closing argument, the Court reminded the jury

about a principle related to closing arguments.

16

As you will be instructed, what the lawyers say is not evidence. So if what the lawyers say is not the way you remember the evidence, there are a large number of you, so you're going to rely in your deliberations on your collective recollections. What the lawyers say may not be what you remember, and in that case, your memory is what counts.

Tr. at 4867.

### Argument Regarding Glenn Lewellen's Finances

During the government's closing argument, the government discussed evidence of Glenn Lewellen's finances between 1999 and 2002, which was admitted without objection at trial.

Now, you heard about what happened to some of the money that Glenn Lewellen earned by robbing and kidnapping drug dealers with Saul Rodriguez. You heard from these men. James Millner, Michael Thompson, Ken Klusnick and Matt Klabisch. These men are not convicted felons. They do not have a motive to lie. They are in the construction business, and they told you about their interactions with Glen Lewellen between 1999 and 2002. What they told you is that during that time, Glen Lewellen paid them a total of $213,000 in cash. You know where that money was coming from. It was coming from Glen Lewellen's acts with Saul Rodriguez. It certainly wasn't coming from the City of Chicago because that's what you have seen in evidence, and he was only making tens of thousands of dollars per year doing that. Glen Lewellen ended up making enough money with Saul Rodriguez that he didn't even need to be a Chicago police officer anymore.

Tr. at 4591-4592.

The government later returned to the issue of Glenn Lewellen's finances in the context of discussing the corroboration for the testimony of Lewellen's co-conspirators.

The other things that corroborate the testimony that you heard from the insiders is the evidence that you've seen and heard about the money, basically the unexplained wealth, the unexplained wealth of Hector Uriarte, the unexplained wealth of Glenn Lewellen, the hundreds of thousands of dollars that these men were spending that there just is no other explanation for, no other explanation for the cash coming anywhere except from the crew's activities and their participation in it.

Tr. at 5014. At the outset of its closing argument and after commenting on Glenn Lewellen's finances, the government told the jury that the government has the burden of proving the defendants guilty of the charges against them beyond a reasonable doubt. Tr. at 4872, 5025.

17

In the closing, counsel for Glenn Lewellen argued that in the late 1990s, Lewellen invested

in properties in the Chicago area and then began to build homes.  Tr. at 5071.  Counsel asserted:

> [A]t the time that Glenn Lewellen decided to start his home-building business, credit was
> easy, loans were being practically given away by the bank, the market for homes was going
> up through the roof, and you could buy a piece of property one day, and a couple of months
> or less than a year later you could sell it, and the price would be expanded, and you would
> make money.  And that's what [Lewellen] started to do.  Little by little by little.

Tr. at 5071-5072.  Counsel concluded that "[t]here is no unexplained wealth in this case.  The wealth

that Mr. Lewellen came by was legitimate money that he made through legitimate businesses."  Tr.

at 5073.

With respect to Glenn Lewellen's payment of others in the construction business in cash,

counsel reasoned:

> The other thing that you heard from Jim Millner, who had a business of his own also, was
> that he would sometimes do side jobs for cash, as many contractors do.  And ladies and
> gentlemen, you all know that people do jobs for cash and give you a better price.  And that's
> not an uncommon happening in life.  We all know that, we've all experience it.  And Mr.
> Millner told you about that.

Tr. at 5074.  At the close of the argument, counsel reiterated that there was not "a single shred of

evidence that there was anything illegitimate about any money that Glenn Lewellen had."  Tr. at

5146.

In rebuttal, the government responded directly to Glenn Lewellen's closing argument by

saying "it is not a common happening in life to pay for a luxury car with a bag filled with $80,000

in cash."  Tr. at 5373.  Indeed, Mike Harper, who witnessed Glenn Lewellen pay for a luxury car

with over $80,000 in cash, testified that in his years in world of buying and selling classic cars, he

had never seen someone pay cash for a car like that before.  Tr. at 2737.  The government further

argued that "[i]t is not a common happening in life for a police officer to fund his new construction

business by giving $140,000 to someone he just met." Tr. at 5374.  James Millner was among the

witnesses who testified about having received cash from Glenn Lewellen related to Lewellen's

construction business.  James Millner testified that he had received $40,000 in cash from Glenn

Lewellen to pay subcontractors.  Tr. at 2687.  James Millner testified that he had never before seen

that much money in cash or received that much money in cash to pay subcontractors.  Tr. at 2688.

<u>Argument Regarding Other Matters</u>

The issue of Glenn Lewellen's finances made up a mere fraction of the government's two

day closing argument and lengthy rebuttal.  The government spent most of its time addressing the

other evidence against Glenn Lewellen and his co-defendants as well as the law that applied to the

charges against the men.  For example, the government discussed Saul Rodriguez' arrest on February

25, 1997 and the reason why the proposed felony charges were rejected.  Tr. at 4947-4949.  The

evidence admitted at trial, and discussed at length above, proved that James Entress called felony

review and lied about the circumstances of Saul Rodriguez' arrest.  The evidence further proved that

James Entress did not work at the Ninth District and had nothing to do with Saul Rodriguez' arrest.

As a result of that evidence, the government asked the jury "why is it that Jimmy Entress, somebody

who has nothing to do with the arrest of Saul Rodriguez, is not a patrol officer, shows up [at the

Ninth District]?"  Tr. at 4948.  The government then answered the question by making inferences

from the evidence admitted at trial.  In closing, counsel for Glenn Lewellen responded by criticizing

the government for dragging James Entress' into the proceedings and relying on the word of Saul

Rodriguez.  Tr. 5092-5093.

The government also discussed Glenn Lewellen's involvement in the September 11, 2001

kidnapping of two men that resulted in the possession of cocaine and money.  The government noted

19

that Glenn Lewellen had taken the day off from work on September 11, 2001, as evidenced by his employment file (Exhibit 94).  Tr. at 5034.  In Glenn Lewellen's closing, counsel argued that Glenn Lewellen was on vacation on September 11, 2001.  Tr. at 5133-5134.  In rebuttal, the government reiterated Glenn Lewellen's argument, stating "[n]ow the argument is that Lewellen was on vacation that day [September 11, 2001].  He was out of town on vacation."  Tr. at 5382.  The government went on to point out that there was no evidence that Glenn Lewellen was on vacation on September 11, 2001.

<u>Jury Instructions</u>

At the conclusion of the closing arguments, the Court instructed the jury on the law.  R. 794.  The Court instructed the jury that "[t]he government has the burden of proving the guilt of each defendant beyond a reasonable doubt.  This burden of proof stays with the government throughout the case.  A defendant is never required to prove his innocence or to produce any evidence at all."  *Id*. at 13.  The Court also instructed the jury that "[a] defendant has an absolute right not to testify.  The fact that a defendant did not testify should not be considered by you in any way in arrivign at your verdict."  *Id*. at 14.  The Court further instructed the jury to "use common sense in weighing the evidence and consider the evidence in light of your own observations in life. . . . A jury is allowed to make reasonable inferences.  Any inferences you make must be reasonable and must be based on the evidence in this case."  *Id*. at 5.

**b.    Analysis**

When evaluating a claim of prosecutorial misconduct, "the ultimate question is whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *United States v. Morris*, 498 F.3d 634, 638 (7th Cir. 2007).  The court

employs a two-step process to review allegations of prosecutorial misconduct.  The court first looks to the comments to determine if they were improper.  *United States v. Castillo*, 148 F.3d 770, 775 (7th Cir. 1998).

### Arguments About Glenn Lewellen's Finances

The government's reference to Glenn Lewellen's "unexplained wealth" was not improper because the evidence giving rise to the argument was properly admitted at trial without objection. Although the government used the term "unexplained wealth," the crux of the government's argument was that Glenn Lewellen's wealth was explained by the evidence of Lewellen's involvement in the racketeering and drug conspiracies. In contrast to the mere minutes the government spent referring to Glenn Lewellen's finances, the government argued for hours about the evidence demonstrating Glenn Lewellen's involvement in the acts committed in furtherance of the conspiracies.

The government also properly argued that it was not a common event for a person "to pay for a luxury car with a bag filled with $80,000 in cash" or "to fund his new construction business by giving $140,000 to someone he just met."  The government's arguments were supported by the evidence and properly asked the jury to use common sense in weighing the evidence.  Moreover, the government's arguments were in direct response to the closing argument of and therefore invited by Glenn Lewellen.

### Arguments About Other Matters

The government's arguments about James Entress and Glenn Lewellen's whereabouts on September 11, 2001 were also proper.  With respect to James Entress, it was logical for the government to ask why a person did not work at the Ninth District and had nothing to do with Saul

Rodriguez' arrest would suddenly arrive at the Ninth District and intervene in Rodriguez' case.  It was proper for the government to then argue that based on the evidence admitted at trial, James Entress intervened in Saul Rodriguez' case at the request of Glenn Lewellen and to protect Rodriguez' cooperation with the CPD.   With respect to the government's comments on Glenn Lewellen's whereabouts on September 11, 2001, the government merely repeated counsel's own argument and noted that there was no evidence to support the argument.  The government's comments were not only proper, but invited by Glenn Lewellen's own closing argument.

Assuming for sake of argument that the foregoing comments were improper, the Court must then "examine the comments in light of the record as a whole to determine whether the comments deprived the defendant of a fair trial." *Id.* at 775.  On harmless error review, the burden rests with the defendant. *United States v. Noel*, 581 F.3d 490, 505 (7th Cir. 2009).  Here, the government's comments about Glenn Lewellen's finances and the other matters about which Lewellen complains took up mere minutes its hours long closing arguments. The government's opening argument alone was over five hours long and was delivered over two days.  During that time, the government twice reminded the jury that the government alone had the burden of proving the defendants' guilt beyond a reasonable doubt.  The government's evidence of Glenn Lewellen's finances were a small part of a trial that lasted over two months and involved dozens of witnesses, some of whom testified about Lewellen's involvement in acts of drug trafficking, kidnapping, robbery, and obstruction of justice.

In closing, counsel for Glenn Lewellen argued fiercely that the jury should draw a different conclusion from the evidence the government presented about Lewellen's finances.  Counsel suggested that Glenn Lewellen's cash expenditures were explained by his legitimate business endeavors.  At the close of the arguments, the Court instructed the jury that Glenn Lewellen had an

absolute right not to testify and that the decision not to testify could not be held against him. There

is a presumption that juries follow their instructions. *United States v. Puckett*, 405 F.3d 589, 599

(7th Cir. 2005). The brief comments about which Glenn Lewellen complains – even if error – were

rebutted by defense counsel and cured by the Court's instructions to the jury. Glenn Lewellen has

not met his burden of demonstrating that a judgment of acquittal or a new trial is warranted.

**III.** **The Government Complied with its *Brady/Giglio* Obligations**

**A.** **The Government Properly Used Saul Rodriguez as a Witness**

Glenn Lewellen argues that he is entitled to a judgement of acquittal or a new trial because

the government's use of Saul Rodriguez as a witness at trial violated Lewellen's right to due process.

R. 863 at 9-10. As an initial matter, Glenn Lewellen's argument is perfunctory and therefore waived.

*Andreas*, 150 F.3d at 769-70; *Berkowitz*, 927 F.2d at 1384. To the extent the Court considers Glenn

Lewellen's argument on its merits, the Court should find the government's use of Saul Rodriguez

as a witness was proper.

In support of his motion, Glenn Lewellen argues that the government's use of Saul

Rodriguez, "an admitted and inveterate liar," demeans the integrity of the system and violated

Lewellen's right to due process. R. 863 at 10. As set forth in greater detail below, the government

complied with its obligations to timely disclose *Brady* and *Giglio* materials to defense counsel as to

all government witnesses, including Saul Rodriguez. At trial, Saul Rodriguez testified for over five

days. While on direct examination, the government questioned Saul Rodriguez about the veritable

crime spree Rodriguez was on from the time he was a teenager until the time of his arrest in the

instant case. The government also questioned Saul Rodriguez about his misconduct during his

cooperation with the government, which included lying to a federal grand jury, smuggling a cell

23

phone into the MCC, and engaging in a murder-for-hire plot.  Counsel for Glenn Lewellen and his

co-defendants cross examined Saul Rodriguez about these matters over two days.  No stone was left

unturned by government or defense counsel as it related to exposing Saul Rodriguez' bad acts.

At the outset of Saul Rodriguez' testimony and again at the conclusion of the case, the Court

instructed the jury to consider Rodriguez' testimony with "caution and great care."  R. 794 at 25.

The law is clear that "it is the exclusive function of the jury to determine the credibility of witnesses,

resolve evidentiary conflicts and draw reasonable inferences."  *Hogan*, 913 F.2d at 1281.

Furthermore, there is a presumption that juries follow their instructions.  *Puckett*, 405 F.3d at 599.

Glenn Lewellen has simply failed to meet his heavy burden for the Court to grant Glenn Lewellen's

motion for a new trial or to enter a judgment of acquittal based on the trial testimony of Saul

Rodriguez.

### B.    The Government Timely Disclosed Saul Rodriguez' Cook County State's Attorney's Office Informant File

Glenn Lewellen contends that he is entitled to a judgement of acquittal or a new trial because

the government failed to disclose benefits Saul Rodriguez received as a result of his cooperation with

the Cook County State's Attorney's Office.  R. 863 at 10-11.  As an initial matter, Glenn Lewellen's

argument is perfunctory and therefore waived.  *Andreas*, 150 F.3d at 769-70; *Berkowitz*, 927 F.2d

at 1384.  To the extent that the Court considers Glenn Lewellen's argument on its merits, the Court

should find that the government complied with its obligations under *Brady* and *Giglio*.

### 1.    Factual Background

Glenn Lewellen obtained Saul Rodriguez' informant file from the Cook County State's

Attorney's Office pursuant to a trial subpoena.  R. 863 at 11.  According to Glenn Lewellen, the file

indicates that Saul Rodriguez' mother was subject to deportation and that Rodriguez *may* have cooperated in order to keep his mother in the United States. *Id*.   Despite repeated requests by the government, Glenn Lewellen has not provided the government with a copy of the file it received from the Cook County State's Attorney's Office.  Nor has Glenn Lewellen told the government when it obtained the file from the Cook County State's Attorney's Office.  Based on Glenn Lewellen's description of the file and items contained therein, it appears as if the file Glenn Lewellen obtained from the Cook County State's Attorney's Office via trial subpoena is the same file the government obtained from the Cook County State's Attorney's Office prior to trial.  The government provided the file it obtained in its entirety to Glenn Lewellen and the other defendants in the case on October 7, 2011.  The documents were bates stamped CCSAO_001_001 through CCSAO_001_022, placed on a disc labeled "U.S. v. Saul Rodriguez, et al., 10.7.11 Discovery," and mailed to counsel.[4]

> ## 2.     Analysis

To establish a right to a new trial under *Brady v. Maryland*, 373 U.S. 83 (1963), the defendant must prove that: (1) the government suppressed the evidence; (2) the suppressed evidence was favorable to the defendant; and (3) the suppressed evidence was material to an issue at trial. *United States v. Todd*, 424 F.3d 525, 535 (7th Cir. 2005).  Evidence is material for *Brady* purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.*; *United States v. Payne*, 102 F.3d 289, 293 (7th Cir. 1996 ("Evidence is considered material only if there is a reasonable probability that the disclosure of that evidence to the defense would have changed the result of the trial."

---

[4]The documents pertaining to the immigration status of Saul Rodriguez' mother were contained in the discovery as CCSAO_001_018 through CCSAO_001_022.

The essence of Glenn Lewellen's claim is that if he had Cook County State's Attorney's Office informant file on Saul Rodriguez prior to trial, then he could have cross-examined Rodriguez about benefits he may have received as a result of his cooperation with Cook County.  There is no *Brady* violation, however, because the government provided the informant file to Glenn Lewellen on October 7, 2011, one month prior to trial.  *United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005) (no *Brady* violation where defendant was aware of the allegedly suppressed information); *United States v. Allen*, 798 F.2d 985, 996 (7th Cir. 1985) ("*Brady* analysis assumed the discovery, after trial, of favorable, material information known to the prosecution but unknown to the defense.").  To the extent Glenn Lewellen received a different informant file from the Cook County State's Attorney's Office, the government was unaware of the existence of that file or the information contained therein.  Furthermore, given that Glenn Lewellen obtained the file pursuant to a trial subpoena, it appears as if Lewellen received the file before his cross-examination of Saul Rodriguez and could have used it had he chosen to do so.

Glenn Lewellen appears to concede that even if the government suppressed the informant file, it is "unclear" whether the information contained in it was favorable to him.  R. 863 at 11.  Even if the government suppressed the evidence and the evidence was favorable to Glenn Lewellen, it was not material to the outcome of the trial.  When evaluating materiality, courts must consider the effect of the new evidence in light of all the other evidence presented at trial.  *United States v. Williams*, 81 F.3d 1434, 1438 (7th Cir. 1996).  To warrant a new trial based on newly discovered impeachment evidence, the new evidence must be more than cumulative.  *United States v. Kozinski*, 16 F.3d 795, 819 (7th Cir. 1994).  Here, counsel for Glenn Lewellen cross-examined Saul Rodriguez for hours about countless topics that addressed Rodriguez' credibility.  Counsel's questioning of Saul

26

Rodriguez about benefits his mother may or may not have received as a result of his cooperation with the Cook County State's Attorney's Office would have been nothing more than cumulative. Certainly, such questioning would not have resulted in a different outcome for Glenn Lewellen. Glenn Lewellen has not met his burden of demonstrating that a judgment of acquittal or a new trial is warranted on this matter.

## IV.  The Court Did Not Err in Making Certain Rulings

### A.  The Court Did Not Err in Denying Glenn Lewellen's Motion to Sever

Glenn Lewellen argues that he is entitled to a judgment of acquittal or a new trial because the Court denied Lewellen's motion to sever.  R. 863 at 11-12.  As an initial matter, it appears as if Glenn Lewellen did not renew his motion for severance at the close of evidence.   A motion for severance is typically waived under such circumstances.  *United States v. Rollins*, 301 F.3d 511, 518 (7th Cir. 2002) ("we cannot countenance a system in which a defendant first tries to see whether he can get an acquittal in a joint trial, and then when he is convicted renews his motion to sever so that he can have another crack at the jury") (citations and quotations omitted).  Glenn Lewellen now renews his severance motion, but as explained by the Seventh Circuit in *Rollins*, 301 F.3d at 518, and *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991), that is too late.  The time to decide whether the joint trial prejudiced Glenn Lewellen was prior to the verdict.  *Id*.

To the extent that the Court considers Glenn Lewellen's argument on its merits, the Court should reject the argument for the reasons set forth in the minute order issued on September 8, 2011.  R. 498.  This Court should further find that Glenn Lewellen cannot demonstrate that he was prejudiced by the Court's denial of his motion to sever.  Prior to trial, the Court noted that jury instructions "can cure any risk of prejudice."  *Id*. at 2.  At trial, the Court instructed the jury

27

> Even though the defendants are being tried together, you must give each of them separate consideration.  In doing this, you must analyze what the evidence shows about each defendant, leaving out of consideration any evidence that was admitted solely against some other defendant.  Each defendant is entitled to have his case decided on the evidence and the law that applies to that defendant.

R. 794 at 31.  The jury deliberated over the course of the next two weeks and ultimately returned mixed verdicts, indicating that they carefully considered the evidence against each individual defendant. *See United States v. Delatorre*, 581 F.Supp.2d 968, 979 (N.D. IL 2009).  The jury clearly decided the case against Glenn Lewellen based on the evidence and law that applied to him.  Thus, Glenn Lewellen has not met his burden of demonstrating that a judgment of acquittal or a new trial is warranted.

### B.    The Court Ruled on the Government's *Santiago* Proffer

Glenn Lewellen argues, without factual or legal support, that he is entitled to a judgement of acquittal or a new trial because the Court failed to rule on the government's *Santiago* proffer.  R. 863 at 12.  As an initial matter, Glenn Lewellen's argument is perfunctory and therefore waived. *Andreas*, 150 F.3d at 769-70; *Berkowitz*, 927 F.2d at 1384.  To the extent the Court considers Glenn Lewellen's argument on the merits, it should reject the argument.  As the Court is well aware, it ruled on the admissibility of co-conspirator statements following extensive briefing and argument by the parties.  Although the Court did not record its ruling in a docket entry, it communicated its ruling to the parties in open court on several occasions.  For example, on November 15, 2011, minutes before opening statements, counsel for Manuel Uriarte sought to bar the government from discussing co-conspirator statements pertaining to the murders of Juan Luevano and Michael Garcia.  Tr. at 5-6.  The government responded:

This is an issue [the Court] dealt with yesterday.[5]  This is not a surprise.  Of course we're going to mention the murders in opening and how they fit in the conspiracy.  Your Honor ruled that evidence is going to come in today.

Tr. at 6.

On November 16, 2010, the parties appeared before the Court to discuss limiting instructions in light of the Court's ruling on the *Santiago* proffer. Tr. 192-237.   At trial, numerous co-conspirators, including Saul Rodriguez, Fares Umar, David Venegas, and Andres Torres, testified about statements Glenn Lewellen made to them in furtherance of the conspiracy.   These co-conspirators testified without objection on hearsay grounds.  The reason counsel did not object to the testimony of the co-conspirators on hearsay grounds is because counsel understood that the Court had heard and overruled the objections prior to trial.[6]

To the extent that the Court did not rule on the *Santiago* proffer, the failure to rule was not error.  The trial, as predicted by the *Santiago* proffer, established by a preponderance of the evidence that there was a conspiracy and that the specific statements at issue were in furtherance of that conspiracy.  Glenn Lewellen cannot say how he was prejudiced by the absence of a ruling on the *Santiago* proffer – because Lewellen was not prejudiced.  Glenn Lewellen's co-conspirators provided admissible testimony regarding their own roles and the role of Lewellen in the Rodriguez DTO.  Glenn Lewellen has not met his burden in establishing that a judgment of acquittal or a new trial is warranted under such circumstances.

-----

[5]The government has ordered the transcript of the proceedings on November 14, 2011.

[6]Indeed, other parties in the case recognize the Court ruled on the government's *Santiago* proffer.  *See* Jorge Uriarte's Motion for Judgement of Acquittal or New Trial (R. 858 at 4, ¶10).

C.      **The Court Properly Instructed the Jury**

Glenn Lewellen contends he is entitled to a new trial or judgment of acquittal because the Court erred in instructing the jury.  R. 863 at 12-13.  As an initial matter, defendant did not develop any of these arguments and they are therefore waived.  *Andreas*, 150 F.3d at 769-70.  The government incorporates by reference all of the oral and written arguments presented to the Court during the extensive jury instruction conference held before trial.  To aid the Court, the government sets forth a summary of its arguments below.

1.      **Potential Punishment Faced by Defendant**

Glenn Lewellen argues, without factual or legal support, that the Court erred in instructing the jury that a defendant's potential punishment should not enter into its considerations or discussions at any time.  R. 863 at 12-13; R. 794 at 97.  Glenn Lewellen's argument should be rejected because the Court properly instructed the jury on the correct application of the law.  *United States v. Curry*, 538 F.3d 718, 731 (7th Cir. 2008); citing *United States v. Woods*, 148 F.3d 843, 849 (7th Cir. 1998).  The jury instruction reflects well-settled case law that "when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"  *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994); *Rogers v. United States*, 422 U.S. 35, 40 (1975); *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997) ("[A]rguing punishment to a jury is taboo . . . ."), vacated in part on other grounds, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) ("Without commenting on the propriety of jury nullification, we note that the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored."); *United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) ("[T]he sixth amendment requires that a jury determine only questions of guilt or innocence;

punishment is the province of the court.").

In *Shannon*, the Supreme Court noted:

> It is well established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." Rogers, 422 U.S. at 40. The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion.

512 U.S. at 579.  The Supreme Court also made clear that juries as a general matter are not informed of mandatory minimum or maximum sentences, "nor are they instructed regarding probation, parole, or the sentencing range accompanying a lesser included offense." *Id*. at 586-87.

This Court correctly instructed the jury that it should not consider punishment during deliberations.  As such, Glenn Lewellen's argument is without merit.

## 2. *Pinkerton* Instruction

Glenn Lewellen argues, without factual or legal support, that this Court erred when it gave the instruction pertaining to co-conspirator liability.  No. 33.  R. 863 at 13; R. 794 at 94.  The co-conspirator liability instruction was based solely on *Pinkerton v. United States*, 328 U.S. 640, 646-47, 90 L. Ed. 1489, 66 S. Ct. 1180 (1946), which holds that the acts of one person may be attributed to another when there is a conspiracy.  Accordingly, the Court instructed the jury as follows:

> A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a foreseeable consequence of the conspiracy.

31

R. 794 at 94.

Glenn Lewellen does not argue that the above instruction given to the jury was an incorrect statement of the law, nor could he. *Pinkerton* has been regularly applied to drug conspiracies, *United States v. Souffront*, 338 F.3d 809, 836 (7th Cir. 2003) (citing *United States v. Smith*, 223 F.3d 554, 567 (7th Cir. 2000)), and the instruction as given was a correct statement of the law and tracked the pattern *Pinkerton* instruction in this Circuit. Indeed, as a conspirator, defendant is liable for the foreseeable acts that his co-conspirators committed in furtherance of the conspiracy. *Pinkerton*, 328 at 646-47. Accordingly, this Court did not err and Glenn Lewllen's motion should be denied.

V.      CONCLUSION

For the reasons stated above, the government asks that the Court deny Glenn Lewellen's

motion for judgment of acquittal or new trial.[7]

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney


By:     s/ Terra Reynolds
        TERRA L. REYNOLDS
        STEVEN A. BLOCK
        TIFFANY J. TRACY
        Assistant United States Attorneys
        United States Attorney's Office
        219 S. Dearborn St., 5th Floor
        Chicago, Illinois  60604

---

[7]At the close of his motion, Glenn Lewellen moves to adopt the arguments of co-counsel and incorporates and reasserts all objections made before and during the trial that were not explicitly referenced in the motion.  Because Glenn Lewellen offers no details, no analysis, and no specific legal precedent in support of these unspecified claims, these perfunctory arguments are waived.  *Andreas*, 150 F.3d at 769-70; *Berkowitz*, 927 F.2d at 1384.  As a result, these claims serve as no basis for a new trial.  To the extent the Court addresses these claims on the merits, the government incorporates by reference all of the oral and written arguments presented to this Court prior to and during the trial on the points raised in Glenn Lewellen's post-trial motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 09 CR 332-2 |
| v. | ) | |
| | ) | Hon. Joan B. Gottschall |
| GLENN LEWELLEN | ) | |

## CERTIFICATE OF SERVICE

  The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF),  the following document:

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL

was served pursuant to the district court's ECF system.

         Respectfully submitted,

         **PATRICK J. FITZGERALD**
         United States Attorney

      By:  s/ Terra Reynolds
        TERRA REYNOLDS
        Assistant United States Attorney
        219 South Dearborn Street, 5th Floor
        Chicago, IL  60604
        (312) 353-3148

Dated: May 8, 2011

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3**
**Eastern Division**


UNITED STATES OF AMERICA
                                        Plaintiff,

v.                                                      Case No.: 1:09–cr–00332
                                                        Honorable Joan B. Gottschall

Saul Rodriguez, et al.
                                        Defendant.


# NOTIFICATION OF DOCKET ENTRY


This docket entry was made by the Clerk on Friday, June 8, 2012:


         MINUTE entry before the Honorable Joan B. Gottschall: as to Glenn Lewellen, (
Sentencing set for 6/27/2012 is stricken and reset to 7/13/2012 at 09:30 AM due to
scheduling conflict of the court.) Sentencing memoranda and/or objections to PSR due by
6/15/2012. Responses by 6/22/2012. No sentencing memoranda or objections to
presentence reports or responses will be considered if filed out of time unless a motion to
file late is made no less than one week prior to the date set for sentencing. No sentencing
hearing will be considered unless the courtroom deputy is notified of the need to change in
writing at least one week (7 days) prior to the date set for sentencing. Failure to comply
with this standing order will result in counsel being sanctioned in the amount of $100.00
which shall be paid to the Clerk of the Court, 219 South Dearborn, 20th Floor, Chicago,
Illinois 60604. Mailed notice (rj, )



**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3**
**Eastern Division**

UNITED STATES OF AMERICA
                                        Plaintiff,

v.                                                      Case No.: 1:09−cr−00332
                                                        Honorable Joan B. Gottschall

Saul Rodriguez, et al.
                                        Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Thursday, June 14, 2012:

        MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen.
The court grants the government's request for extension of time to file position
papers/objections to the PSR and responses. Sentencing memoranda and/or objections to
PSR due by 6/22/2012. Responses by 6/29/2012. No sentencing memoranda or objections
to presentence reports or responses will be considered if filed out of time unless a motion
to file late is made no less than one week prior to the date set for sentencing. No
sentencing hearing will be considered unless the courtroom deputy is notified of the need
to change in writing at least one week (7 days) prior to the date set for sentencing. Failure
to comply with this standing order will result in counsel being sanctioned in the amount of
$100.00 which shall be paid to the Clerk of the Court, 219 South Dearborn, 20th Floor,
Chicago, Illinois 60604. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3**
**Eastern Division**

UNITED STATES OF AMERICA

                     Plaintiff,

v.                                Case No.: 1:09−cr−00332
                                Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                     Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, June 22, 2012:

      MINUTE entry before the Honorable Joan B. Gottschall: as to Glenn Lewellen, ( Sentencing set for 7/13/2012 is stricken and reset to 9/6/2012 at 09:00 AM.) Sentencing memoranda and/or objections to psr due by 8/17/2012. Responses by 8/24/2012. No sentencing memoranda or objections to presentence reports or responses will be considered if filed out of time unless a motion to file late is made no less than one week prior to the date set for sentencing. No sentencing hearing will be continued unless the courtroom deputy is notified of the need to change in writing at least one week (7 days) prior to the date set for sentencing. Failure to comply with this standing order will result in counsel being sanctioned in the amount of $100.00 which shall be paid to the Clerk of Court, 219 S. Dearborn, 20th floor, Chicago, Illinois 60604. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3
### Eastern Division

UNITED STATES OF AMERICA

                    Plaintiff,

v.                                              Case No.: 1:09−cr−00332

                                                Honorable Joan B. Gottschall

Saul Rodriguez, et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, June 25, 2012:

      MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen, ( Sentencing set for 9/6/2012 is stricken and reset to 9/25/2012 at 10:00 AM by request of defendant's counsel.) Sentencing memoranda and/or objections to psr due by 9/7/2012. Responses by 9/14/2012. No sentencing memoranda or objections to presentence reports or responses will be considered if filed out of time unless a motion to file late is made no less than one week prior to the date set for sentencing. No sentencing hearing will be continued unless the courtroom deputy is notified of the need to change in writing at least one week (7 days) prior to the date set for sentencing. Failure to comply with this standing order will result in counsel being sanctioned in the amount of $100.00 which shall be paid to the Clerk of Court, 219 S. Dearborn, 20th floor, Chicago, Illinois 60604. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 CR 332 |
| | ) | Judge Joan B. Gottschall |
| | ) | |
| GLENN LEWELLEN, | ) | |
| Defendant. | ) | |

*DEFENDANT LEWELLEN'S MOTION TO ADOPT and JOIN DEFENDANT
URIARTE'S MOTION TO SUPPLEMENT HIS POST-TRIAL MOTIONS*

Defendant GLENN LEWELLEN, through counsel, respectfully requests that
this Court permit him to adopt and join the Motion to Supplement Post-trial
Motions filed by co-defendant JORGE URIARTE.  In support of this motion,
defendant LEWELLEN, through counsel, states the following:

(1)     Defendant Lewellen incorporates paragraphs 1-6 of co-defendant Jorge
Uriarte's motion, describing the request for disclosure of potential *Brady/Giglio*
information that defense counsel sent to the government on June 11, 2012, and the
government's June 26, 2012, response to that request.

(2)     Information provided in the reports tendered by the government requires
additional investigation and consideration.

(3)     Some of the information provided may bear on the veracity or accuracy of
Saul Rodriguez' trial testimony.  One example of this is found in the assertion by
the interviewed individual that Rodriguez "bragged that he had connections with

people who could make his sentence reduced" and that "he had a connection in the Cook County State's Attorney's Office who let him know that the police were coming at him and that this person's name was Joe."

(4)    In addition to the information about Saul Rodriguez, defense counsel asked the government about other information that counsel learned was provided to the government. At the present time there is a disagreement about whether this information was provided to the government, and so should have been disclosed to defense counsel.  This disagreement requires resolution, or, if it cannot be resolved, it will become a relevant supplement to defendant Lewellen's post-trial motions.

(5)    On-going misconduct and dishonesty by the government's primary witness at trial is relevant to the integrity of the verdicts returned against each of the defendants, including GLENN LEWELLEN.  The duty to provide such information continues even after the trial concludes.  When information surfaces post-trial, the parties have an obligation to determine the quality and relevance of the information and to learn whether the government did, could have, or should have learned the information prior to or during trial.

WHEREFORE,  GLENN  LEWELLEN,  joins  co-defendant  JORGE URIARTE, in requesting leave to supplement his post-trial motions.

He further requests a filing date in 30 days, to allow time for the defense to conduct additional investigation and to co-ordinate the defense response to the recently disclosed information.

DATE:        July 13, 2012                    Respectfully submitted,

                                              By:    s/Andréa E. Gambino
                                                     Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois  60604
(312) 322-0014

## CERTIFICATE OF SERVICE

        I hereby certify that on July 13, 2012, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which sent notification of such

filing to the following:

        John Beal
        Counsel for Jorge Uriarte

        Cynthia Giachetti
        Molly Armor
        Counsel for Hector Uriarte

        Keith Spielfogel
        Robert Loeb
        Counsel for Manuel Uriarte

        Eugene Steingold
        Counsel for Tony Sparkman

        Heather Winslow
        Counsel for Robert Cardena

        Terra Reynolds
        Steven Block
        Tiffany Tracy
        Assistant United States Attorneys

and I hereby certify that I have mailed by United State Postal Service the document

to the following non-CM/ECF participants: [not applicable in this case].

DATE:          July 13, 2012          Respectfully submitted,

                                      By:    s/Andréa E. Gambino
                                             Attorney for Glenn Lewellen

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 224
Chicago, Illinois 60604
(312)322-0014

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 332 - 2,3,4 and 7 | **DATE** | 7/18/2012 |
| **CASE TITLE** | USA vs. Jorge Uriarte, Hector Uriarte, Tony Sparkman and Glenn Lewellen | | |

**DOCKET ENTRY TEXT**

Motion hearing held.  Motion by Jorge Uriarte for extension of time to file supplement to post trial motion and to file joint supplement with other defendants by 8/17/2012 [953] is granted.  MOTION by Glenn Lewellen to adopt and Join Co-Defendant Uriarte's Motion to Supplement Post-trial Motions [956] is granted. MOTION by Tony Sparkman to adopt and join codefendants' motions to supplement [958] is granted. MOTION by Hector Uriarte to adopt and Join Co-Defendant Jorge Uriarte's Motion to Supplement Post-Trial Motions [960] is granted. Oral motion by United States for 30 days to file response by 9/17/2012 is granted. Oral motion by United States to strike pending sentencing dates and to reset for mid November as to defendants Hector Uriarte, Jorge Uriarte, Tony Sparkman and Glenn Lewellen is granted. Sentencing set for 9/25/12 as to Glenn Lewellen is vacated.  Sentencing set for 8/1/2012 as to Jorge Uriarte is vacated. Sentencing set for 9/5/2012 as to Hector Uriarte is vacated.

Docketing to mail notices.

:08

| | Courtroom Deputy Initials: | RJ |
|---|---|---|

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3**
**Eastern Division**

UNITED STATES OF AMERICA

  Plaintiff,

v.  Case No.: 1:09–cr–00332
  Honorable Joan B. Gottschall

Saul Rodriguez, et al.

  Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, September 7, 2012:

  MINUTE entry before the Honorable Joan B. Gottschall:as to Glenn Lewellen, ( Sentencing set for 11/2/2012 at 09:30 AM.)Sentencing memoranda and/or objections to PSR due by 10/19/2012. Responses by 10/26/2012. No sentencing memoranda or objections to presentence reports or responses will be considered if filed out of time unless a motion to file late is made no less than one week prior to the date set for sentencing. No sentencing hearing will be continued unless the courtroom deputy is notified of the need to change in writing at least one week (7 days) prior to the date set for sentencing. Failure to comply with this standing order will result in counsel being sanctioned in the amount of $100.00 which shall be paid to the Clerk of Court, 219 South Dearborn, 20th Floor, Chicago, Illinois 60604. Mailed notice (rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.